UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NESSA RISLEY, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSAL NAVIGATION INC. dba UNISWAP LABS, HAYDEN Z. ADAMS, PARADIGM OPERATIONS LP, AH CAPITAL MANAGEMENT, L.L.C. dba ANDREESSEN HOROWITZ, and UNION SQUARE VENTURES, LLC, <br><br> Defendants. | No.: 22-cv-02780-KPF <br><br> Honorable Katherine Polk Failla |

**NESSA RISLEY, JAMES FREELAND, ROBERT SCOTT, ANNIE VENESKY, ANDREW CARDIS, AND DEAN MEYERS'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF KIM & SERRITELLA LLP AND BARTON LLP AS CO-LEAD COUNSEL**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 2

ARGUMENT ..................................................................................................................... 4

   I.      The Investor Group Should Be Appointed Lead Plaintiffs ........................................... 4

      A.    The Investor Group Has Timely Filed a Motion To Be
            Appointed Lead Plaintiffs. ........................................................................... 5

      B.    The Investor Group Has the Largest Financial Interest. ................................. 6

      C.    The Investor Group Satisfies the Typicality and
            Adequacy Requirements of Rule 23 .............................................................. 9

   II.     K&S and Barton Should be Approved as Co-Lead Counsel ..................................... 12

CONCLUSION ................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
   534 F. Supp. 3d 326 (S.D.N.Y. 2021)...................................................................... 7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ............................................................................... 5

*Kuebler v. Vectren Corp.*,
   No. 3:18-cv-00113,
   2018 U.S. Dist. LEXIS 153360 (S.D. Ind. Aug. 10, 2018) .................................... 11

*Kux-Kardos v. VimpelCom, Ltd.*,
   151 F. Supp. 3d 471 (S.D.N.Y. 2016).............................................................. 10, 12

*Lee v. Binance*,
   No. 1:20-cv-02803, ECF No. 40
   (S.D.N.Y. Aug. 26, 2020) ....................................................................................... 8

*Peters v. Jinkosolar Holding Co.*,
   No. 1:11-cv-07133,
   2012 U.S. Dist. LEXIS 38489 (S.D.N.Y. Mar. 19, 2012) ........................................ 8

*Salinger v. Sarepta Therapeutics, Inc.*,
   No. 19-CV-8122,
   2019 U.S. Dist. LEXIS 218248 (S.D.N.Y. Dec. 17, 2019) ............................. passim

*See In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   288 F.R.D. 26, 44 (S.D.N.Y. 2012) ....................................................................... 14

*Sofran v. Labranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ........................................................................... 12

*Underwood v. Coinbase Global Inc.*,
   No. 1:21-cv-08353, ECF No. 21
   (S.D.N.Y. Jan. 11, 2022).......................................................................................... 8

**Statutes**

15 U.S.C § 77b(a)(1)...................................................................................................... 3

15 U.S.C. § 77z-1(a)(3)(B)(i) ................................................................................... 1, 2

15 U.S.C. § 78u-4(a) ............................................................................................. passim

15 U.S.C.§78c(a)(10)...................................................................................................... 3

Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i), Nessa Risley ("Risley"), James Freeland ("Freeland"), Robert Scott ("Scott"), Annie Venesky ("Venesky"), Andrew Cardis ("Cardis"), and Dean Meyers ("Meyers") (collectively, the "Investor Group") respectfully submit this memorandum of law in support of their motion for appointment as lead plaintiffs and the approval of their selection of Kim & Serritella LLP ("K&S") and Barton LLP ("Barton" and, together with K&S, "Counsel"), as co-lead counsel (the "Motion").

## PRELIMINARY STATEMENT

This case is a securities class action against Universal Navigation Inc. dba Uniswap Labs ("Uniswap") and its controlling owners, including Hayden Adams ("Adams"), Paradigm Operations LP ("Paradigm"), AH Capital Management, L.L.C. dba Andreesen Horowitz ("Andreesen"), and Union Square Ventures, LLC ("USV") (collectively, the "Owners" and, together with Uniswap, "Defendants"). Defendants created, own, and manage in the United States what they refer to as the "Uniswap Protocol" (the "Exchange") and Uniswap's user interface (the "User Interface"). This action arises from Defendants' violations of securities laws through their unlawful promotion, offer, and sale of unregistered securities on the Exchange, in the form of crypto "tokens", including the tokens purchased (the "Tokens")[1] by the Investor Group. Plaintiff Nessa Risley brought this case on behalf of a proposed class of all persons who purchased tokens on the Exchange. Should this motion be granted, counsel for the Investor Group will amend the Complaint to include, among other things, each individual member of the Investor Group as a

---

[1] The Tokens include Alphawolf Finance, Akita, Archangel, Ares Protocol, Autz, Bezoge, BoomBaby.io, Cyber Doge, Dogelon, Dent, Dogg Token, Ethereum Chain Token, Ethereum Max, FEGtoken, Goku Inu, Hoge.finance, HoloToken, HuskyToken, Jupiter, Kawakami Inu, Kishu Inu, Lorde Edge, Lukso Token, The Official Mine Token, Olympus Dao, Matrix Samurai, Mononoke Inu, Pundi X Token, Rocket Bunny, Saitama, Samsung Metaverse, Sanshu Inu, Shih Tzu, Smooth Love Potion, StarLink, Stoner Doge, Vera, Wise Token and YfDai.finance.

named plaintiff on behalf of a proposed class of all persons who purchased any of the Tokens on the Exchange (the "Class").  To date, this is the *only* filed case concerning these allegations against Defendants.

The PSLRA directs the Court to appoint as lead plaintiff the class member or group of class members that the Court "determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i).  Under the applicable standards, the Investor Group are the "most adequate plaintiff[s]" to represent the Class.

The Investor Group timely filed the Motion, have substantial financial interests in the outcome of this litigation, and satisfy the typicality and adequacy requirements under Rule 23 of the Federal Rules of Civil Procedure.  The Investor Group will fairly and adequately protect the Class's interests by seeking full redress on behalf of the Class, and they are not subject to unique defenses.  The Investor Group have selected qualified, experienced counsel—K&S and Barton— which will provide the Class with exceptional representation against these sophisticated Defendants.  For these reasons, the Investor Group respectfully requests that the Court appoint them as lead plaintiffs and approve their selection of K&S and Barton as co-lead counsel.

## FACTUAL BACKGROUND

The Exchange is one of the largest crypto-asset exchanges in the world.  Complaint (ECF No. 1, "Compl.") ¶ 1.  Uniswap promotes its Exchange as "one of the most widely-used platforms on Ethereum."  *Id.* ¶ 43.  Trading on the Exchange is conducted through Uniswap's User Interface. *Id.* ¶ 53.  Uniswap has no barriers to entry for issuers looking to sell—or "swap"—crypto tokens on the Exchange.  *Id.* ¶ 2.  Uniswap requires no verification of an individual's identity, nor does it conduct any "know-your-customer" process.  *Id.* ¶ 2.  Defendants' decision to allow complete anonymity, coupled with the lack of any listing fees or requirements, has created and fostered an ideal environment for fraudulent conduct.  *Id.* at ¶ 75.  The ease of listing new tokens on Uniswap

2

led to the creation of thousands of digital tokens on the Exchange, many or most of which are fraudulent.  *Id.* ¶ 130.

The Tokens are "investment contracts" and therefore "securities" under Section 2(a)(1) of the Securities Act of 1933 (the "'33 Act") and Section 3(a)(10) of the Securities and Exchange Act of 1934 (the "'34 Act").  Uniswap promoted, offered, and sold the Tokens on their Exchange, without registering as an exchange or a broker-dealer, and without a registration in effect for the securities they were selling.  Compl. ¶¶ 130-133.  Had the Tokens been registered as required under applicable law, Plaintiff and the Class members would have received necessary and meaningful disclosures that would have enabled them to more fully assess the representations issuers of the Tokens made and, in turn, the relative riskiness of their investments.  *Id.* at ¶ 7.

As alleged in the Complaint, Uniswap has violated Sections 5 and 29(b) of the '34 Act by failing to register with the United States Securities and Exchange Commission (the "SEC") as an exchange or broker-dealer.  In addition, Uniswap violated Sections 15(a)(1) and 29(b) of the '34 Act by facilitating the sale of the Tokens, as well as Sections 5 and 12(a)(1) of the '33 Act by selling, promoting, and/or soliciting the Tokens directly to plaintiffs and members of the proposed class.

Defendants have at all relevant times maintained complete control over the Exchange and the User Interface.  Compl. ¶ 82.  Defendant Adams has publicly acknowledged and lauded Defendants Paradigm, Andreesen, and USV, claiming that they were intimately involved in (i) developing and promoting the Exchange, (ii) writing smart contracts (programs or protocols that allow the Exchange to function), (iii) overseeing Uniswap's operations, (iv) providing crucial funding, (v) "educating regulators", (vi) sharing "insider info", and (vii) "a whole lot more".  *Id.*

at ¶ 88.  The Owners also hold a significant and controlling stake in UNI tokens (as high as 88%), which allows them to control Uniswap's governance and thereby the Exchange.  *Id*. at ¶ 111.

As a result of Defendants' violations, Plaintiff, on behalf of herself and all others similarly situated who purchased the same tokens as she did, brought claims against (i) Uniswap under the '34 Act and the '33 Act (Counts I, II and IV) and (ii) the Owners under control person liability (Counts III and V).  Plaintiff seeks damages for the losses in the Tokens she purchased, including all fees and charges collected by Uniswap.  After Plaintiff filed this action, additional investors, with losses in Tokens that Plaintiff did not invest in, decided they wanted to join the Investor Group and seek damages on behalf of similarly situated investors.  The additional investors intend to join this action as named plaintiffs after this Motion is decided.

## ARGUMENT

### I.      The Investor Group Should Be Appointed Lead Plaintiffs

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."   15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i).  First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;

> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

4

15 U.S.C. § 78u-4(a)(3)(B)(iii).  Courts have recognized the value of groups of individuals serving as lead plaintiffs where, as here, there is a benefit to the litigation.  *See, e.g., In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Because the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case.").  "If a movant satisfies the three statutory factors—making a timely motion, demonstrating the largest financial interest, and otherwise satisfying Rule 23—then the court shall adopt a presumption that the movant is the most adequate plaintiff." *Salinger v. Sarepta Therapeutics, Inc.*, No. 19-CV-8122, 2019 U.S. Dist. LEXIS 218248, at *8 (S.D.N.Y. Dec. 17, 2019) (internal quotation marks omitted). "[O]ther members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of unique defenses." *Id.* (internal quotation marks omitted).

The Investor Group meets these requirements and should therefore be appointed lead plaintiffs.  Risley filed the Complaint against these Defendants on behalf of herself and all others similarly situated; the Investor Group (which includes Risley) has, by this Motion, timely moved to be appointed lead plaintiffs; the Investor Group has the largest financial interest (whether measured individually or collectively); and the Investor Group satisfies the applicable Rule 23 factors.

A. **The Investor Group Has Timely Filed a Motion To Be Appointed Lead Plaintiffs**

Given that the Investor Group's Motion is timely filed, it is entitled to be considered for appointment as lead plaintiffs.  On April 4, 2022, Risley filed the Complaint against Defendants— which remains the *only* complaint concerning Defendants' alleged misconduct.  ECF No. 1.

Counsel published the requisite PSLRA notice through Business News Wire on April 8, 2022, advising class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed class period; and (4) the right to move the Court to be appointed as lead plaintiff by June 7, 2022.  *See* Declaration of James R. Serritella (the "Serritella Decl."), Exhibit 8.  Finally, on June 7, 2022, the Investor Group timely filed this Motion seeking appointment as lead plaintiffs and approval of K&S and Barton as co-lead counsel.

        **B.**        **The Investor Group Has the Largest Financial Interest**

Although the PSLRA does not provide a method for calculating which plaintiff has the "largest financial interest," this District has "consider[ed] four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Salinger*, 2019 U.S. Dist. LEXIS 218248, at *7 (citing *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005)).  In making this determination, "[t]he magnitude of the loss is the most significant factor."  *Id*. (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)).

During the Class Period, the Investor Group invested $102,517.34 in trillions of Tokens on Uniswap and incurred losses of $81,719.59 or 80% of their investments.  *See* Serritella Decl., Exhibits 1 – 6.  Moreover, each member of the Investor Group individually possesses a significant financial interest in the relief sought by the Class as set forth below:

| Investor | Token(s) Purchased | Value of Token(s) Purchased | Value of Token(s) Sold | Realized Losses[2] |
|---|---|---|---|---|
| Nessa Risley | Alphawolf Finance, Bezoge, BoomBaby.io, Ethereum Max, Matrix Samurai and Rocket Bunny | $9,050.36 | $1,868.13 | $7,615.54 |
| James Freeland | Akita, Archangel, Ares Protocol, Autz, Cyber Doge, Dent, Dogg Token, Ethereum Chain Token, Ethereum Max, FEGtoken, Goku Inu, Hoge.finance, HoloToken, Jupiter, Kawakami Inu, Kishu Inu, The Official Mine Token, Mononoke Inu, Pundi X Token, Saitama, Sanshu Inu, Smooth Love Potion, StarLink, Stoner Doge, Vera, and YfDai.finance | $1,804.25 | 0 | $1,849.88 |
| Robert Scott | Dogelon, HuskyToken, Kishu Inu, Lorde Edge and Shih Tzu | $77,287.39 | $19,779.54 | $58,914.91 |
| Annie Venesky | Wise Token | $3,847.63 | $1,796.72 | $2,563.33 |
| Andrew Cardis | Lukso Token and Olympus Dao | $9,610.82 | 0 | $9,838.62 |
| Dean Meyers | Samsung Metaverse | $916.89 | 0 | $937.31 |

See Serritella Decl., Exhibits 1 – 6.

    To the best of counsel's knowledge, there are no other plaintiffs (1) with a larger financial
interest or (2) who possess standing to bring claims concerning a greater number of tokens than
the Investor Group.  Accordingly, the individuals comprising the Investor Group will benefit the

---

[2] Inclusive of fees and calculated based on rescissory damages.

greatest number of Class members.  *See, e.g., In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 334 (S.D.N.Y. 2021) (holding that "plaintiff lacks standing to bring suit regarding tokens that he did not purchase, and his claims arising from the existence of those tokens must be dismissed.").

In comparable circumstances, courts in this District have permitted coalitions of individuals to serve as lead plaintiffs.  The PSLRA expressly permits a "group of persons" to be appointed lead plaintiff.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).  To ascertain whether a lead plaintiff group is appropriate, courts generally consider three factors: "(1) the size of the group; (2) the relationship between the parties; and (3) any evidence that the group was formed in bad faith." *Underwood v. Coinbase Global Inc.*, No. 1:21-cv-08353-PAE, ECF No. 21, at *7 (S.D.N.Y. Jan. 11, 2022).

These factors support the appointment of the Investor Group as lead plaintiffs.  First, with respect to the size of the group, several securities class actions in this District involving crypto assets have seen the appointment of a comparable number of individuals as lead plaintiff.  *See, e.g., Lee v. Binance*, No. 1:20-cv-02803-ALC, ECF No. 40 (S.D.N.Y. Aug. 26, 2020) (approving group of eight lead plaintiffs, including seven individuals (six of whom joined the action after it was initially filed) in securities class action against crypto-asset exchange,); *Underwood v. Coinbase Global Inc.*, No. 1:21-cv-08353-PAE, ECF No. 21 at *8 (approving group of three individuals (one of whom joined after the action was initially filed) to serve as lead plaintiffs in securities class action against crypto-asset exchange).  Second, as in *Underwood*, each member of the Investor Group "by filing together . . . have demonstrated their ability to work cooperatively." *Id*.  Finally, as in *Underwood*, there is no indication the Investor Group was formed in bad faith as there are no competing claimants with higher individual losses than the members of the Investor

Group.  *Id*.; *see also Peters v. Jinkosolar Holding Co.*, 1:11-cv-07133, 2012 U.S. Dist. LEXIS 38489, at *25 (S.D.N.Y. Mar. 19, 2012) ("[W]here the group comprises the class members with, far and away, the largest financial interest of any individual or group (that has otherwise come forward), then the policy [of the PSLRA] is not disserved by allowing those individuals to join together.").

Moreover, in securities class actions against crypto-asset exchanges, where standing is a major consideration as to each token at issue, *see In re Bibox*, 534 F. Supp. 3d at 334, it is common for multiple lead plaintiffs (with different token purchases) to participate in the same action so that the class may pursue maximum recovery and seek redress for the greatest number of users of such exchanges.  Here, with the exception of very minimal overlap, the individuals who form the Investor Group each invested in different tokens listed on the Exchange.  *See* chart, *supra* at 7. Therefore, the Investor Group satisfies the PSLRA's presumption in favor of the lead plaintiff or group of lead plaintiffs with the largest financial interest in the relief sought by the Class.

### C.     The Investor Group Satisfies the Typicality and Adequacy Requirements of Rule 23

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  "In making the determination of whether a movant otherwise satisfies the requirements of Rule 23, the movant must make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Salinger*, 2019 U.S. Dist. LEXIS 218248, at *7 (internal quotation marks omitted) (citing *In re eSpeed*, 232 F.R.D. at 102).  "This determination need not be as complete as would a similar determination for the purpose of class certification, and the movant is only required to make a prima facie showing that it meets the typicality and adequacy requirements." *Id*. (citations and internal quotation marks omitted).

1.      The Investor Group's Claims are Typical of the Class

In analyzing typicality, "courts consider whether the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise." *Salinger*, 2019 U.S. Dist. LEXIS 218248, at *7 (internal quotation marks omitted).   "While the claims need not be identical, they must be substantially similar to the other member' claims." *Id.* at *7-8 This occurs when "each class member makes similar legal arguments to prove the defendant's liability." *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

The Investor Group satisfies this requirement.   Each member of the Investor Group purchased one or more of the Tokens on the Exchange.  Also, like every member of the Class, the Investor Group seeks to recover under the federal securities laws for losses on investments in digital assets resulting from Defendants' unregistered sale of securities.  Specifically, the Investor Group brings claims against Defendants under Sections 5 and 12(a)(1) of the '33 Act, and Sections 5, 15(a)(1), and 29(b) of the '34 Act, and claims against the Owners under Sections 5 and 12(a)(1) of the '33 Act and Section 20 of the '34 Act.  *See* Compl. ¶¶ 245-79.  Should relief be granted, these claims entitle the Investor Group to, like every member of the Class, obtain the full measure of financial and equitable remedies outlined in the Complaint.

Additionally, as outlined in the Complaint, Defendants' misconduct overwhelmingly targeted retail investors, who are the vast majority of users of the Exchange.  *See* Compl. ¶¶ 116-124 (detailing allegations about how bad actors use Uniswap to perpetrate scams against smaller investors).  As a result, a group of individual investors is less likely to be subject to unique claims and defenses, as opposed to any institutional investors, which are much more likely to be issuers of Tokens and thus to have violated securities laws themselves.

2.   The Investor Group Will Fairly and Adequately Protect the Interests of the Class

In analyzing adequacy, "a court must consider whether the proposed lead plaintiff: (1) maintains claims that conflict with those of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *Salinger*, 2019 U.S. Dist. LEXIS 218248, at *8 (citing *Reitan v. China Mobile Games & Entm't Grp. Ltd.*, 68 F. Supp. 3d 390, 400 (S.D.N.Y. 2014)).

The Investor Group satisfies these requirements.  First, there is no conflict between the Investor Group and the Class.  Both the Investor Group and the Class purchased the Tokens on the Exchange—creating a shared interest in similar legal remedies for their similar transactions.  This alignment of interests will hold at each stage of the litigation.

Second, as discussed above, the Investor Group has sufficient interest in the outcome of the case.  Each realized significant losses during the Class Period as a result of Defendants' brokering, dealing, offering, and selling unregistered securities on the Exchange.  Given their significant individual losses, each member of the Investor Group is motivated to maximize the Class's recovery and will work closely together to achieve that end.

Finally, as addressed in greater detail below, the Investor Group has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question.  The ability of the Investor Group to adequately represent the Class is further evinced by their selection of counsel that has already marshaled significant factual support for the underlying claims against Defendants.  *See*, *e.g.*, *Kuebler v. Vectren Corp.*, No. 3:18-cv-00113-RLY-MPB, 2018 U.S. Dist. LEXIS 153360, at *10 (S.D. Ind. Aug. 10, 2018) (proposed lead plaintiff group "vigorously prosecuted the interests of the class: it was the first to file a complaint, publish the necessary notice, and move for a preliminary injunction," which was "enough to show that the [plaintiff group] has

satisfied the threshold requirements of Rule 23").  Here, as in *Kuebler*, members of the Investor Group were the first to investigate the claims at issue, file a complaint, and publish the necessary notice, which weighs in favor of their appointment as lead plaintiffs.  Accordingly, the Investor Group satisfies the adequacy requirement.[3]

## II.    K&S and Barton Should be Approved as Co-Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  "There is a strong presumption in favor of approving a properly-selected lead plaintiffs decision as to counsel." *Kux-Kardos*, 151 F. Supp. at 479 (citing *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015)).  Co-lead counsel may be appointed "provided that there is no duplication of attorneys' services, and the use of co-lead counsel does not in any way increase attorneys' fees and expenses." *Sofran v. Labranche & Co.*, 220 F.R.D. 398, 404 (S.D.N.Y. 2004) (appointing co-counsel with "extensive experience in prosecuting complex securities actions.").

K&S and Barton are qualified, experienced, and more than capable of effectively prosecuting this class action on behalf of Risley and the Class.  James Serritella, a co-founder of Kim & Serritella LLP, and the lead attorney on this case, has nearly 15 years of complex commercial litigation and class action experience with a high degree of successful results, as well as substantial courtroom and trial experience.  Serritella Decl., Exhibit 7 at 1, 3, 5.  Mr. Serritella and K&S have a deep understanding of crypto-assets and regularly represent investors in novel disputes concerning such assets.  *Id.*, Exhibit 7 at 2.  K&S also regularly prosecutes claims on behalf of investors that lost millions of dollars investing in traditional securities.  *Id.*  Prior to

---

[3] Should, for any reason, this Court disallow the Investor Group from collectively serving as lead plaintiffs, each of Risley, Freeland, Scott, Venesky, Cardis, and Meyers request, in the alternative, to be considered individually for the role of lead plaintiff.

launching K&S, as a partner at two large prestigious law firms, for several years, Mr. Serritella oversaw all aspects of several novel and high stakes litigations concerning securities and investments, including defending large investment banks against billions of dollars in claims in (i) fraud and put-back actions alleging misrepresentations in offering materials and breaches of representations and warranties in connection with the sale of residential mortgage-backed securities and (ii) actions commenced by the trustee liquidating Bernard L. Madoff Investment Securities LLC and the liquidators of a foreign fund that invested in Madoff. *Id.* Complimenting Mr. Serritella are seasoned attorneys at K&S who also have substantial complex litigation and class action experience, including in connection with securities, antitrust and wage and hour claims. *Id.*

Barton LLP, with offices in New York, Los Angeles, and Tennessee, has a national reach comprised of practice leaders who have been regularly recognized for their excellence. *See* Declaration of Christopher J. McNamara ("McNamara Decl.") at ¶ 3, Exhibit A at 2. The firm has extensive experience litigating claims arising under the '33 and '34 Acts, as well as those under state corporate and securities statutes. *Id.*, Exhibit A at 4. Barton attorneys have significant experience litigating complex securities matters, including securities class actions, in addition to regularly representing clients in investigations and enforcement actions brought by agencies such as the SEC, DOJ, FINRA, and the New York Department of Financial Services. *Id.* Barton's litigators, including Messrs. Barton, McNamara, and Ward, have a well-established track record for achieving highly successful results in complex business disputes, including securities class actions, in courts throughout the country. *Id.*, Exhibit A at 3-11. In addition to its litigation practice, Barton has a diverse team of seasoned attorneys well-versed in the federal and state securities laws that regularly provides clients of all shapes and sizes with best-in-class counseling

in connection with, among other things, federal and state registration of public securities offerings, including both initial public offerings and secondary offerings.  The many decades of experience among this group will only serve to benefit the Class.

In the months leading up to the filing of the Complaint, and in the weeks thereafter, K&S and Barton have enjoyed an exceptional and efficient collaboration on this case.  Prior to filing the Complaint, K&S and Barton devoted substantial time and resources working in identifying and investigating the claims set forth in the Complaint.  *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 44 (S.D.N.Y. 2012) (crediting the importance of counsel's pre-suit work in appointing lead counsel).  For nearly 10 months prior to the filing of the action, K&S engaged in an extensive pre-suit investigation into the claims, enabling it to become experts on the nuances of the novel legal issues in this case, particularly in the "DeFi" sector of crypto-assets, and obtaining deep knowledge of the facts of the case, including the extensive intricacies and complex nature of how the Exchange works.  Barton teamed with K&S to supplement the firm's extensive class action and securities experience, bringing additional resources and perspective as the two firms worked side-by-side to investigate, file, and litigate this case.  Even after the filing of this action, K&S and Barton have continued to expend additional substantial resources in further work related to the prosecution of this action.  No other lawyers are better suited to represent the plaintiffs in this action.

Accordingly, the Investor Group respectfully submit that K&S and Barton are qualified to serve as co-lead counsel in this litigation and together will provide the Class with exceptional legal representation.

14

## **CONCLUSION**

For the above reasons, the Investor Group respectfully request that this Court (i) appoint Risley, Freeland, Scott, Venesky, Cardis, and Meyers as lead plaintiffs and (ii) approve Risley, Freeland, Scott, Venesky, Cardis, and Meyers's choice of K&S and Barton as co-lead counsel for the Class; and (iii) issue any other relief that the Court deems just and proper.

Dated:   New York, New York
          June 7, 2022

Respectfully submitted,

KIM & SERRITELLA LLP

By:  /s/ James R. Serritella
     James R. Serritella
     Aram M. Boghosian
     110 W. 40th Street, 10th Floor
     New York, NY 10018
     212-960-8345
     jserritella@kandslaw.com
     aboghosian@kandslaw.com

BARTON LLP

By:  /s/ Christopher J. McNamara
     Roger E. Barton
     Christopher J. McNamara
     Michael C. Ward
     711 Third Avenue, 14th Floor
     New York, NY 10017
     212-687-6262
     rbarton@bartonesq.com
     cmcnamara@bartonesq.com
     mward@bartonesq.com