October 26, 2022

Re: *Risley v. Universal Navigation Inc. et al.*, No. 22 Civ. 2780 (S.D.N.Y.)

Dear Judge Failla:

Defendants Paradigm Operations LP, AH Capital Management, L.L.C., and Union Square Ventures, LLC (together, the "VC Defendants") respectfully submit this letter pursuant to Section 4.A of Your Honor's Individual Practices to request a pre-motion conference regarding their anticipated motion to dismiss the First Amended Complaint (ECF No. 46, the "AC"). The original Complaint named the VC Defendants—which are a collection of venture capital firms that invest in private companies—in counts alleging control person liability pursuant to the Securities Act of 1933 ("Securities Act") and Securities Exchange Act of 1934 ("Exchange Act"). The AC now names the VC Defendants in *all* counts, including counts premised on the untenable notion that they themselves are unregistered "exchanges" or "broker-dealers." Plaintiffs have done so without making any material change in the factual allegations originally levied against the VC Defendants. Still missing is *any* well-pled allegation that the VC Defendants acted as an exchange or broker-dealer, entered into any contractual relationship with any Plaintiff, or interacted in any way with Plaintiffs regarding the Uniswap Protocol or any of the challenged tokens. Plaintiffs may only proceed with claims based on plausible and supported factual allegations, which the AC demonstrably lacks. *See* 15 U.S.C. § 77z-1(c); 15 U.S.C. § 78u-4(c) (requiring in cases subject to the Private Securities Litigation Reform Act that a court, upon a "final adjudication of the action," make specific findings regarding compliance with Rule 11(b)).

As set forth in Uniswap Labs' letter, Plaintiffs' claims against Uniswap Labs fail as a matter of law and are frivolous as to the VC Defendants.[1] Further, as described below, Plaintiffs' claims against the VC Defendants for "seller" and "control person" liability fail for additional reasons.

### I. Plaintiffs Fail to Plead that the VC Defendants Were Statutory Sellers

Section 12(a)(1) of the Securities Act provides that any person who "offers or sells a security in violation of [Section 5 of the Act]" shall be liable "to the person purchasing such security from him." 15 U.S.C. §§ 77*l*(a), 77e. Setting aside Plaintiffs' flawed argument that the tokens qualify as "securities," their claims against the VC Defendants fail because the AC does not allege that the VC Defendants (1) passed Plaintiffs title to any tokens, or (2) successfully solicited Plaintiffs' purchase of any tokens. *Pinter v. Dahl*, 486 U.S. 622, 648 (1988).

To state a claim under a "passing title" theory, Plaintiffs must allege "a buyer-seller relationship not unlike traditional contractual privity." *Id.* at 642. The AC is devoid of any well-pled factual allegations that any VC Defendant passed title to any token to Plaintiffs. In fact, Plaintiffs do not plead that any VC Defendant *held* any of the Tokens they label as "securities," let alone *sold* any token to any Plaintiff. Rather, Plaintiffs admit that many of the issuers for the Tokens at issue were "unknown or anonymous," and they make no effort to identify the party that sold Plaintiffs any of the Tokens at issue. (AC ¶ 199.)

Plaintiffs' claim fares no better under a "solicitation" theory. Under *Pinter*, a defendant may be held liable if he "successfully solicit[ed] the purchase" of the security at issue and was

---

[1] To avoid repetition, the VC Defendants adopt and incorporate by reference the arguments of Uniswap Labs. All capitalized terms shall have the meanings ascribed to them in the AC.

"motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter*, 486 U.S. at 647. Solicitation requires a relationship between the purchaser and the defendant that consists either of "direct[] contact[]" or "active solicitation[]" resulting in the purchase. *Holsworth v. BProtocol Found.*, 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021). Here, Plaintiffs fail to plead any communications between the VC Defendants and any Plaintiff, let alone that Plaintiffs purchased Tokens because of such communications.[2]

Plaintiffs cannot cure these deficiencies simply by pointing to the VC Defendants' alleged investment in Uniswap Labs or purported proximity to the Protocol. (*See, e.g.*, AC ¶¶ 99, 100); *Pinter*, 486 U.S. at 654 (rejecting test that subjects any actor who was a "substantial factor" in purchase to Section 12 liability). And while Plaintiffs allege that the VC Defendants were so-called "liquidity providers" on the platform, they tellingly do not allege that any VC Defendant made any transactions in any of the Tokens at issue.[3] The absence of allegations showing a direct relationship between the VC Defendants and any of Plaintiffs' Token purchases is fatal here. *In re Longfin Corp. Sec. Class Action Litig.*, 2019 WL 1569792, at *7 (S.D.N.Y. Apr. 11, 2019).

## II. Plaintiffs Fail to Plead Control Person Liability

Plaintiffs likewise fail to allege control person liability against any of the VC Defendants. To state such claims, Plaintiffs must allege facts showing (1) a primary violation by a controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's conduct. *Bratusov v. Comscore, Inc.*, 2020 WL 3447989, at *6 (S.D.N.Y. June 24, 2020) (Failla, J.). Plaintiffs have not pled any primary violation. In addition, the AC does not contain well-pled facts that the VC Defendants controlled Uniswap Labs or were culpable participants in the alleged violative conduct.

*First*, Plaintiffs fail to allege that any VC Defendant had control over Uniswap Labs, *i.e.*, the alleged primary violator. This requires showing "the practical ability to direct the actions of [Uniswap Labs]," and "not the mere ability to persuade." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458 (S.D.N.Y. 2005). The AC is devoid of any factual allegations that any VC Defendant possessed the power to direct Uniswap Labs' management and policies, resting instead on conclusory assertions that simply "reiterat[e] the definition of control, without facts demonstrating whether this definition has been met." *Yi v. GTV Media Grp. Inc.*, 2021 WL 2535528, at *4 (S.D.N.Y. June 18, 2021); (*see, e.g.*, AC ¶ 727.) While Plaintiffs point to the VC Defendants' status as Uniswap Labs investors and UNI token-holders (*id.* ¶¶ 100-104, 106, 134-135, 742), courts consistently reject such allegations as insufficient to demonstrate control. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 492 (S.D.N.Y. 2005). Plaintiffs' reliance on a series of tweets by Defendant Adams to allege that the VC Defendants had "been incredibly value additive" by providing funding, "advising," and "making introductions" fares no better. (AC ¶ 104.) Not only are these allegations too vague to establish control,[4] but it is also well established that allegations of mere influence, even if substantial, cannot establish control. *See In re BioScrip,*

---

[2] Plaintiffs allege certain VC Defendants invested in Sky Mavis, "the company behind" the SLP Token. (AC ¶¶ 417, 421.) Plaintiffs fail to allege any connection between that investment and any Plaintiff's purchase of the SLP Token.

[3] In fact, the VC Defendants never acted as liquidity providers on the platform, contrary to Plaintiffs' vague and conclusory allegations (AC ¶¶ 21-24), which are made "[u]pon information and belief" and devoid of any support.

[4] The AC, by its own admission, acknowledges that these allegations provide no indication of "what each of [the VC Defendants] did specifically (or continue to do)." (AC ¶ 106.)

*Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 740–41 (S.D.N.Y. 2015) ("Substantial influence is not the same as actual control . . . ."); *In re Flag*, 352 F. Supp. 2d at 458–59; *Yi*, 2021 WL 2535528, at *4.

**Second**, Plaintiffs fail to allege that the VC Defendants "exercised **actual** control over the matters **at issue**." *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 460 (S.D.N.Y. 2018). Regarding the VC Defendants' alleged control over Uniswap Labs' status as a purported unregistered "exchange" or "broker-dealer," Plaintiffs baldly claim that the VC Defendants' status as UNI token-holders "[gave] them the ability to control the Protocol." (AC ¶¶ 90, 101 134, 135.) But Plaintiffs do not, because they cannot, allege that UNI token-holders had the ability to control **Uniswap Labs** (the alleged primary violator), or its management and policies. Regardless, they also do not and cannot allege that any of the VC Defendants ever exercised control of the Protocol, let alone with respect to any of the claimed violations. *See Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166-67 (S.D.N.Y. 2012).

Plaintiffs' control allegations regarding the statutory seller claims are just as deficient. Plaintiffs claim that the VC Defendants "jointly participated in, and/or aided and abetted, [Uniswap Labs'] sale and solicitation of securities," without any well-pled facts to support this rote conclusion. (AC ¶ 744.) While Plaintiffs allege a variety of activity consisting of advising, writing smart contracts and white papers, and contributing to previous versions of the Protocol (*id.* ¶¶ 104, 109, 111), they again do not allege how these activities gave the VC Defendants the ability to direct any actions of Uniswap Labs, let alone Uniswap Labs' alleged sales of unregistered "securities." (Indeed, smart contracts are, as Plaintiffs admit, "self-executing, self-enforcing" code (AC ¶ 42) that could not be changed by anyone.) Plaintiffs also do not adequately allege that these activities gave the VC Defendants control over which tokens would be transacted on the Protocol, a significant omission since the Protocol can—and is—used to transact in tokens that are **not** alleged to be securities. (*Id.* ¶¶ 69, 82, 170.) Although Plaintiffs generically assert that the VC Defendants were "intimately involved with the operations of Uniswap [Labs]" (AC ¶ 103), such "generalized allegations do not establish [an entity's] control of any specific transaction." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 96 F. Supp. 3d 325, 345 n.16 (S.D.N.Y. 2015).

**Finally**, Plaintiffs fail to plead any facts showing that any VC Defendant was a "culpable participant" in the purported violations. *Bratusov*, 2020 WL 3447989, at *6.[5] Instead, the AC rests on conclusory allegations that the "Defendants are fully aware of the fraud" (AC ¶ 3)—allegations that are non-particularized and wholly insufficient. *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d at 491-92; *In re Sotheby's Holdings, Inc.*, 2000 WL 1234601, at *7-8 (S.D.N.Y. Aug. 31, 2000) (dismissing Section 20(a) claims: recklessness could not be pled through boilerplate allegations).[6]

---

[5] Courts in this Circuit hold that culpable participation is an element under Section 20(a) of the Exchange Act, but are split on whether it is an element under Section 15 of the Securities Act. *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011). The better-reasoned decisions find that culpable conduct must be alleged— a conclusion that is particularly appropriate here, where Plaintiffs' claims sound in fraud. *See, e.g.*, *Pub. Emps' Ret. Sys. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010); (*see* AC ¶ 794-801.).

[6] Plaintiffs' state-law control person claims also fail since those claims are construed under the same standards discussed above. *See Hunt v. Miller*, 908 F.2d 1210, 1214 (4th Cir. 1990) (North Carolina); *Zazzali v. Swenson*, 2013 WL 6095361, at *13-14 (D. Idaho Jan. 25, 2013) (Idaho). If the Court dismisses Plaintiffs' federal claims, it should decline to exercise supplemental jurisdiction over the state claims. *Grupo Verzatec S.A. DE C.V. v. RFE Inv. Partners*, 2019 WL 1437617, at *9 (S.D.N.Y. Mar. 29, 2019).

Respectfully submitted,

| | |
|---|---|
| LATHAM & WATKINS LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| By: s/ Susan E. Engel<br>Susan E. Engel<br>(susan.engel@lw.com)<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C. 20004-1304<br>Telephone: (212) 637-2200 | By: s/ Alexander C. Drylewski<br>Alexander C. Drylewski<br>(alexander.drylewski@skadden.com)<br>Tansy Woan<br>(tansy.woan@skadden.com)<br>One Manhattan West<br>New York, New York 10001-8603<br>Telephone: (212) 735-2129 |
| Benjamin A. Naftalis<br>(Benjamin.naftalis@lw.com)<br>Douglas K. Yatter<br>(douglas.yatter@lw.com)<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 906-1200 | *Attorneys for Defendant Paradigm Operations LP* |
| *Attorneys for Defendant AH Capital Management, L.L.C.* | |
| | DEBEVOISE & PLIMPTON LLP |
| | By: s/ Elliot Greenfield<br>Elliot Greenfield<br>(egreenfield@debevoise.com)<br>Maeve L. O'Connor<br>(moconnor@debevoise.com)<br>919 Third Avenue<br>New York, New York 10022<br>Telephone: (212) 909-6000 |
| | *Attorneys for Defendant Union Square Ventures, LLC* |

cc: All counsel (via ECF)