**VIA ECF AND EMAIL**
Hon. Katherine Polk Failla, U.S. District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov

Re:   *Risley v. Universal Navigation Inc., et al.*, Case No. 1:22-cv-02780-KPF

Dear Judge Failla:

Pursuant to this Court's October 28, 2022 order (Dkt. No. 59), Plaintiffs submit this omnibus response to the letters filed by Defendants Universal Navigation Inc. d/b/a Uniswap Labs ("Uniswap") and Hayden Z. Adams (Dkt. No. 52); Defendants Paradigm Operations LP ("Paradigm"), AH Capital Management, L.L.C. ("Andreessen"), and Union Square Ventures, LLC ("USV") (Dkt. No. 54); and Defendant Uniswap Foundation (Dkt. No. 56).

Conspicuously absent from Defendants' letters are any challenge to the core allegations contained in the First Amended Class Action Complaint ("FAC"). Plaintiffs allege in specific detail that the Uniswap protocol (the "Protocol"), created and controlled by Defendants, has invited and encouraged a breathtaking amount of fraud, which occurs **by the minute**.[1] By allowing anyone to list a security on the Protocol without a vetting process, required criteria or any restrictions whatsoever, Defendants are flouting the securities laws, all so that they can extract profits at the expense of countless retail investors who are the victims of this pervasive fraud. Recognizing the severity of these allegations, Defendants pivot away from them by repeatedly mischaracterizing the FAC, while simultaneously introducing self-serving and contradictory statements, none of which support their arguments.

As discussed herein and as will be discussed more fully in Plaintiffs' oppositions to the forthcoming motions to dismiss, Plaintiffs state a claim for all causes of action in the FAC.

### I. Plaintiffs Sufficiently Allege that Uniswap and the Owners Control the Interface and the Protocol

What is most revealing about Defendants' letters is what they chose *not* to address, namely the extensive allegations regarding Defendants control of both the Uniswap Interface (the "Interface") and the Protocol. Indeed, Defendants make no mention whatsoever of the Interface in any of their letters. This is a critical omission because Defendants, through the Interface (which can be accessed via a mobile app or a web browser), market, solicit orders for, and facilitate access to the Protocol. *See* FAC ¶¶ 64-72, 74. Uniswap, which hosts the Interface on its webserver, maintains final and unilateral control over all business on the Interface. *Id.* ¶¶ 64, 117. Uniswap, through its control of the Interface, determines how and to what extent users interact with the

---

[1] In fact, it was recently reported that a study concluded 97.7% of all tokens on the Protocol are "rug pull" scams. *See* https://www.cryptopolitan.com/uniswap-accounts-for-97-7-of-token-rug-pulls/

Protocol, and which tokens are available to trade. *Id.* ¶¶ 119-120, 190-91. Moreover, Uniswap does not allow anyone to "copy" or "modify" the Protocol without first obtaining a "business source license" from Uniswap, *see, e.g.*, FAC ¶ 121, which completely undercuts Defendants' specious argument that the Protocol is "simply a computer code" running all by itself.

Defendants also conveniently avoid any reference to Uniswap's governance structure (the "Governance") in an apparent attempt to sidestep Plaintiffs well-pleaded allegations, including that the Defendants "have a disproportionate amount of power and effectively control Uniswap's governance—and by extension the Protocol." FAC ¶ 129. *See also id*. ¶ 132 (alleging that the governance "was created to enable the Owners to control the Protocol."). Plaintiffs allege that the Owners "individually and/or collectively, hold enough UNI tokens to completely control the Governance, and therefore, the Protocol." *Id.* ¶ 134. Andreessen alone holds by far the most UNI tokens, and by extension, the most "votes" in connection with the Governance. *Id.* ¶ 138.

Try as they must, Defendants cannot escape the FAC's allegations (and their own admissions) that there is no meaningful distinction between Uniswap and the Protocol. In fact, just two days ago, the official Twitter account for Uniswap posted that "[t]he **Uniswap Protocol** is four years old today!!" The post noted that "[w]ith four years under **our** belt" the Protocol has "[s]upported over $1.2T in trading volume" and "[**f]acilitated** over 100M+ trades." (Emphasis added). Additionally, shortly after Plaintiffs filed the FAC, Uniswap announced that it had raised an additional $165 million (based on a reported valuation of $1.66 billion) from, among others, Andreessen and Paradigm. In a blog post published on Uniswap's website, Hayden Adams announced that "Uniswap Labs is bringing the powerful simplicity and security that has defined the **Uniswap Protocol** to even more people across the world, by investing in **our web app** [*i.e.*, the Interface] and developer tools…" and that these investments would support this "growth." (Emphasis added).

## II. Plaintiffs State a Claim Under the Exchange Act

Plaintiffs bring claims under Section 29(b) of the Securities Exchange Act of 1934 to rescind their contracts with Defendants that violate the Exchange Act's registration requirements for exchanges, brokers, and dealers. *See* 15 U.S.C. § 78cc ("Every contract made in violation of any provisions of this title or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) . . . the performance of which involves the violation of, or the continuance of any practice in violation of, or the continuance of any relationship or practice in violation of, any provision of this title or any rules or regulations thereunder, shall be void."). Section 29(b) indisputably provides a private right of action and Defendants do not, and cannot, argue otherwise. *See*, *e.g.*, *Transamerica Mortg. Advisors (TAMA) v. Lewis*, 444 U.S. 11, 18-19, 100 S. Ct. 242, 246 (1979) (noting that "§ 29 (b) of the Securities Exchange Act of 1934, 15 U. S. C. § 78cc (b), confers a 'right to rescind' a contract void under the criteria of the statute," and the longstanding principle that "[a] person with the power to void a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid.").

Defendants completely ignore the fact that their violations of Sections 5 and 15—which prohibit acting as an unregistered exchange, broker, or dealer—are each a sufficient predicate for

application of Section 29(b), which allows rescission of a contract that violates "*any* provision" of the Exchange Act.  15 U.S.C. § 78cc(b) (emphasis added).  Accordingly, whether there is a private right of action as to claims solely under Sections 5 and 15 of the Exchange Act is irrelevant.  Here, Plaintiffs allege that transactions between Plaintiffs and Defendants violated *both* Section 5 and Section 15 and, due to that misconduct, Plaintiffs are entitled to rescission of their contractual agreements with Uniswap and the other Defendants under Section 29(b).  This conclusion is supported by many well-pleaded allegations including the fact that Defendants are "exchanges" under the statutory definition which encompasses "any organization, association, or group of persons, whether incorporated or unincorporated, which constitutes, maintains, or provides a market place or facilities for bringing together purchasers and sellers of securities. . . ."  15 U.S.C. § 78c(a)(1).  As such, the allegations that Defendants control the Protocol (which functions as the marketplace for securities), through the Governance and their holding of UNI, futher support Plaintiffs' claims under the Exchange Act.

Contrary to Uniswap's assertions, Plaintiffs demonstrate they have a contractual relationship with Defendants.  Plaintiffs allege, among other things, that Defendants, through their operation and control of the Interface and the Protocol, contracted with Plaintiffs insofar as (i) the Protocol required its users to buy and sell Tokens through Uniswap's proprietary "smart contracts"[2] (including the "core contracts" and "router contract") in order to complete the transactions, (ii) Plaintiffs all traded the Tokens on the Protocol, and (iii) Plaintiffs paid Uniswap fees (for later distribution to the liquidity providers)[3] for those trades they made on the Protocol.  FAC at ¶¶ 78-81, 711, 722.  Uniswap ignores these allegations in its letter, even as it falsely states that it did not contract with Plaintiffs while inexplicably citing to some of the very paragraphs in the FAC containing these well-pleaded allegations.  *See* Dkt. No. 52 at 2 (citing to paragraphs 711 and 722 of the FAC).

### III.   Plaintiffs State a Claim Under the Securities Act

As an initial matter, the overwhelming majority of Lead Plaintiffs' purchases were within one year of the filing of the action and thus all their claims are timely.  *See* FAC ¶ 5; *see also* Dkt. No. 28-1-6.  Uniswap's inexplicable and bald assertion that "[t]he federal claims are also time-barred with respect to almost all of the alleged trades" is meritless.  Here, Plaintiffs allege that Defendants are statutory sellers under Section 12(a) of the Securities Act of 1933, which applies to any entity that "sells a security" or "successfully solicits [a] purchase [of securities], motivated at least in part by a desire to serve [its] own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 647 (1988).

---

[2] "A smart contract is a self-executing contract with the terms of the agreement between buyer and seller being directly written into lines of code." https://www.investopedia.com/terms/s/smart-contracts.asp

[3] The FAC includes numerous allegations concerning undisclosed fees, *see, e.g.*, FAC ¶¶ 91-95, some of which reference and even quote documents authored by Uniswap and published on its website.  Uniswap's attempt to litigate these facts at this stage is improper.  Further, as counsel for Defendants are aware, disputing facts alleged in a complaint is certainly not a basis to invoke Rule 11 and the Court should not condone such behavior from Defendants and their counsel.

Unable to dispute that Plaintiffs were harmed by their purchase of unregistered token securities on the Protocol, Defendants resort to arguing that they were not statutory sellers under Section 12(a)(1). This claim is plainly contradicted by the Plaintiffs' allegations that Uniswap users "do not trade with each other but instead do so with Uniswap through liquidity pools Uniswap creates and maintains." FAC at ¶ 78. Uniswap controls and maintains the liquidity pools by, among other things, (i) holding liquidity provider funds and newly created tokens in Uniswap's proprietary "core contracts," (ii) using routers that Uniswap controls to process all transactions executed by issuers and users of the Protocol and (iii) issuing "Pool Tokens" when a pool is created. *Id.* at ¶ 80. Every liquidity pool has its own unique smart contract, and these contracts are exclusively controlled by Uniswap and the Owners via their ownership and control of the Protocol. FAC at ¶ 81. Defendants ignore these allegations, as well as those pertaining to Uniswap's "wrapping" of Ether or ETH (and thereby creating new tokens) through Uniswap's routers and in separate transactions. FAC at ¶¶ 82, 85 ("Thus, when a user swaps one token for another token, she interacts with and obtains such token directly from Uniswap and the pool it controls."). "[I]t is settled that § 12(1) imposes liability on the owner who passed titled, or other interest in the security, to the buyer for value." *Pinter*, 486 U.S. at 642 (citing predecessor to Section 12 (a)(1)).

Section 12 liability further applies to "any person who engaged in steps necessary to the distribution of the unregistered security." *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *12 (N.D. Cal. Feb. 26, 2020) (citing *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 357-58 (S.D.N.Y. 2019)). As alleged throughout the FAC, each of Adams, Andreessen, Paradigm, and USV engaged in acts and omissions that were necessary to the distribution of unregistered securities (including the Tokens) via the Protocol and the Interface. *See, e.g.*, FAC at ¶¶ 11, 52, 53, 56, 90, 92, 99-116.

### IV.   Plaintiffs Allege Control Liability

To establish a *prima facie* case of control liability under § 20(a) of the '34 Act, a plaintiff must show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation. *In re American Intern. Group, Inc. 2008 Securities Litigation*, 741 F. Supp. 2d 511, 535 (S.D.N.Y. 2010) (internal quotations and citations omitted). "At the pleading stage, allegations of a Section 20(a) defendant's control need not be set forth with particularity." *Id.* As to control-person liability, Section 15 of the '33 Act requires: (i) a primary violation by a controlled person, and (ii) control by the defendant of the primary violator. *In re Refco, Inc. Securities Litigation*, 503 F. Supp. 2d 611, 637-38 (S.D.N.Y. 2007) (reiterating that "allegations of control under Section 15 are subject only to notice-pleading requirements" and cannot be dismissed if "it was not implausible that plaintiffs could develop a record that could support a finding of control."). "Control" can be established "through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. Part 240.12b-2. "Whether a person is a 'controlling person' is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss." *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 829 (S.D.N.Y. 2006).

As noted above in Section I, the FAC readily clears the requisite pleading requirements to allege control liability under both the '33 and '34 Acts against the Owners. In addition to pleading primary liability against Uniswap, the FAC is replete with allegations directed to the various ways

4

that the Owners control Uniswap, *see, e.g.*, FAC ¶¶ 99-101, 129, 134, 138, 147, as well as claims pointing to the Owners own culpable conduct in connection with the primary violations. *See, e.g., id.* at ¶¶ 11, 52-53, 56, 90, 92, 102-116.

### V.   Plaintiffs State Claims Under State Law

Plaintiffs bring claims under Idaho and North Carolina law and, contrary to Uniswap's assertions, allege that the Defendants engaged in relevant conduct in both states. First, the FAC contains allegations that several Plaintiffs who made contracts with Defendants are residents of those states. *See* FAC ¶¶ 13-14; 18. Moreover, it is exceedingly unlikely that the Protocol, which averages over $1.5 billion of trading per day, does not include additional transactions within those two states. *See* FAC at ¶ 60.

Plaintiffs' allegations regarding Defendants' knowledge of endemic fraud on the Protocol are more than sufficient to plead both aiding and abetting fraud and negligent misrepresentation. In fact, Plaintiffs allege that Uniswap is fully aware that a significant portion of the activity on its platform is driven by issuers of scam tokens but chooses not to address the issue because it profits from its allowance of such activities on the Protocol. *See* FAC ¶¶ 184-194. Putting aside Plaintiffs' allegations of *actual* knowledge on the part of Defendants, courts in the Southern District have repeatedly held that actual knowledge of fraud may be demonstrated by a series of consistent facts including willful blindness, enablement of the fraudulent transactions, and a profit motive. *See*, *e.g.*, *Silvercreek Mgmt. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 443-46 (S.D.N.Y. 2017). In all events, the FAC sufficiently pleads the requisite elements of the tort claims.

Finally, Plaintiffs sufficiently allege that Defendants received a "specific and direct benefit" that constitutes unjust enrichment given the previously discussed allegations that the Defendants profited handsomely from fraudulent conduct on the Protocol. Uniswap's assertion that there are no well-pleaded allegations to support this claim strains credulity.

### VI.   Plaintiffs Allege the Uniswap Foundation is an Alter Ego of Uniswap

Contrary to Uniswap Foundation's misleading letter, the FAC includes various allegations demonstrating that *several* of the factors which support an alter ego finding are present. First, Uniswap Foundation's "directors," which are also its sole owners (on paper), are Uniswap personnel under the control of some or all of Defendants. FAC at ¶¶ 159-160; 165. In addition to this overlap in control, Plaintiffs allege that the Uniswap Foundation has no meaningfully independent purpose from Uniswap. *Id*. at ¶ 163 (alleging that the stated mission of the Uniswap Foundation is to support 'the decentralized growth and sustainability of the Uniswap Protocol and its supporting ecosystem.'"). This overlap in control and purpose explains why the Uniswap Treasury has authorized the diversion of up to $74 million to support Uniswap Foundation. *Id*. at ¶¶ 167-68. Finally, the FAC supports a strong inference that the Owners created Uniswap Foundation for their own benefit through allegations that (i) the Uniswap Foundation was supposedly created through a Governance proposal that passed by a concentration of votes from the 10 largest wallets holding UNI and (ii) the suspicious timing of Uniswap Foundation's formation documents, predating the submission of the governance proposal, which demonstrate that the passage of the proposal was a *fait accompli*. *Id*. at ¶¶ 160-61.

Respectfully submitted,

| KIM & SERRITELLA LLP | BARTON LLP |
|---|---|
| By: /s/ James R. Serritella<br>James R. Serritella<br>Aram M. Boghosian<br>110 W. 40th Street, 10th Floor<br>New York, NY 10018<br>212-960-8345<br>jserritella@kandslaw.com<br>aboghosian@kandslaw.com | By: /s/ Christopher J. McNamara<br>Roger E. Barton<br>Christopher J. McNamara<br>Michael C. Ward<br>711 Third Avenue, 14th Floor<br>New York, NY 10017<br>212-687-6262<br>rbarton@bartonesq.com<br>cmcnamara@bartonesq.com<br>mward@bartonesq.com |

*Attorneys for Lead Plaintiffs Nessa Risley, James Freeland, Robert Scott, Annie Venesky, Andrew Cardis, and Dean Meyers*