MB97RISC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
     NESSA RISLEY, et al.,
3
                      Plaintiffs,
4           v.                              22 Civ. 2780 (KPF)

5    UNISWAP FOUNDATION, et al.,

6                     Defendants.           Remote Conference
     ------------------------------x
7                                           New York, N.Y.
                                            November 9, 2022
8                                           10:40 a.m.
     Before:
9                    HON. KATHERINE POLK FAILLA,
                                            District Judge
10
                              APPEARANCES
11   KIM & SERRITELLA, LLP.
          Attorneys for Plaintiffs
12   BY:  JAMES SERRITELLA
          ARAM M. BOGHOSIAN
13
     BARTON, LLP.
14        Attorneys for Plaintiffs
     BY:  CHRISTOPHER J. McNAMARA
15        MICHAEL C. WARD

16   MORRISON COHEN, LLP.
          Attorneys for Defendant Uniswap Foundation
17   BY:  JASON P. GOTTLIEB
          MICHAEL A. MIX
18
     DEBEVOISE & PLIMPTON, LLP.
19        Attorneys for Defendants Universal Navigation, Uniswap
          Labs, Hayden Z. Adams, and Union Square Ventures
20   BY:  ELLIOT GREENFIELD

21   SKADDEN ARPS SLATE MEAGHER & FLOM, LLP.
          Attorneys for Defendant Paradigm Operations
22   BY:  TANSY WOAN
          ALEXANDER C. DRYLEWSKI
23
     LATHAM & WATKINS
24        Attorneys for Defendants AH Capital Management, LLC.
     BY:  SUSAN E. ENGEL
25        PETER TROMBLY

MB97RISC

```
1          (Case called)
2          THE COURT:  Good morning, everyone.  And I'm hoping
3   that you're all able to hear me.  I'm seeing nods.  That
4   suggests something positive.
5          There are so many attorneys that I'm not going to
6   bother to ask you all to introduce yourselves.  Let me just
7   reflect that I have Mr. Serritella, Mr. Boghosian, Mr. McNamara
8   and Mr. Ward representing the plaintiffs.  I have Mr. Gottlieb
9   and Mr. Mix representing Uniswap Foundation.  I have
10  Mr. Greenfield representing Universal Navigation and Mr. Adams.
11  And I have Mr. Drylewski and Ms. Woan representing Paradigm.
12  Ms. Engel and Mr. Trombly representing AH Capital Management.
13  Oh, I see.  You're all representing the VC defendants.  Excuse
14  me.  I have Mr. Greenfield as well.
15         All right.  Welcome, everyone.  Thank you very much
16  for participating.  We'll do our best to try and make this as
17  uncomplicated as possible.
18         Just because I'm hearing a little bit of feedback, I
19  would ask those of you who are not speaking if you could just
20  please mute yourself at the moment because, again, then I'll
21  hear less of you.
22         This is our initial conference in this case.  This is
23  also a premotion conference in the case.  So for those of you
24  who have not appeared before me previously, please understand
25  that that has two purposes.  The first is to be sure that those
```

MB97RISC

1    of you who are thinking about making motions really want to

2    make those motions.  I am going to try and persuade you not to,

3    but in this case, as in many, I suspect I'm going to fail.

4    Separately, I'd like to be sure that for the nonmoving parties,

5    the plaintiffs here, that they have the pleadings that they

6    wish to have and that they don't wish to amend in light of the

7    arguments that are being made in the premotion letters.  It is,

8    from my perspective, quite frustrating to receive an opening

9    brief on a motion to dismiss and then have the response be a

10   proposed amended complaint where we could have prevented that

11   at the beginning.  So these really are the purposes of this

12   proceeding.

13          We're doing this by video.  What that means is that --

14   actually, a number of you are moving around, even as we talk.

15   I am trying to look at the one of you with whom I'm speaking.

16   Excuse me if that means my eyes are going all over this

17   platform; that is what happens.  I would expect, and I'm

18   asking, that someone obtain a transcript of this conference at

19   its conclusion in whatever speed you think is appropriate.  If

20   you order it, I will receive it automatically.  You don't have

21   to send it to me.

22          Mr. Serritella, let me find you and begin by speaking

23   with you.  There you are, sir.  Thank you.  That's terrific.

24   Those little name tags in the bottom left really help me a lot.

25          Sir, let me just give you a sense of where I am right

MB97RISC

| | |
|---|---|
| 1 | now.  I want to underscore that I have no set feelings about |
| 2 | any of this.  I'm just learning about things.  So I don't want |
| 3 | you to think that I can't be persuaded otherwise.  But in |
| 4 | reading the complaint, which is quite long, and in reading the |
| 5 | premotion letters, which are also quite dense, I am really |
| 6 | wondering if you have adequately pleaded the seller status, if |
| 7 | you've adequately pleaded that liquidity providers by dint of |
| 8 | having the ability to affect liquidity actually did affect |
| 9 | liquidity, and whether you have actually pleaded alter ego |
| 10 | liability for the foundation entity. |
| 11 | Now, again, that's why we're having this conversation. |
| 12 | But I guess I'll begin asking you, sir, whether you have any |
| 13 | appetite to replead your pleadings, and then, separately, if |
| 14 | you want to start talking to me about those issues.  But you |
| 15 | know what, let me take that back.  Let me hear from you on the |
| 16 | issue of repleading and a very slight response.  But I think I |
| 17 | do want to hear from the moving parties.  Thank you. |
| 18 | MR. SERRITELLA:  Sure, your Honor.  Let me start on |
| 19 | the repleading question. |
| 20 | I think the best way I can answer this is, the |
| 21 | question always comes up, Did we see anything in the |
| 22 | defendants' letters that made us think we needed to replead |
| 23 | anything on our complaint?  And I can say to you, absolutely |
| 24 | not.  We feel good about our allegations, and there's nothing |
| 25 | in there that we didn't anticipate.  So we stand by our |

MB97RISC

1    pleading.  And I don't anticipate when we get the motions that

2    we're going to be submitting a proposed amended complaint to

3    your Honor.  I don't want to eat my words later, but I don't

4    anticipate that happening.

5              THE COURT:  That's fine.

6              Okay.  So you, therefore, disagree with sort of my

7    initial take as to the pleadings as they now stand?

8              MR. SERRITELLA:  Yes.  I mean, in the sense -- let me

9    address some of the questions that you raised to me about the

10   seller.  I think you're talking about the Securities Act

11   claims, the Section 12 claim.

12             We're in, I guess, unique times in terms of the way

13   these crypto assets are traded on different platforms.  And in

14   this platform in particular, Uniswap and the other defendants

15   have created this protocol, they call it.  They characterize it

16   as not a traditional trading platform.  It says it's AMM,

17   automated market maker.  And so what they've done is they set

18   up this thing where in order to trade the securities, you need

19   to have trading pairs, they call it.  So you swap one security

20   for another security -- or I'll just say token because I know

21   that might be a fight down the road.  But you swap one token

22   for another token and the only entity the individuals that use

23   the platform, the investors, are interacting with is Uniswap.

24   They're not interacting with anyone else directly.  This is

25   pleaded in our complaint, and I think it's pretty much

MB97RISC

1   acknowledged by the defendants.  And we have a slew of

2   allegations on how Uniswap and the defendants, by virtue of

3   controlling the protocol, are acting as sellers.

4           I would direct -- you don't have to look at this now,

5   your Honor, but in paragraph 78 of our complaint there's a

6   really good diagram and in the allegations around it that

7   really shows what's going on here.  This pool that Uniswap

8   characterizes as -- they say it's a Uniswap pool; it's their

9   pool that they control through these smart contracts that they

10  wrote.  I mean, the defendants in their letter say, oh, these

11  things just arrive in the ether and nobody controls them,

12  they're just smart contracts.  But smart contracts -- even if

13  they are computer code, it's written by human beings.  And so

14  here, the human beings or the entities that are writing these

15  smart contracts, we have a slew of allegations in our complaint

16  that's not just Uniswap but at least one of the so-called VC

17  defendants wrote some of the code.  Paradigm, for instance,

18  promotes all over their website——we pleaded this; it's in the

19  white papers——how they were heavily involved in drafting the

20  white paper that Uniswap put out for this protocol and in

21  drafting smart contracts because that's how this protocol

22  works.

23          And again, if you just look at that diagram in

24  paragraph 78, you'll see that whole Uniswap pool.  That's who

25  the users of the platform are interacting with.  And I think

MB97RISC

1    that in and of itself supports an allegation taken as true,

2    that we've adequately pleaded that they're sellers.

3            THE COURT:  So let me make sure I understand.

4            Let's say that there is the Failla cryptocurrency and

5    it is one of the rug-pulling stunts that you've described in

6    your complaint.  You're not coming after me, the person who

7    actually originated the Failla cryptocurrency, you're coming

8    after the platform on which it's sold.  That is, you would have

9    to concede, quite different from the traditional securities

10   fraud claim.  That's why I find it so difficult to believe that

11   simply by dint of operating a platform, they are then liable.

12   You're basically saying, well, they had to know, because so

13   many of these things are fraudulent, that there was a high

14   likelihood that a Failla cryptocurrency would be fraudulent

15   too, but I'm still not sure how that gets them liability.

16           MR. SERRITELLA:  Well, let me address that.

17           I'm glad you used the example of your last name,

18   because when you do that, we would know who issued that token.

19   For I believe the vast majority of the tokens that are launched

20   on the Uniswap -- or the protocol, I should say, we don't even

21   know who is issuing.  We're in the dark.  We have no idea.

22           And let me take a step back, your Honor.  It is a

23   little bit unique.  Again, these are unique times.  You can't

24   compare this to buying some shares on Fidelity or some other

25   platform.  It's not like that.  So the only way that token

MB97RISC

1    could be sold is by putting the token in a pool that Uniswap

2    controls, and that's what we allege in the complaint.  And

3    given that they're controlling that pool, they are passing

4    title of that token.  And that's all we need to plead under the

5    securities law, who is passing title.  It's not the issuer.

6    They're not passing title directly, at least, with the

7    purchaser of that token, it's Uniswap that's passing title

8    through their Uniswap pool.  That's what they call it.

9             THE COURT:  Mr. Serritella, I'm now realizing the

10    concern I had when I began this discussion, which is that I

11    think I do want to hear from the punitive movants before

12    hearing from you in response.

13             I'm going to begin with Mr. Greenfield, if he doesn't

14    mind.  Mr. Greenfield, as a consequence of the opposition

15    submission that you've received from Mr. Serritella and his

16    firm, is there any way in which your original argument to me --

17    and I'm focusing first in your capacity as the representative

18    of Labs and Mr. Adams -- any way in which those arguments now

19    change, sir?

20             MR. GREENFIELD:  No.  I don't think anything in

21    plaintiff's letter changes our arguments.  I thought, overall,

22    the letter was fairly nonresponsive to our arguments.

23             THE COURT:  All right.  Well, that's a pretty quick

24    response.  Do you want to --

25             MR. GREENFIELD:  I'm happy to --

MB97RISC

1      THE COURT:  Well, no.  I guess I have a couple of

2  thoughts, sir.

3      There are certain arguments that you make and I

4  believe they're made as well in the joint submission with

5  respect to the VC defendants.  But I am concerned that for

6  certain of the statements that are made in your submissions

7  you're going to ask me to rely on things that I actually can't

8  rely on in the context of a 12(b)(6) motion.

9      So please tell me what it is you think I can consider

10  additional to the materials that are contained in the

11  complaint, and then how consideration of that material will

12  allow me to arrive at the factual conclusions you wish me to

13  arrive at.

14      MR. GREENFIELD:  Sure.  That's a good question.  I'm

15  happy to address that.

16      Can you hear me okay?

17      THE COURT:  I'd like you to speak a little bit louder,

18  but I can mostly hear you.

19      MR. GREENFIELD:  Okay.  I'll speak up a bit.  I'll

20  pretend I'm in the courtroom.

21      THE COURT:  There you go.

22      MR. GREENFIELD:  So, yes, I don't think that your

23  Honor has to consider anything outside of the pleadings.  The

24  allegations that plaintiffs are relying on in their complaint

25  are contradicted by other allegations in their own complaint.

MB97RISC

```
1        They're also contradicted by documents that I believe are

2   incorporated by reference in the complaint and that you can

3   consider on a motion to dismiss.

4            If you look at paragraphs 78 and 79, for example, that

5   Mr. Serritella was just pointing you to, and the diagram that

6   he is asking you to rely on for his contention that Labs is a

7   seller of the tokens, that is material that is taken directly

8   from the Uniswap website.  If you were to go to the Uniswap

9   website and under "How Uniswap Works," they have FAQs on pools.

10  This is copy and pasted, that diagram, from the Uniswap

11  website.  A lot of the language that is quoted -- for example,

12  in paragraph 79, it's taken from the Uniswap website.  So in

13  those circumstances, courts are allowed to look at what else is

14  on that web page because they're not allowed to take certain

15  things out of context, as they have.

16           They also quote directly from a white paper that

17  Uniswap issued which kind of describes the protocol and how it

18  works.  So on the one hand, they are quoting and relying on

19  these documents; on the other hand, they're making other

20  allegations that contradict them.

21           Just to be specific and address the point that you

22  just raised with Mr. Serritella, what this diagram shows is not

23  that Uniswap -- let me call it Labs just to be precise here --

24           THE COURT:  Yes.

25           MR. GREENFIELD:  -- because I think plaintiffs are
```

MB97RISC

1    using Uniswap to mean two or three or four different things.

2    But Labs does not control any liquidity pools.  What you see in

3    the diagram is that anyone who wants to create a liquidity pool

4    can do so for any pair of tokens if a liquidity pool does not

5    already exist.  That's in paragraph 72 of the complaint.  Users

6    of the interface who desire to be a liquidity provider may

7    create or contribute to a liquidity pool.  So if there's not

8    already a Failla token ether pool out there, you could go and

9    create it by adding both of those tokens to a pool.  Okay.

10   Somebody else who has a Failla token that they want to swap can

11   go and also add liquidity.  A trader who wants to let's say

12   purchase a Failla token can then interact with this smart

13   contract, this pool, and put in ether and get out Failla token.

14   At no point does Labs ever have any custody, control, title,

15   possession, anything of the Failla token.

16          The protocol is computer code.  It runs on the

17   Ethereum blockchain and it's completely autonomous.  If all of

18   Labs gathered at headquarters and a meteor came out and

19   destroyed the headquarters, there was nothing left of

20   Labs——which God forbid, of course——the protocol would continue

21   to run and anyone could still go and create a liquidity pool

22   for any token they wanted to, they could add liquidity, they

23   could swap, there's no continued operation of the protocol,

24   it's just autonomous code.

25          THE COURT:  But do I understand, though, no one else

MB97RISC

1   can interfere with that code?  Is it open source?  Is it

2   something that anybody can add on to if they want to or no?  I

3   assumed it was closed.

4             MR. GREENFIELD:  It's kind of open source while it's

5   being developed.  Once it's launched, it's fixed and immutable

6   and it's out there, and it's running on its own.

7             THE COURT:  Any sense of updates to it?  Would there

8   be?  And who is putting out the updates?

9             MR. GREENFIELD:  There's new versions of it.  So

10   there's references in the complaint to V2.  V1 was kind of like

11   the test.  There's V3 now, but that doesn't replace V2.  No one

12   can stop V2 from running.  And plaintiffs allege that plenty of

13   people continue to use V2.  So they can launch new versions of

14   the protocol, but no one is kind of terminating the prior

15   versions.

16             THE COURT:  Mr. Greenfield, you said to me a few

17   moments ago that at no point does Labs have custody or control

18   of any token.  However, I believe Mr. Serritella's complaint

19   alleges just that.  So how is it that -- I mean, if I am to

20   accept the well-pleaded allegations of the complaint as true,

21   is your argument to me that any such allegation would be

22   conclusory and not something I could consider in the 12(b)(6)

23   context, or that it is undercut by some other allegation or

24   allegations within the complaint, or that there's some document

25   that I may consider that makes clear that such a statement is

MB97RISC

1     incorrect?

2              MR. GREENFIELD:  I think any allegation that Labs——or

3     any of the other defendants, for that matter——is a seller is a

4     conclusion of law that you do not need to take as true.  The

5     facts that are alleged are that users can add liquidity to a

6     smart contract, which is, as they say in their complaint, this

7     self-executing automated code, and that other users can then

8     interact with the pool, which is just the smart contract, and

9     swap one token for the other.  So there's no basis to go from

10    those facts alleged to the legal conclusion that Labs is a

11    seller or is transferring title.

12             Labs has no ability to go to any liquidity pool on the

13    protocol and do anything.  It can't take tokens out, it can't

14    put tokens in.  It has no control over that whatsoever.  The

15    only control that plaintiffs have pointed to is kind of this

16    initial control of writing the code and launching the code.

17    But once it's launched, there's no control over the pool.

18             Again, if you go to the websites that plaintiffs are

19    quoting and relying on, it explains that a pool is just a smart

20    contract, it's just code.  And I believe they actually have

21    that in their complaint as well.

22             THE COURT:  Do you also contest the allegations that

23    Labs is collecting fees for trades made under the protocol?  I

24    believe you're telling me that in the white paper and on the

25    website that it's clear that the .3 percent fee goes to the

MB97RISC

liquidity providers and not to Labs.  Let me hear you a little

bit more on that.

What's in it for Labs, having designed this protocol,

having sent it out there into the world, having launched it, as

you say?  What's in it for them?  What do they get going

forward, other than recognition?

MR. GREENFIELD:  I'm not sure.  I don't want to say

that there's no revenue from any source, period, because I

don't want to overstate things.  What I can tell you is that

there's no fees at this point in time.  It's possible that in

the future there may be a fee charge -- or I'm sorry.  There is

a fee charge that goes to liquidity providers currently.  It's

possible that in the future—and there is kind of an option

built into the code—that the governing body of the protocol

could in the future decide that some of that fee that is paid

goes to the protocol.  But that is not the case, that has not

happened.  It's not just my say-so; it's all over every

document that plaintiff is relying on in this case.

As a matter of fact, this is all a matter of public

record because all of these transactions are recorded on a

public blockchain, one of the ways in which the crypto world is

actually more transparent than the traditional securities

world.  So if there were a fee from every transaction going to

Labs, anyone could take a look at the blockchain and they would

see that fee going to a Labs treasury wallet or something like

MB97RISC

1    that.  It's a matter of public record that none of the

2    transaction fees, none of the trade fees go to Labs.

3            THE COURT:  Mr. Greenfield, are you going to be asking

4    me in your motion to start examining blockchain records to see

5    whether or not these statements are here?

6            MR. GREENFIELD:  No, I am not.  I'm not going to ask

7    you to look at that.  It's all over the website, it's all over

8    the white paper, the fact that there was no fee charged by

9    Labs.  That's sufficient at this point.  My reference to the

10   blockchain goes to a reference to Rule 11—which, by the way, I

11   don't think I ever raised before in my 17 years of practice.

12           THE COURT:  Yes.  I do get concerned when people start

13   raising Rule 11, sir, but here you are.

14           MR. GREENFIELD:  Here I am.  Believe me, I don't do it

15   lightly.  But I can tell you that my client had a pretty strong

16   negative reaction to the idea that he was secretly harvesting

17   hundreds of millions of dollars from users of the protocol.

18   It's just a completely false allegation.

19           What Rule 11 does require is some minimal amount of

20   inquiry, right?  What the Second Circuit has said is that after

21   reasonable inquiry, a competent attorney could not form a

22   reasonable belief that the pleading was well grounded in facts.

23   There's no way that you can do any amount of reasonable

24   inquiry, any basic inquiry in this situation and come away

25   accusing Labs of collecting hundreds of millions of dollars in

MB97RISC

1    fees secretly, unbeknownst to users.

2           So I think those allegations do actually cross the

3    line.  Obviously, not something that you need to decide at the

4    motion to dismiss stage, but I'm just explaining my reference

5    to the blockchain.  I think any amount of inquiry here, there's

6    just no way to allege in good faith that Labs is accepting part

7    of these trade fees.

8           THE COURT:  Mr. Greenfield, a few moments ago you said

9    to me that there were fees.  You weren't going to say that no

10   one got fees, but the fees were provided to liquidity providers

11   only.  I think that perhaps leads into the other group of

12   defendants you represent, who are the venture capital

13   defendants.

14          As I'm understanding, they have the ability to and

15   they do provide liquidity and do obtain the fees and, in

16   theory, they are -- well, at least in the plaintiff's

17   rendering, they are liable.  So why don't you speak to that

18   issue, please.

19          MR. GREENFIELD:  Sure.  I'd be happy to.

20          So there's no actual allegation anywhere in the

21   complaint that any of the VC defendants or Labs or Mr. Adams is

22   a liquidity provider for the tokens at issue.  There's a broad

23   statement for Mr. Adams and the VC defendants that, upon

24   information and belief, these people and entities are liquidity

25   providers.  But again, that's just an allegation on information

MB97RISC

1    and belief.  What is the basis for that belief?  In fact, it's

2    not true; I can tell you that.

3         THE COURT:  Well, it's not true.  But as much as I

4    want to accept what you say, how am I allowed to make that

5    conclusion?  Or are you suggesting that I can on the materials

6    that I may properly consider?  Or are you suggesting that I

7    must instead just focus on what you contend to be the

8    deficiency in pleadings?

9         MR. GREENFIELD:  I would point to the deficiency in

10   pleadings——in particular, the fact that the only allegation is

11   made on information and belief.  I don't have the paragraphs in

12   front of me, but for each of them, plaintiffs allege, upon

13   information and belief, each of the VC defendants and Mr. Adams

14   was a significant liquidity provider for tokens traded on the

15   protocol.  They don't say anything about the particular tokens

16   that are at issue in the complaint.  And even just generally,

17   an allegation on information and belief is insufficient where

18   there's no facts demonstrating what the basis is for that

19   belief.  And I'd be interested to hear from plaintiffs what the

20   basis is for them saying on information and belief you're a

21   significant liquidity provider.  I don't know what they could

22   possibly say.

23        THE COURT:  Yes.  Although, Mr. Greenfield, there are

24   cases suggesting that there are circumstances where one is

25   permitted group pleading because information is peculiarly

MB97RISC

1    within the control of the defendants, or the nonmoving parties.

2    Perhaps Mr. Serritella would say that.  I'll hear from him

3    eventually, but perhaps he would just say, look, somebody among

4    the defendants here provided liquidity, and in discovery we'll

5    figure out who.

6            Is it your position that at this stage they needed to

7    be able to tie a particular client of yours to a particular

8    transaction involving one of their plaintiffs?

9            MR. GREENFIELD:  Not a particular transaction, but at

10   least they need a factual basis to say that any of the VC

11   defendants was a liquidity provider at all, at least for the

12   token.

13           THE COURT:  One moment, please, sir.

14           Thank you.  Let me just turn now, before returning to

15   Mr. Serritella, perhaps I could hear -- let me see.

16           Is it Mr. Gottlieb who is going to be speaking on

17   behalf of the foundation?

18           MR. GOTTLIEB:  Yes, your Honor.  Thank you.

19           THE COURT:  All right.  Everyone has got some great

20   backgrounds behind them, but I do appreciate your guitar

21   collection, sir.

22           MR. GOTTLIEB:  Thank you, your Honor.  Happy to sing a

23   tune if you'd like.

24           THE COURT:  After the motion practice, please, sir.

25           Let me hear from you with respect to the foundation.

MB97RISC

1          MR. GOTTLIEB:  Yes, your Honor.  The foundation, of

2    course, is alleged to be here only as an alter ego of the other

3    entities, whatever other entities are alleged here.  So of

4    course all the same defenses that my colleague, Mr. Greenfield,

5    just laid out would apply equally.  But more to the point,

6    Uniswap Foundation, a separate entity with a separate

7    existence——it is a separate corporation——is only alleged to be

8    in this case because it is allegedly an alter ego of Labs or

9    some other entities in this orbit.

10          But the requirements for alleging alter ego status

11    under Delaware law, as the Second Circuit has interpreted, is

12    very strict.  The plaintiff has to demonstrate the corporation

13    and the owner.  Here, I suppose Labs operated as a single

14    economic entity, such that it would be inequitable to draw a

15    legal distinction between them.  The plaintiff also has to show

16    some sort of fraud injustice or inequity in use of the

17    corporate form.

18          Now, it's important to realize that none of the

19    allegations are that Uniswap Foundation did anything relating

20    to anything of the alleged wrongdoing in the complaint.  The

21    foundation is merely alleged to be one and the same, just the

22    alter ego.  We would respectfully submit, your Honor——and we're

23    happy to go through all of the Delaware case law and

24    motions——that the allegations of the complaint don't come close

25    to pleading the specific facts necessary to meet this very,

MB97RISC

1    very high standard under Delaware law.

2              THE COURT:  Well, all right.  I think that's it.

3              My recollection is there's a paragraph at the

4    beginning that asserts that they are the alter ego, and then

5    later on in the discussion of the formation of the foundation

6    there's a discussion about the commonality of perhaps board

7    members of participants.

8              Mr. Gottlieb, do I remember that correctly?

9              MR. GOTTLIEB:  Yes, your Honor, there's an allegation

10   that there are overlapping officers.  And we would suggest that

11   the law is very clear that even were that true——it's not true,

12   but for the purposes of this motion we will accept the

13   well-pleaded allegation——overlapping officers are not enough.

14   That's not enough.  In addition, one of the officers is

15   specifically alleged not to be overlapping; he's alleged to

16   have been an officer of some third-party separate entity

17   entirely called the Uniswap Grants Program, which just because

18   it uses the name "Uniswap" does not make it the same thing as

19   Uniswap Labs.  So that person isn't even alleged to be a member

20   or an officer, or play any role in Uniswap Labs.

21             But more to the point, even if there are overlapping

22   officers, the case law is very clear that that allegation alone

23   is not nearly enough.  There has to be something more that the

24   overlapping officers are being used as, I guess, tools of a

25   nonindependent significance, or used to further this wrongdoing

MB97RISC

| | |
|---|---|
| 1 | that's alleged.  And those allegations are not in the |
| 2 | complaint. |
| 3 | THE COURT:  Thank you, sir. |
| 4 | Mr. Serritella, turning back to you again. |
| 5 | Mr. Serritella, why don't we go in reverse order and tell me |
| 6 | why it is that Foundation remains in the case. |
| 7 | MR. SERRITELLA:  Great.  I was actually going to |
| 8 | suggest that, your Honor, because it's a good segue into the |
| 9 | rest.  I think there's an elephant in the room.  In fact, I |
| 10 | know there's an elephant in the room, and nobody wants to talk |
| 11 | about it on the other side.  And it's so apparent in their |
| 12 | letters.  It's this governance that the defendants, all the |
| 13 | defendants were involved in creating that was used to run and |
| 14 | control this protocol. |
| 15 | So Mr. Greenfield is telling you that, oh, it's |
| 16 | already out there, we can't stop, we can't do anything.  And |
| 17 | he's talking about contradictory allegations and statements, |
| 18 | but he hasn't come up with one contradiction.  I haven't seen |
| 19 | it.  And because a lot of our complaint is actually using the |
| 20 | defendants' own words -- and so in their own governance |
| 21 | creation—and that's what our allegations talk about—they set |
| 22 | up this thing where they issued, UNI to themselves—which, by |
| 23 | the way, enriched themselves to the tune of probably hundreds |
| 24 | of millions of dollars—and that UNI gives them the voting |
| 25 | control of this governance that maintains the protocol. |

MB97RISC

```
 1              And that's where -- I wanted to start with the Uniswap
 2     Foundation because in the government's proposal that was put
 3     forth to create the Uniswap Foundation, one of the things,
 4     supposedly the purpose of Uniswap Foundation, was to help
 5     Uniswap in maintaining the governance, maintaining the
 6     protocol, all the things the defendant said they don't control,
 7     and they gifted the Uniswap Foundation I believe it was $74
 8     million worth of UNI out of thin air.  And mind you, this all
 9     happens after we file our action.  So this whole notion that
10     there's no level of control over the people, the overlapping
11     directors, or what have you is just frankly not true.
12              Also, we pleaded in our complaint, your Honor, that
13     Uniswap or someone -- we maybe don't even know who, but there
14     was a governance proposal that was put forth on Uniswap's
15     governance platform to create this Uniswap Foundation.
16     Well—this is referenced in the complaint—we got the documents
17     from Delaware, the incorporation documents.  They already
18     created Uniswap Foundation before they even put forth the
19     proposal.  And this is where we said in our letter, it's
20     already going to pass, they knew it.
21              There are things going on beyond behind the scene,
22     yes, granted, we don't know, but there are things that are out
23     in the open that we do know.  And I really want the Court to
24     understand that this governance is key to a lot of what's going
25     on with this protocol.
```

MB97RISC

1          THE COURT:  Pause right there and tell me why it is.

2     Because, again, we're talking about the difference between

3     potential and actuality.  You're telling me that as a result of

4     their involvement in the governance, they have controlled, but

5     I'm not sure that they're exercising control, and I'm not sure

6     that they're exercising control in transactions in which your

7     clients were injured.  So that's a problem I have.

8          Also, let's say they wanted to create the foundation,

9     they created the foundation, it is a distinct entity.  It may

10    have had its genesis in discussions among the defendants, but

11    having created a separate entity under Delaware law, how is it

12    that I can find on the facts you've alleged that it is an alter

13    ego of Labs?

14          MR. SERRITELLA:  Because, your Honor, again, it goes

15    back to the governance.  And this is pleaded in our complaint.

16    And I don't want to go into great detail about this now at this

17    juncture, but we have allegations, again, in their own words as

18    to what the purpose of Uniswap Foundation is.  And it seems

19    that they're trying to divvy up some of the responsibility in

20    terms of maintaining the protocol and giving it to Uniswap

21    Foundation.

22          I'll point to one of the allegations.  And this is in

23    paragraph 164 of our first amended complaint.  They say——this

24    is their language——the UF will require the ability to grant V3

25    BSL license exemptions to maintain the government's forum——and

MB97RISC

```
1    they cite the website——and protocol-related developer doc is to

2    help facilitate protocol development across many teams.

3            So it seems what they're doing in creation of the

4    Uniswap Foundation is to divvy up some of the responsibility in

5    maintaining the protocol.

6            THE COURT:  But that's, again, a potential and not

7    actuality.

8            Are you actually telling me that Foundation, in any

9    way, did facilitate the development of the protocol or did do

10   anything that affected your clients in any way?

11           MR. SERRITELLA:  Well, look, if the Court determines

12   that we haven't sufficiently pleaded that Uniswap Foundation is

13   an alter ego, honestly, so be it.  And then if we get facts in

14   discovery that show otherwise, well, maybe we have to bring

15   them back in.

16           THE COURT:  I'm sorry, you've frozen.

17           MR. SERRITELLA:  I said, if the Court ultimately

18   determines that if we didn't plead sufficient facts that allege

19   alter ego, but then in discovery we get information that shows

20   that they are alter ego, then we may just have to replead and

21   put them back in.

22           But based on what we have now, an inference can be

23   drawn from these allegations that they are an alter ego and

24   maybe not so much in the traditional sense, your Honor, but I

25   think it's important to keep into the perspective what's going
```

MB97RISC

1  on in this case because this may be unique, but --

2          MR. GREENFIELD:  I think we may have lost the judge.

3  Am I wrong?  I think she was experiencing some technical issues

4  and may be logging off and logging back in.

5          MR. SERRITELLA:  I'll stop talking then.

6          (Pause)

7          THE COURT:  Friends, I'm not sure what happened there.

8  It must have been the strength of Mr. Serritella's oratory, but

9  I was knocked out of the conference.  And so, here we are.

10          Mr. Serritella, I got "so be it" and then I dropped

11  out.  So where were you after that?

12          MR. SERRITELLA:  I'll just say, to cut to the chase

13  here, your Honor --

14          THE COURT:  Please.

15          MR. SERRITELLA:  -- we believe we have sufficiently

16  pleaded that Uniswap Foundation is an alter ego.  If the Court

17  determines they're not and facts come to light in discovery and

18  we have to bring it back in, then so be it.  That's what it is.

19          But I do want to focus back on a couple things that

20  the defendants said.

21          On this notion of Rule 11, I do want to say this very

22  briefly.  I appreciate what Mr. Greenfield said.  In my 15

23  years of practice I've never been accused of violating Rule 11.

24  I certainly didn't do anything here that's sanctionable or

25  rises to the level of a Rule 11 motion, and they know that.

MB97RISC

1    Because if they really, truly believed that, your Honor, they

2    would have filed a Rule 11 motion, and they didn't.  So that

3    ends the discussion right there.

4            Then on this notion of fees that are being collected,

5    I don't know what's false and misleading in our pleadings that

6    rises to the level of sanctionable conduct.  We tried to,

7    again, use their language in pleading our allegations.  And so

8    we've never suggested that there are some secret hidden fees

9    that's enriching Uniswap that we don't know about.  That's not

10   what we've said.  But what we have said is that there is not a

11   fair disclosure of the fees that the issuers are collecting,

12   that the investors, when they make a trade, the protocol

13   doesn't tell them, for instance, that 9 percent of their

14   purchase is going to be burned and can disappear, or a certain

15   percentage is going to be going to a liquidity provider.  That

16   is not fairly disclosed by Uniswap.  That's what we've alleged.

17   That is accurate.

18           THE COURT:  Sir, there's a tension, though, in your

19   complaint that I'm perceiving; and perhaps at the time of

20   briefing I will not perceive it.  But on the one hand, what

21   you're telling me is it's the governance and the protocols and

22   all of that leads to this situation where title is passing,

23   control is being had, and they are, in fact, the sellers of

24   securities.  But now you're talking about a more traditional

25   failure to disclose case, so I'm not sure whether your beef is

MB97RISC

```
1    with their control or not with securities——if they are

2    securities——or the adequacy of their disclosures, which they

3    say are adequately disclosed.

4              MR. SERRITELLA:  We don't need to show that there are

5    inadequate disclosures to plead our claims, and I don't think

6    the other side would contest that.  Those are just facts that

7    are alleged in the complaint about what was going on in these

8    circumstances to give context.  So we don't need that.

9              THE COURT:  All right then.  What else would you like

10   me to know, sir?

11             MR. SERRITELLA:  I do want to mention that -- and I

12   think your Honor asked a very pointed question about -- and I

13   think goes to how is Uniswap profiting from -- you didn't ask

14   that directly, but I think there's an inference here.  How is

15   Uniswap profiting?  How are the defendants profiting from this?

16   Let's not pretend, like they want to call themselves, VCs are

17   throwing millions of dollars at this operation, they're doing

18   this out of the kindness of their hearts.  They're making money

19   and intending to make money some way.

20             THE COURT:  Stop right there, please, because that's

21   the point.  Maybe they're making money but, according to

22   Mr. Greenfield, it's more of an intention of making money at

23   some later date, or perhaps maybe money as a liquidity

24   provider.  So I don't think anyone is suggesting this is all

25   some sort of humanitarian gesture, but I do think, at least I'm
```

MB97RISC

1    understanding, that the real issue is one of whether you have

2    adequately alleged that they are generating fees or otherwise

3    engaging in conduct that violates the securities laws.

4            MR. SERRITELLA:  Yes.

5            I do want to touch on a couple things.

6            We do allege—and I think they acknowledge this—that

7    the so-called VC defendants received tons of UNI tokens.  And

8    in doing so, they enriched themselves, again, to the tune of

9    millions of dollars.

10           THE COURT:  But, sir, their receipt of those tokens

11   occurred irrespective of transactions by any of your clients;

12   is that not correct?

13           MR. SERRITELLA:  That is true, your Honor.  But,

14   again, it goes to control of this protocol.  The UNI token is

15   what gives them control of the protocol.  Without it, there's

16   no control of the governance.  That's how they've set this up.

17           THE COURT:  All right.  Keep going.

18           MR. SERRITELLA:  The other point is this whole notion

19   about our allegations on liquidity providers.  So, yes, there

20   are allegations on information and belief, but some strong

21   inferences can be drawn that the so-called VC defendants are

22   liquidity providers in pools on Uniswap.

23           And to give an example -- and this is in section VI,

24   Roman Numeral VI of our complaint from page 43, just as an

25   example, and starts at allegation no. 169.  There were these

MB97RISC

1    liquidity mining pools that were set up that was a way to

2    generate an additional UNI for anyone who provided liquidity in

3    these very large pools on Uniswap that generate literally

4    billions of dollars a day, or multiple -- hundreds of millions

5    of dollars a day in transactions.  Then there's a fee that gets

6    charged on that transaction.

7         We allege upon information and belief because we do

8    believe that these VCs have contributed to these large pools.

9    Because, again, they're making money on this one way or the

10   other.  Why that is important is because by contributing to

11   these pools, they gifted themselves more UNI.  What does that

12   mean?  Not only does it mean they're making more money, it

13   gives them more control of the protocol because the UNI

14   empowers you to vote in this governance.  That's why it's key

15   they're controlling the governance.

16        This notion that the computer program runs on its own,

17   well, then why is there a governance that maintains this

18   protocol?  You wouldn't need it.

19        THE COURT:  I'm so many steps behind you, sir, because

20   I'm still trying to figure out how your clients were hurt by

21   the fact of the governance, or the fact that there were initial

22   distributions of UNI to the VCs, or the fact that they may or

23   may not have participated in these mining pools.  Even if they

24   did, I'm not sure how your guys were hurt by it.

25        MR. SERRITELLA:  So this isn't necessarily why our

MB97RISC

1  plaintiffs are injured.  This goes to -- I'm addressing

2  Mr. Greenfield's argument that there's no control over this

3  thing.  And if a meteor came down --

4          THE COURT:  Someone's phone is going off.  It's

5  fascinating, but I'd love it if you turned it off.

6          That was great.

7          All right.  Mr. Serritella, I'm sure you appreciated

8  that pause.  Let's go back to your response.

9          MR. SERRITELLA:  I just wanted to point out, your

10  Honor, that I was addressing the point that Mr. Greenfield made

11  about the meteor coming down and this whole thing was run by

12  itself and no one is controlling it.  That's frankly just not

13  true, and I think that's the foundation here.  That's why I'm

14  addressing it.  Because we have to establish that there's some

15  level of control, that they're actually holding tokens.  In

16  order to do that, they set up this governance, they've been

17  creating different versions of these protocols as a baseline.

18  Once that setup is in place, then we can talk about how they

19  are statutory sellers and operating an exchange that's

20  unregistered pursuant to the Exchange Act.  And that's

21  something that the defendants don't even want to talk about.

22  They don't even want to talk about the Exchange Act because

23  it's not good for them.

24          THE COURT:  I understand your argument better.

25          Okay.  Sir, is there anything else you'd like me to

MB97RISC

1    know, Mr. Serritella?

2            MR. SERRITELLA:  No, your Honor.

3            THE COURT:  All right.  I'll ask you the question I

4    began with.  It is not your desire at this time to replead; is

5    that correct?

6            MR. SERRITELLA:  That's correct, your Honor.

7            THE COURT:  All right.  Mr. Greenfield, my usual

8    question to prospective movants is whether you are hell-bent on

9    making this motion to dismiss.

10           Is that the case?

11           MR. GREENFIELD:  We are 100 percent hell-bent, your

12    Honor.

13           THE COURT:  All right.  Have you and Mr. Gottlieb

14    discussed whether you are considering two separate opening -- I

15    mean, what is the briefing looking like from my perspective?

16    Is it two sets of briefs?

17           MR. GREENFIELD:  I think it's actually three sets of

18    briefs.  And I say that understanding that your Honor would

19    probably like one set of briefs.  The VC defendants and counsel

20    for my codefendants can jump in here, but have kind of a

21    different perspective and a different set of defenses I think

22    for a number of these claims.  So we would anticipate a brief

23    by Labs and Mr. Adams, a brief by the three VC defendants, and

24    a separate brief from the Foundation.

25           THE COURT:  All right.

MB97RISC

1          MR. GREENFIELD:  We would work together and try to

2    avoid any repetition or overlap.  And I'm happy to keep the

3    page limit down.  We're not asking for any extensions.

4          THE COURT:  That's the right answer.  Don't be asking

5    for page limit extensions.

6          Mr. Serritella, would you be contemplating an omnibus

7    response, sir?

8          MR. SERRITELLA:  Yes, your Honor.

9          THE COURT:  Okay.  I fear you're going to ask for

10   triple the space, but let's hope you don't need all of that.

11         Mr. Greenfield, have you discussed with Mr. Serritella

12   a possible schedule for this briefing?

13         MR. GREENFIELD:  We have not, but I'm happy to talk

14   about it now.

15         I think, typically, we would ask for 30 days, but in

16   light of the Thanksgiving holiday and the fact that we want to

17   work together with all the different defendants to be efficient

18   and avoid overlap, we ask for a little bit more time and would

19   propose December 21, which I think is about 40 days.

20         THE COURT:  I'm hearing someone chortling.  That's

21   Mr. Serritella.

22         Mr. Serritella, hold on a second.  One moment, please.

23         You're looking at the 21st.  All right.  I see that

24   you're trying to limit the number of associates' holidays you'd

25   be wrecking in the process.

MB97RISC

```
 1              MR. GREENFIELD:  I'm happy to give Mr. Serritella
 2    extra time on the opposition.
 3              THE COURT:  Mr. Serritella, I would think you'd be
 4    able to respond by the 31st of January; do you agree?
 5              MR. SERRITELLA:  If they file right before Christmas,
 6    I think we would want more time than that, especially with the
 7    holidays.
 8              THE COURT:  How do you need more than a month to
 9    respond?  Even if you took every minute and had the greatest
10    New Year's Eve possible, you'd still have all of January to
11    respond.  You're telling me you're not able to do that?
12              MR. SERRITELLA:  We could.  But I would just ask if
13    they could get their briefs to us earlier in December.
14              THE COURT:  No.  I'm not going to do that.
15              What time do you need in February, sir?  Do you want
16    the 3rd?  You know what, I'll give you the 6th of February.
17              MR. SERRITELLA:  That's fine, your Honor.
18              THE COURT:  It is.
19              And then the 20th for the reply.  Although, with my
20    luck, that's Presidents' Day.  Yes, it will be the 21st then.
21              So we have opening briefs on the 21st of December, the
22    opposition brief on the 6th of February, the reply briefs on
23    the 21st of February.
24              Mr. Greenfield, does that work for you?
25              MR. GREENFIELD:  I was going to ask for 21 days for
```

MB97RISC

1    the reply again, just so we can coordinate the different

2    briefs.

3              THE COURT:  But then Mr. Serritella will think I'm

4    favoring you.  Hold on, please.

5              MR. SERRITELLA:  Your Honor, we don't have an

6    objection to that.

7              THE COURT:  All right.  I appreciate that showing of

8    kindness.

9              So February 28 for the replies.  I'm expecting a

10   couple of things.  For those who haven't appeared before me

11   previously, please do not move all of your arguments to

12   footnotes, and don't put them in that super small type because

13   I don't read them and I'll send back your brief.  And I'm

14   believing Mr. Greenfield when he tells me that there will be

15   discussions involving counsel to avoid repetition of arguments.

16   That is a great hope on my part.

17             All right.  Mr. Gottlieb, does that schedule work for

18   you as well?

19             MR. GOTTLIEB:  Absolutely, your Honor.  Thank you.

20             THE COURT:  All right.  And Mr. Drylewski, are you

21   handling it for the VC defendants?

22             MR. DRYLEWSKI:  Thank you, Judge.  My colleague, Tansy

23   Woan, is.

24             THE COURT:  I beg your pardon.

25             All right.  Ms. Woan, let me turn to you.  Ms. Woan, I

MB97RISC

1    wanted to make sure that schedule works for you as well.

2              MS. WOAN:  Yes, your Honor.  Thank you so much.

3              THE COURT:  All right.  Thank you.

4              All right.  We have a schedule.

5              MR. SERRITELLA:  Just one question about the omnibus

6    brief.  Obviously, if we're going to be getting probably three

7    25-page briefs, I don't need triple the space, but I'm going to

8    need more space in my brief to respond to all the arguments,

9    likely.

10             THE COURT:  I agree.

11             MR. SERRITELLA:  I can wait until we get them to ask

12   for the --

13             THE COURT:  No.  I'll give it to you now.  65 pages,

14   sir.

15             And Mr. Greenfield has graciously foregone, on behalf

16   of all defense counsel, page extensions for their briefs.

17             All right.  I'm not even bothering to discuss

18   settlement with the parties because I think we need some motion

19   practice beforehand.

20             Mr. Serritella, are there other things that you or

21   your colleagues wish to discuss with me in this conversation?

22             MR. SERRITELLA:  No, your Honor.

23             THE COURT:  Thank you.

24             Mr. Greenfield, anything else to discuss today, sir?

25             MR. GREENFIELD:  Nothing else.  Thank you so much.

MB97RISC

1                THE COURT:  All right.  Mr. Gottlieb, anything else

2      today?

3                MR. GOTTLIEB:  No, your Honor.  Thank you.

4                THE COURT:  Ms. Woan, the late-breaking addition to

5      our team, anything else to bring?

6                MS. WOAN:  Nothing, your Honor.  Thank you so much.

7                THE COURT:  Okay.  I wish to each of you happy

8      holidays that are hopefully not too filled with work, and

9      continued safety and health in this pandemic.

10                Thank you very much.  We are adjourned.

11                (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25