UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NESSA RISLEY, JAMES FREELAND, ROBERT
SCOTT, ANNIE VENESKY, ANDREW CARDIS, and
DEAN MEYERS, Individually and on Behalf of All Others
Similarly Situated,

                    Plaintiffs,

      v.

UNIVERSAL NAVIGATION INC. d/b/a UNISWAP
LABS, UNISWAP FOUNDATION, HAYDEN Z.
ADAMS, PARADIGM OPERATIONS LP, AH CAPITAL
MANAGEMENT, L.L.C. d/b/a ANDREESSEN
HOROWITZ, and UNION SQUARE VENTURES, LLC,

                  Defendants.

Case No. 22 Civ. 2780 (KPF)

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF**
**UNIVERSAL NAVIGATION INC. (d/b/a UNISWAP LABS) AND HAYDEN Z. ADAMS**

Maeve L. O'Connor
Elliot Greenfield
Brandon Fetzer
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants Universal Navigation Inc.*
*(d/b/a Uniswap Labs) and Hayden Z. Adams*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 3

I.      THE PARTIES........................................................................................................... 3

II.     THE PROTOCOL....................................................................................................... 4

III.    LIQUIDITY POOLS. ................................................................................................ 5

IV.     TRADING FEES. ...................................................................................................... 6

V.      CONFLATION OF LABS, THE PROTOCOL AND THE INTERFACE. ...................... 7

VI.     PLAINTIFFS' CLAIMS. ........................................................................................... 8

ARGUMENT ........................................................................................................................ 9

I.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 29(b) OF THE
        EXCHANGE ACT..................................................................................................... 9

        A.      Plaintiffs Fail to Plead Contractual Privity with Labs. ................................. 9

        B.      Plaintiffs Fail to Identify a Contract That Violates the Exchange Act. ............... 11

II.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 12(a)(1) OF
        THE SECURITIES ACT. ........................................................................................ 12

III.    PLAINTIFFS' FEDERAL CLAIMS ARE TIME-BARRED WITH RESPECT TO
        MOST OF THE TOKENS. ...................................................................................... 13

IV.     PLAINTIFFS FAIL TO STATE A FEDERAL SECURITIES CLAIM AGAINST
        MR. ADAMS. ........................................................................................................ 14

V.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER STATE LAW............................. 16

        A.      Plaintiffs Fail to State a Claim Under the Idaho or North Carolina State
                Securities Laws. ....................................................................................... 16

        B.      Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud and
                Negligent Misrepresentation. ..................................................................... 17

        C.      Plaintiffs Fail to State a Claim for Unjust Enrichment. ................................. 19

CONCLUSION................................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012)..................................................................................17

*Anderson v. Binance*,
   2022 WL 976824 (S.D.N.Y Mar. 31, 2022) ........................................................13

*Berdeaux v. OneCoin Ltd.*,
   561 F. Supp. 3d 379 (S.D.N.Y. 2021)..................................................................18

*Branch Banking & Tr. Co. v. Lighthouse Fin. Corp.*,
   2005 WL 1995410 (N.C. Super. July 13, 2005) .................................................17

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   750 F.3d 227 (2d Cir. 2014)................................................................................15

*Cosgrove v. Oregon Chai, Inc.*,
   520 F. Supp. 3d 562 (S.D.N.Y. 2021)....................................................................3

*Crandall v. Hartford Cas. Ins. Co.*,
   2011 WL 3665398 (D. Idaho Aug. 22, 2011) ......................................................17

*Credit Suisse v. ARM Fin. Grp.*,
   2001 WL 300733 (S.D.N.Y. March 28, 2001) .....................................................12

*Dandong v. Pinnacle Performance Ltd.*,
   2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011) ......................................................18

*DoubleLine Capital LP v. Odebrecht Fin., Ltd.*,
   323 F. Supp. 3d 393 (S.D.N.Y. 2018).............................................................15, 18

*EMA Fin., LLC v. Vystar Corp.*,
   2021 WL 1177801 (S.D.N.Y. Mar. 29, 2021) ....................................................9, 11

*Emps. Ret. Sys. of the Gov't of the Virgin Islands v. J.P. Morgan Chase & Co.*,
   804 F. Supp. 2d 141 (S.D.N.Y. 2011)..................................................................12

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
   873 F.3d 85 (2d Cir. 2017)..............................................................................16, 17

*Fogel v. Wal-Mart de México SAB de CV*,
   2017 WL 751155 (S.D.N.Y. Feb. 27, 2017).........................................................14

*Frati v. Saltzstein*,
   2011 WL 1002417 (S.D.N.Y. Mar. 14, 2011) .......................................................9

*Gillis v. QRX Pharma Ltd.*,
   197 F. Supp. 3d 557 (S.D.N.Y. 2016) ................................................................11

*Harrison v. Rubenstein*,
   2007 WL 582955 (S.D.N.Y. Feb. 26, 2007) .....................................................15

*Holsworth v. BProtocol Found.*,
   2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) .....................................................12

*In re Allianz Glob. Invs. U.S. LLC Alpha Sec. Litig.*,
   2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021) ..................................................17

*In re Bibox Grp. Holdings Ltd Sec. Litig.*,
   534 F. Supp. 3d 326 (S.D.N.Y. 2021) ................................................................14

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
   650 F.3d 167 (2d Cir. 2011) ................................................................................15

*James v. Gage*,
   2019 WL 1429520 (S.D.N.Y. Mar. 29, 2019) .................................................11

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000) ................................................................................19

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ........................................................................17, 18

*Loftus v. FINRA*,
   2021 WL 325773 (S.D.N.Y. Feb. 1, 2021) .......................................................9

*MSV Synergy, LLC v. Shapiro*,
   2022 WL 4096163 (S.D.N.Y. Sept. 7, 2022) ..................................................17

*Penn. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*,
   874 F. Supp. 2d 341 (S.D.N.Y. 2012) ..............................................................15

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ............................................................................................12

*Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*,
   794 F. Supp. 1265 (S.D.N.Y. 1992) .................................................................11

*Scottrade, Inc. v. BroCo Invs., Inc.*,
   774 F. Supp. 2d 573 (S.D.N.Y. 2011) ..............................................................10

*Slayton v. Am. Express Co.*,
   460 F.3d 215 (2d Cir. 2006) ...............................................................................14

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
    2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001)................................................................12

*Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*,
    2019 WL 1368570 (S.D.N.Y. Mar. 26, 2019) .............................................................11

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016).........................................................................................3

*Wilson v. Merrill Lynch & Co., Inc.*,
    671 F.3d 120 (2d Cir. 2011).......................................................................................15

*Youngers v. Virtus Inv. Partners Inc.*,
    195 F. Supp. 3d 499 (S.D.N.Y. 2016).......................................................................15

**Statutes**

15 U.S.C. § 77m...........................................................................................................13

15 U.S.C. § 78c..............................................................................................................9

15 U.S.C. § 78e..............................................................................................................9

15 U.S.C. § 78o..............................................................................................................9

15 U.S.C. § 78u-4...........................................................................................................6

15 U.S.C. § 78cc......................................................................................................9, 13

I.C. § 30-14-301...........................................................................................................16

I.C. § 30-14-401...........................................................................................................16

I.C. § 30-14-509...........................................................................................................16

N.C. Gen. Stat. § 78A-24.............................................................................................16

N.C. Gen. Stat. § 78A-36.............................................................................................16

N.C. Gen. Stat. § 78A-56.............................................................................................16

Defendants Universal Navigation Inc. d/b/a/ Uniswap Labs ("Labs") and Hayden Z. Adams submit this memorandum of law in support of their motion to dismiss the Amended Complaint ("AC").

## PRELIMINARY STATEMENT

Plaintiffs' claims relate to purported "scams" perpetrated by the issuers of certain cryptocurrency tokens (the "Tokens"), yet Plaintiffs do not assert any claims against those issuers.  Instead, they assert claims against Labs – a software company that developed the code underlying the decentralized cryptocurrency exchange that Plaintiffs used to acquire the Tokens – along with Mr. Adams, its founder and CEO.  Those claims necessarily fail because there are no well-pleaded factual allegations that Labs or Mr. Adams sold the Tokens to Plaintiffs, ever held title or any other interest in the Tokens, received any fees or payments in connection with Plaintiffs' purchases of the Tokens, or knew of or participated in any alleged fraud or misrepresentation by the issuers of the Tokens.

The Uniswap Protocol (the "Protocol"), which Plaintiffs allege they used to acquire the Tokens, is simply computer code running on the Ethereum blockchain – a system of "smart contracts," which Plaintiffs describe as "self-executing, self-enforcing" code.  Users trade tokens by means of "liquidity pools":  for a specific pair of tokens traded on the Protocol, some users supply the tokens to a liquidity pool, and other users can then interact with the liquidity pool to trade one token for the other.  At no point does Labs have *any* interest in the tokens traded on the Protocol – no title, ownership, custody, possession or control.  A trading fee is paid by the purchaser to the liquidity pool, which automatically distributes the fee pro-rata to the liquidity providers.  The process is fully automated and, once launched, runs entirely independently of Labs.  Indeed, just as the Bitcoin Protocol continues to operate years after creator Satoshi

Nakamoto disappeared, the Protocol would remain fully operational if Labs were to cease to exist.

Because Plaintiffs fail to plead that Labs (or Mr. Adams) sold the Tokens to them or received any fees from those trades, Plaintiffs fall far short of stating a claim against those defendants under federal or state law.

*First*, Plaintiffs' claim under Section 29(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), which states that a contract is void if its performance violates the Exchange Act, fails because Plaintiffs do not identify any contract between any Plaintiff and Labs or Adams, let alone one that requires a violation of the Exchange Act.

*Second*, Plaintiffs' claim under Section 12(a)(1) of the Securities Act of 1933 (the "Securities Act") fails because Plaintiffs do not – and cannot – plausibly allege that Labs or Mr. Adams sold, offered to sell, or solicited the sale of any of the Tokens.  Plaintiffs' conclusory assertions to the contrary are unsupported by any factual allegations and contradicted by other allegations in the Amended Complaint and documents incorporated by reference.

*Third*, Plaintiffs' federal claims also are time-barred with respect to most of the Tokens. Both the Securities Act and Exchange Act claims are subject to a one-year statute of limitations, and Plaintiffs allege that they purchased the majority of the Tokens more than a year before any claims were asserted with respect to them.

*Fourth*, Plaintiffs' state law claims fail for several reasons.  Plaintiffs' claims under the Idaho and North Carolina state securities statutes fail because Plaintiffs do not adequately plead that Labs or Mr. Adams sold the Tokens to them or that the alleged transactions occurred in Idaho or North Carolina, as the statutes require.  With respect to Plaintiffs' aiding and abetting claims, Plaintiffs fail to plead particularized facts indicating that Labs or Mr. Adams were even

aware of any purported scams by the Token issuers, much less provided substantial assistance. Plaintiffs' unjust enrichment claim fails because Labs did not receive any fees from Plaintiffs' purchase of the Tokens.

The Amended Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS[1]

## I.    THE PARTIES.

Labs is a software company that is the main contributor to the Protocol, an open-source protocol for trading certain digital assets.  (AC ¶ 52.)  The first version of the Protocol was launched in 2018.  (AC ¶ 51.)  Hayden Z. Adams is the founder and CEO of Labs.  (AC ¶ 21.)

Paradigm Operations LP, AH Capital Management, L.L.C. d/b/a Andreessen Horowitz, and Union Square Ventures, LLC (the "VC Defendants") are venture capital firms that have invested in Labs.  (AC ¶¶ 22-24, 99-100.)

Uniswap Foundation is a corporation formed in June 2022 with a stated mission to "support the decentralized growth and sustainability of the Uniswap Protocol and its supporting ecosystem."  (AC ¶¶ 159, 163.)

---

[1]    The factual allegations in the Amended Complaint are taken as true solely for the purposes of this motion.  The Court may also consider the Uniswap v2 Whitepaper and the Uniswap website (AC ¶¶ 77-93) as well as other documents cited and relied on in the Amended Complaint.  *See Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (courts may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff upon which it relied in bringing the suit") (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 581 n.5 (S.D.N.Y. 2021) (noting that courts "may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination") (citation omitted).  Copies of such documents are attached as exhibits to the accompanying Declaration of Brandon Fetzer and are cited herein as "Ex. __."

Plaintiffs are six individuals residing in North Carolina, Idaho, New York and Australia who allege that they purchased certain identified Tokens using the Protocol during the period of December 2020 through March 2022.  (AC ¶ 5.)  The Tokens and dates of acquisition are set forth in the certifications Plaintiffs filed in connection with their lead plaintiff motion, which are incorporated by reference in the Amended Complaint.  (AC ¶ 5; Dkt. Nos. 28-1 to 28-6.)

## II.  THE PROTOCOL.

The Protocol is computer code running on the Ethereum blockchain, which allows users to swap one cryptocurrency token for another.  (AC ¶ 52.)  The first version of the Protocol ("v1") was developed by Labs and launched in 2018.  (AC ¶ 51.)  Subsequent versions were launched in 2020 ("v2") and 2021 ("v3").  (AC ¶¶ 77, 96.)  Although changes are made with each new version, the subsequent versions do not supplant or alter the prior ones, and many users continue to use v2 despite the availability of v3.  (AC ¶¶ 57, 96.)  The new versions of the Protocol did not fundamentally change the mechanics of how users trade tokens.  (AC ¶¶ 81, 96.)

The Protocol is autonomous, decentralized and immutable; once launched, it runs entirely independently of Labs.  The Protocol is simply a "system of smart contracts on the Ethereum blockchain."  (AC ¶ 81; Ex. 2.)  Smart contracts are "self-executing, self-enforcing" computer programs, which means that no person or entity controls the Protocol's operation, restricts who uses the Protocol or decides which tokens are traded on the Protocol.  (AC ¶ 42; Ex. 5.)  Indeed, for as long as the Ethereum blockchain continues to produce blocks, the Protocol will operate unaltered.

The cryptocurrency tokens traded using the Protocol are "ERC-20 tokens" – tokens created using a technical standard of the Ethereum Protocol known as ERC-20.  (AC ¶¶ 43-44.)  According to Plaintiffs, ERC-20 tokens are "relatively simple and easy to deploy," and "anyone

with a basic understanding of Ethereum" can create and issue their own ERC-20 token.  (AC ¶ 45.)

## III.   LIQUIDITY POOLS.

Unlike traditional, centralized exchanges, where buyers and sellers are matched on a one-to-one basis using a centralized order book, the Protocol is a peer-to-peer system in which tokens are traded by means of "liquidity pools."  (AC ¶¶ 38-39, 78-79; Ex. 1 at 1, 6; Ex. 2; Ex. 3.)  Each pool contains two ERC-20 tokens, each valued relative to the other.  (AC ¶ 78; Ex. 2; Ex. 3.)  As one token is traded for the other, the relative prices of the tokens shift, and a new market rate is determined.  (AC ¶ 78; Ex. 2; Ex. 3.)

Users who place token pairs into liquidity pools are known as "liquidity providers."  (AC ¶ 39.)  Anyone can become a liquidity provider by contributing tokens into a preexisting pool or by creating a new pool.  (AC ¶¶ 72, 77, 89; Ex. 2; Ex. 3.)  In exchange for providing liquidity, these users automatically receive "pool tokens" from the Protocol, which represent their contribution to a pool.  (AC ¶ 79; Ex. 2; Ex. 3.)  Liquidity providers can later "burn" their pool tokens to retrieve their contribution to the pool.  (AC ¶ 92; Ex. 2; Ex. 3.)

The following diagram, which is included in the Amended Complaint and taken from Labs's website, illustrates how trading using a liquidity pool works:



(AC ¶ 78; Ex. 2; Ex. 3.)  On the left-hand side of the diagram is a liquidity provider.  In this particular example, the liquidity provider deposits 10 "A" tokens and 1 "B" token into a pre-existing liquidity pool, and it receives 4 pool tokens in return, representing its contribution to the pool.  On the right-hand side of the diagram is a trader who swaps 10 "A" tokens (plus a fee) for 1 "B" token.  The trader has no direct interaction with the liquidity provider; the trader interacts only with the pool.  (AC ¶ 78.)

Liquidity pools are "smart contracts" that hold the tokens and enforce the rules for depositing or withdrawing tokens.  (AC ¶¶ 39, 42, 81; Ex. 2; Ex. 3 ("It is important to reiterate that a Pool is just a smart contract, operated by users calling functions on it.").)  Those rules are written "directly into the program's code."  (AC ¶ 42.)  Accordingly, Labs does not have any control over, or any interest in, the tokens traded on the Protocol.

## IV.    TRADING FEES.

As shown in the diagram above, users pay a 0.3% fee to effectuate each trade when using v2.  (AC ¶¶ 78, 91-92; Ex. 2; Ex. 3.)  In v3, there are multiple fee tiers.  (AC ¶ 96.)  That fee is paid into the liquidity pool and automatically "distributed pro-rata to all [liquidity providers] in the pool upon completion of the trade."  (AC ¶ 92; Ex. 1 at 1; Ex. 2; Ex. 3.)  Plaintiffs do not allege that Labs or Mr. Adams were liquidity providers for any of the Tokens.

Although Plaintiffs repeatedly assert that Labs receives fees for trades executed on the Protocol, they allege no facts supporting that assertion.  (AC ¶¶ 3, 4, 9, 12, 63, 76, 91, 178, 180, 711, 722.)  At the pre-motion hearing held on November 9, 2022, Plaintiffs abandoned any claim that Labs receives fees.[2]  (Dkt. No. 64, "Tr." at 26:7-16.)  According to Plaintiffs, their

---

[2]    Plaintiffs retreated from this claim for good reason.  *See* Fed. R. Civ. P. 11(b)(3) (requiring that "factual contentions have evidentiary support"); 15 U.S.C. § 78u-4(c)(1) (requiring review of compliance with Rule 11(b) in federal securities actions).

allegations relate to inadequate disclosure of fees "going to a liquidity provider," which Plaintiffs admitted is unrelated to their claims and was provided merely "to give context." (Tr. 27:4-8.) Whether offered as "context" or otherwise, any suggestion that Labs receives fees for trades on the Protocol is, by Plaintiffs' own admission, inaccurate. (*Id.*) And it is contradicted by other allegations in the Amended Complaint as well as documents incorporated by reference. (AC ¶ 92 (trading fees "distributed pro-rata to all [liquidity providers]"); Ex. 1 at 1 (trading fee "goes to liquidity providers"); Ex. 2 (trading fees "function as a payout to [liquidity providers]"; Ex. 3 (trading fees "distributed pro-rata to all [liquidity providers]").)

As Plaintiffs note, v2 of the Protocol includes a "switch" to have a portion of the trading fee (1/6 of the .3% fee, or .05%) be paid to the Protocol rather than liquidity providers. (AC ¶ 91; Ex. 1 at 5; Ex. 2.) Plaintiffs do not allege that the Protocol fee switch has been activated.

## V.     CONFLATION OF LABS, THE PROTOCOL AND THE INTERFACE.

In the Amended Complaint, Plaintiffs repeatedly conflate Labs and the Protocol, using the term "Uniswap" to refer to both Labs (the company) and the Protocol (the decentralized exchange). Merely as a few examples, "Uniswap's trading volume" refers to trading on the Protocol (AC ¶ 57), the issuance of tokens by "Uniswap" refers to the tokens issued by liquidity pools on the Protocol (AC ¶¶ 79, 92), "Uniswap" pools refers to liquidity pools on the Protocol (AC ¶¶ 171, 174), and fees generated or charged by "Uniswap" refer to fees paid to liquidity pools on the Protocol (AC ¶¶ 40, 63, 76, 91, 98.)

The Protocol is also distinct from the "Uniswap Interface" (the "Interface") which is front-end software Labs developed that some users employ to access the Protocol. (AC ¶ 64.) Despite acknowledging this distinction, Plaintiffs often conflate the Protocol and the Interface in an attempt to suggest that Labs controls trading on the Protocol. (AC ¶¶ 76, 97, 118, 189.) For instance, Plaintiffs selectively quote from tweets by Mr. Adams to suggest that Labs "maintained

complete control over the Protocol," but those tweets actually make the opposite point, expressly contrasting Labs's control of the Interface with its lack of control over trading on the Protocol. (AC ¶ 97; Ex. 4.)  The webpage that Plaintiffs cite makes the same point.  (AC ¶ 190; Ex. 5.) Thus, Labs may block the use of its *Interface* for certain users or tokens but cannot prevent anyone from trading tokens on the *Protocol*.  (AC ¶¶ 118-20, 189-190; Ex. 4; Ex. 5.)

## VI.    PLAINTIFFS' CLAIMS.

Plaintiff Risley commenced this action on April 4, 2022, asserting claims in connection with six tokens:  EthereumMax, Bezoge Earth, Matrix Samurai, Alphawolf Finance, Rocket Bunny and BoomBaby.io.  (Dkt. No. 1.)

On September 26, 2022, Plaintiffs filed the Amended Complaint, which includes claims regarding an additional thirty-four tokens:  Akita, Archangel, Ares Protocol, Autz, Cyber Doge, Dent, Dogg Token, Ethereum Chain Token, Ethereum Max, FEGtoken, Goku Inu, Hoge.finance, HoloToken, Jupiter, Kawakami Inu, Kishu Inu, The Official Mine Token, Mononoke Inu, Pundi X Token, Saitama, Sanshu Inu, Smooth Love Potion, StarLink, Stoner Doge, Vera, YfDai.finance, Dogelon, HuskyToken, Lorde Edge, Shih Tzu, Wise Token, Lukso Token, Olympus Dao and Samsung Metaverse.  (AC ¶ 5.)

Plaintiffs contend that the Tokens were fraudulent "scams" and allege that they were injured when the Tokens decreased in value.  For example, Plaintiff Freeland alleges that he purchased approximately 18.6 billion Sanshu Inu tokens for $15.57, and that the value of those tokens had decreased to $1.19 as of June 1, 2022.  (AC ¶¶ 475-485; Dkt. No. 28-2 at 16.) Plaintiffs allege that the Sanshu Inu token was "a classic pump and dump scheme," in which the issuers of Sanshu Inu "enriched themselves" at the expense of purchasers.  (AC ¶ 482.)  Plaintiffs make similar allegations regarding the other Tokens, in each case alleging that they were defrauded by the Token issuers.  (AC ¶¶ 195-696.)  Although Plaintiffs devote five hundred

paragraphs of the Amended Complaint to these alleged "scams" by the issuers of the Tokens, Plaintiffs do not assert any claims against those issuers.  Nor do Plaintiffs allege facts indicating that Labs or Mr. Adams was aware of the purported scams, much less participated in them.

Plaintiffs assert claims under Section 29(b) of the Exchange Act and Section 12(a)(1) of the Securities Act, as well as a variety of state statutory and common law claims.

## ARGUMENT

## I.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 29(b) OF THE EXCHANGE ACT.

Plaintiffs fail to state a claim under Section 29(b), which states that a contract is void if its performance violates the Exchange Act, but they fail to identify any such contract to which they were a party.[3]  *See Frati v. Saltzstein*, 2011 WL 1002417, at *5 (S.D.N.Y. Mar. 14, 2011) ("To establish a violation of Section 29(b), the plaintiffs must show that (1) the contract involved a prohibited transaction, (2) they are in contractual privity with the defendants, and (3) they are in the class of persons the Act was designed to protect.") (alterations and quotations omitted); 15 U.S.C. § 78cc(b).

### A.   Plaintiffs Fail to Plead Contractual Privity with Labs.

Plaintiffs' Section 29(b) claim fails for the simple reason that they do not identify any contract between any Plaintiff and Labs.  *EMA Fin.*, 2021 WL 1177801, at *2 (Section 29(b)

---

[3]   Plaintiffs do not dispute that there is no private right of action under Sections 5 and 15(a)(1) of the Exchange Act, 15 U.S.C. §§ 78e, 78o, which prohibit securities transactions on unregistered exchanges or effected by unregistered brokers or dealers.  (Dkt. No. 60 at 3 (stating "whether there is a private right of action as to claims solely under Sections 5 and 15 of the Exchange Act is irrelevant").)  *See EMA Fin., LLC v. Vystar Corp.*, 2021 WL 1177801, at *3 (S.D.N.Y. Mar. 29, 2021) (no private right of action under Section 15(a)(1)); *Loftus v. FINRA*, 2021 WL 325773, at *4 (S.D.N.Y. Feb. 1, 2021) (no private right of action under Section 6, which, along with Section 5, governs registration of securities exchanges).  Labs disputes that it is an "exchange" or "broker or dealer" as defined in Section 3 of the Exchange Act, 15 U.S.C. § 78c, but the Court need not address those issues in order to decide this motion.

claim requires "contractual privity with the defendant"); *Scottrade, Inc. v. BroCo Invs., Inc.*, 774 F. Supp. 2d 573, 583 (S.D.N.Y. 2011) (dismissing Section 29(b) claim for lack of contractual privity).

*First*, Plaintiffs' allegation that Labs "contracted with the Issuers of the Tokens to list securities on the Protocol" does not provide a basis for a Section 29(b) claim.  (AC ¶¶ 711, 722.) Even setting aside Plaintiffs' failure to identify any contracts between Labs and the issuers of the Tokens, Plaintiffs do not allege they were parties to those purported contracts and thus fail to plead contractual privity with Labs.

*Second*, Plaintiffs' alleged trades using the Protocol do not constitute contracts – and certainly not contracts with Labs.  (AC ¶¶ 711, 722; Dkt. No. 60 at 3.)  As a threshold matter, Plaintiffs' reference to "smart contracts" does not support their claims because – as Plaintiffs admit – "smart contracts" are simply "self-executing, self-enforcing" computer code.  (AC ¶ 42.) They are not "contracts" in the legal sense.  Furthermore, Plaintiffs do not allege that Labs was a counterparty to any of their trades.  As Plaintiffs acknowledge, when users trade tokens on the Protocol, there is no specific counterparty:  they interact only with the liquidity pool and "do not trade with each other directly."  (AC ¶ 72.)  Moreover, even if a liquidity provider were a transaction counterparty (and it is not), Plaintiffs do not allege that Labs was a liquidity provider for any pool that Plaintiffs used to acquire the Tokens.

*Third*, Plaintiffs' assertion that they "paid Uniswap fees for the use of the Protocol" is insufficient to establish a contract with Labs.  (AC ¶¶ 711, 722.)  As noted above, Plaintiffs repeatedly use the term "Uniswap" to conflate Labs and the Protocol.  (*See* Statement of Facts, Section V.)  Insofar as Plaintiffs are referring to fees paid to the liquidity pool, those are not fees paid to Labs.  Alternatively, to the extent that "Uniswap" is meant to refer to Labs, that

allegation is contradicted by Plaintiffs' own admissions that trading fees are paid to the liquidity providers, which Plaintiffs do not allege includes Labs.  Plaintiffs' diagram shows that the trading fee is paid into the liquidity pool, and Plaintiffs allege that the fee is "distributed pro-rata to all [liquidity providers] in the pool upon completion of the trade."  (AC ¶¶ 78, 92.)  *See James v. Gage*, 2019 WL 1429520, at *14 (S.D.N.Y. Mar. 29, 2019) ("Where the plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.").  The allegation that fees are paid to Labs is also contradicted by the documents incorporated by reference in the Amended Complaint.  (Ex. 1 at 1, 5; Ex. 2; Ex. 3.)  *See Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 583 (S.D.N.Y. 2016) (allegations contradicted by documents on which plaintiffs rely are "not entitled to the usual presumption of truth applicable on a motion to dismiss") (citing cases).  Unable to refute these basic facts, Plaintiffs abandoned this allegation at the pre-motion hearing.  (Tr. 26:4-17.)

### B. Plaintiffs Fail to Identify a Contract That Violates the Exchange Act.

Plaintiffs' Section 29(b) claim also fails because Plaintiffs fail to allege the terms of any contract, much less demonstrate the existence of a contract that, "on its face," requires an illegal act in violation of the Exchange Act.  *See Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, 2019 WL 1368570, at *13 (S.D.N.Y. Mar. 26, 2019) ("[C]ontracts can be held unenforceable under § 29(b) only when the contract 'on its face' requires the performance of an illegal act."); *EMA Fin.*, 2021 WL 1177801, at *2 (Section 29(b) only allows for the rescission of unlawful contracts, "not unlawful transactions made pursuant to" contracts that are lawful on their face."); *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992) (dismissing Section 29(b) claims and noting that plaintiffs' failure to allege "when the[] contracts were executed, which of the litigants were parties to the contracts, and what terms and

11

provisions of the contracts violated the securities laws" makes it "difficult for the Court even to review plaintiffs' claims").

## II.       PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 12(a)(1) OF THE SECURITIES ACT.

Plaintiffs' claim under 12(a)(1) of the Securities Act fails because Plaintiffs do not adequately plead that Labs is a "statutory seller" – *i.e.*, Labs either (*i*) "passed title or other interest in a security to a buyer for value" or (*ii*) "successfully solicit[ed] the purchase of a security." *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988).

Plaintiffs fail to satisfy *Pinter*'s first prong because they do not – and cannot – plausibly allege that Labs ever held title or other interest in the Tokens, much less "directly sold" the Tokens to Plaintiffs. *See Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001) (*Pinter*'s first prong not satisfied where plaintiff did not allege the defendant "directly sold" the securities to it). As Plaintiffs acknowledge in the Amended Complaint, liquidity providers add pairs of tokens to a liquidity pool, and other users interact with the liquidity pool to swap one token for the other. (AC ¶¶ 39, 72, 78, 79.) Plaintiffs do not allege that Labs issued any of the Tokens or provided liquidity to any of the pools they used to acquire the Tokens.

Plaintiffs cannot satisfy *Pinter*'s second prong because they do not allege that they were "directly contacted" by Labs or that they "purchased securities as a result of any active solicitations" by Labs. *Holsworth v. BProtocol Found.*, 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021). Plaintiffs' "bald allegations of solicitation" are insufficient to withstand a motion to dismiss. *Credit Suisse v. ARM Fin. Grp.*, 2001 WL 300733, at *9-10 (S.D.N.Y. March 28, 2001); *see also Emps.' Ret. Sys. of the Gov't of the Virgin Islands v. J.P. Morgan Chase & Co.*,

804 F. Supp. 2d 141, 151 (S.D.N.Y. 2011) (dismissing Section 12 claim that relied on "conclusory legal allegations unsupported by any factual allegations").

Unable to plead that Labs was a statutory seller under either prong of *Pinter*, Plaintiffs fall back on the vague and misguided theory that, because Labs allegedly has a "disproportionate amount of power" over the governance of the Protocol, Labs somehow "controls" the liquidity pools and "holds and controls" tokens traded in the liquidity pools.  (AC ¶¶ 78, 80, 81, 85, 129; Dkt. No. 60 at 4; Tr. 21:7-14, 23:1-24:10, 28:6-16.)  That theory makes no sense and is not supported by any factual allegations.  It is undermined by Plaintiffs' own acknowledgment that liquidity pools – smart contracts – are "self-executing, self-enforcing" computer programs, with the rules for providing liquidity or trading tokens written "directly into the program's code." (AC ¶¶ 39, 42, 77, 81.)  As Plaintiffs themselves allege, liquidity is "deposited into a pool" by liquidity providers, and "a trade is executed" when a user sends one token to the liquidity pool in exchange for another token.  (AC ¶ 78, 79, 81.)  Plaintiffs allege no facts indicating that Labs ever had possession, control or ownership of the Tokens, much less that Labs passed title of the Tokens to Plaintiffs.

## III.   PLAINTIFFS' FEDERAL CLAIMS ARE TIME-BARRED WITH RESPECT TO MOST OF THE TOKENS.

Plaintiffs' federal claims also are untimely with respect to most of the Tokens.  Both the Securities Act and Exchange Act claims are subject to a one-year statute of limitations, and therefore claims relating to purchases of Tokens more than one year before claims were asserted with respect to those Tokens are untimely.  *See Anderson v. Binance*, 2022 WL 976824, at *2-4 (S.D.N.Y Mar. 31, 2022) (dismissing claims based on tokens that "were last purchased . . . more than a year" before suit was filed); 15 U.S.C. § 77m (one-year limitations period); 15 U.S.C. § 78cc (same).  Plaintiffs Freeland, Scott, Venesky, Cardis and Meyers first asserted their claims

in the Amended Complaint, which was filed on September 26, 2022.  Although the Amended

Complaint "tracks the legal theory of the [original] complaint," the claims brought by these new

Plaintiffs predicated on different tokens are "based on an 'entirely distinct set' of factual

allegations" and do not relate back.  *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006)

(quoting *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir. 2001)); *see also Fogel v. Wal-Mart de México*

*SAB de CV*, 2017 WL 751155, at *12-13 (S.D.N.Y. Feb. 27, 2017) (claims based on alleged

misstatements not identified in original complaint did not relate back); *In re Bibox Grp. Holdings*

*Ltd Sec. Litig.*, 534 F. Supp. 3d 326, 335-37 (S.D.N.Y. 2021) (each claim premised on Section 5

of the Exchange Act "implicates different sets of concerns for each token").

Specifically, all of Plaintiff Venesky's alleged purchases occurred on or before

January 11, 2021 and therefore are untimely.  (Dkt. No. 28-4.)  Likewise, the claims based on the

following tokens must be dismissed because all of the alleged purchases occurred before

September 26, 2021:  Akita, Ares Protocol, Autz, Cyber Doge, Dent, Dogg Token, Etherium

Chain Token, Fegtoken, Goku Inu, Hoge.Finance, Holotoken, Jupiter, Kawakami Inu, Kishu Inu,

The Official Mine Token, Pundix Token, Sanshu Inu, Smooth Love Potion, Starlink, Stoner

Doge, Vera, VfDai.Finance, Dogelon, Huskytoken and Shih Tzu.  (Dkt. Nos. 28-2 to 28-6.)

## IV.   PLAINTIFFS FAIL TO STATE A FEDERAL SECURITIES CLAIM AGAINST MR. ADAMS.

Plaintiffs fail to state a claim against Mr. Adams under Section 29(b) of the Exchange

Act or 12(a)(1) of the Securities Act for the same reasons stated above with respect to Labs.

Plaintiffs fail to identify any contract with Mr. Adams that violates the Exchange Act, or

adequately plead that Mr. Adams was a "statutory seller" – *i.e.*, Mr. Adams either passed title in

the Tokens to Plaintiffs or successfully solicited the purchase of the Tokens.  Plaintiffs'

generalized allegation that, upon "information and belief," Mr. Adams is a "significant liquidity

provider for tokens traded on the Protocol" is insufficient to plead that Mr. Adams was a liquidity provider for the specific Tokens allegedly purchased by Plaintiffs. Accordingly, the Court should dismiss those claims against Mr. Adams as well.

Plaintiffs fail to state a claim for control person liability under Section 20(a) of the Exchange Act and Section 15 of the Securities Act because they do not plead (*i*) a primary violation; (*ii*) actual control of the primary violator; or (*iii*) that Mr. Adams "was, in some meaningful sense, a culpable participant." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014); *Penn. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 368 (S.D.N.Y. 2012) (same elements for Section 15).[4]

*First*, Plaintiffs fail to allege a primary violation, and the control person claims should be dismissed on this basis alone. *See Wilson v. Merrill Lynch & Co., Inc.,* 671 F.3d 120, 139 (2d Cir. 2011) (affirming dismissal of Section 20(a) claim for failure to plead a primary violation).

*Second*, Plaintiffs rely on conclusory allegations of "control person *status*" and fail to plead that Mr. Adams "exercised *actual* control over the matters at issue." *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 461 (S.D.N.Y. 2018) (emphasis in original). (AC ¶ 727.)

*Third*, Plaintiffs fail to allege "particularized facts" regarding Mr. Adams's state of mind that show "culpable participation," which is equivalent to "conscious misbehavior or recklessness in the sense required by Section 10(b)." *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 524 (S.D.N.Y. 2016); *Harrison v. Rubenstein*, 2007 WL 582955, at *19 (S.D.N.Y. Feb. 26, 2007) (dismissing Section 20(a) claim where complaint contained "no

---

[4]    Courts in this Circuit are split on whether "culpable participation" is an element of a claim under Section 15. *See In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (noting disagreement among district courts).

detailed allegations regarding the state of mind of the 'control person'").  None of the allegations about Mr. Adams say anything about his state of mind regarding the alleged primary violation by Labs.  (AC ¶¶ 11, 21, 40, 51-52, 97, 99, 101-14, 117, 124-25, 186-87, 270.)

## V.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER STATE LAW.

Plaintiffs' state law securities claims and common law claims fail for many of the same reasons, including Plaintiffs' failure to adequately plead that Labs or Mr. Adams sold the Tokens to Plaintiffs or received any fees from those trades.

### A.   Plaintiffs Fail to State a Claim Under the Idaho or North Carolina State Securities Laws.

Plaintiffs' claims under the state securities laws of Idaho and North Carolina fail because they fail to adequately plead that Labs or Mr. Adams sold the Tokens to them, or that the alleged transactions occurred in either of those states.

*First*, as discussed above, Plaintiffs do not adequately plead that Labs or Mr. Adams sold the Tokens to them, which mandates dismissal of Plaintiffs' state securities laws, each of which requires that the defendant engaged in a securities transaction with the plaintiff.  I.C. § 30-14-509(b) (seller of unregistered securities liable to purchaser); I.C. § 30-14-509(d) (unregistered broker-dealer liable to purchaser); N.C. Gen. Stat. § 78A-56(a) (seller of unregistered securities or unregistered broker-dealer liable to purchaser).  (AC ¶¶ 750, 752, 760-61, 775-76, 782-83.)

*Second*, Plaintiffs fail to plead that any of the alleged transactions occurred in Idaho or North Carolina, as the statutes require.  I.C. § 30-14-301 (prohibiting sales of unregistered securities "in this state"); N.C. Gen. Stat. § 78A-24 (same); I.C. § 30-14-401 (prohibiting unregistered broker-dealer from transacting business "in this state"); N.C. Gen. Stat. § 78A-36 (same).  As a general matter, blue-sky laws "only regulate[ ] transactions occurring within the regulating States." *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am.,*

*Inc.*, 873 F.3d 85, 156 (2d Cir. 2017) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 641 (1982))

(alteration in original).  "A securities transaction occurs where each party 'incur[s] irrevocable

liability.'" *Id.* (quoting *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d

Cir. 2012)).  Here, the only allegations relating to those states are that Plaintiff Risley and

Freeland are residents of North Carolina and Idaho (AC ¶¶ 13, 14), but the residency of the

purchaser "does not affect where a transaction occurs."  *Absolute Activist*, 677 F.3d at 69.

Plaintiffs' control person claims against Mr. Adams fail because Plaintiffs do not plead

an underlying violation under Idaho or North Carolina law.  (AC ¶¶ 767, 789.)

### B.    Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud and Negligent Misrepresentation.

Plaintiffs fail to state a claim for aiding and abetting fraud or negligent misrepresentation

because they do not allege any particularized facts indicating that Labs or Mr. Adams had "actual

knowledge" of any purported fraud or misrepresentation or provided "substantial assistance to

advance the fraud's commission."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006);

*MSV Synergy, LLC v. Shapiro*, 2022 WL 4096163, at *10 (S.D.N.Y. Sept. 7, 2022) (fraud and

misrepresentation claims are "subject to Rule 9(b)'s heightened pleading standard").[5]

---

[5]    Plaintiffs do not specify which state's law they contend governs their state common law claims.  "New York choice of law rules mandate application of the substantive law of the state with the most significant relationship to the legal issue."  *In re Allianz Glob. Invs. U.S. LLC Alpha Sec. Litig.*, 2021 WL 4481215, at *9-10 (S.D.N.Y. Sept. 30, 2021).  Because Plaintiffs propose a class with no geographical limitation, the laws of every state and other countries are potentially implicated.  Even among Plaintiffs' alleged states of residence, there are conflicts of law as to their state common law claims.  *See, e.g., Branch Banking & Tr. Co. v. Lighthouse Fin. Corp.*, 2005 WL 1995410, at *8 (N.C. Super. July 13, 2005) ("No North Carolina state court has recognized a claim for aiding and abetting fraud."); *Crandall v. Hartford Cas. Ins. Co.*, 2011 WL 3665398, at *10 (D. Idaho Aug. 22, 2011) (The Idaho Supreme Court "has limited [the] ambit" of a negligent misrepresentation claim "to professional relationships involving an accountant.").  For purposes of this motion, Plaintiffs' common law claims are analyzed under New York law, which appears to include elements that are common across states that recognize these claims.

The mere allegation that Labs failed to prevent the issuers of the Tokens from using the Protocol is insufficient to plead "actual knowledge" or "substantial assistance."  (AC ¶ 177.)  *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 412 (S.D.N.Y. 2021) ("Allegations that the defendant 'should have known of the conduct' are insufficient to raise an inference of actual knowledge," as are allegations of a "negligent failure to identify warning signs of fraudulent activity . . . even where such signs converge to form a veritable forest of red flags.") (citations omitted); *Lerner*, 459 F.3d at 295 ("Substantial assistance" requires that the defendant "affirmatively assists, helps conceal or fails to act when required to do so.") (citations omitted).

In the five hundred paragraphs detailing the alleged scams by the issuers of the Tokens (AC ¶¶ 195-696), the only mention of Mr. Adams is the allegation that the issuers of WISE listed Mr. Adams in the acknowledgement section of the WISE whitepaper, which falls far short of pleading "actual knowledge" or "substantial participation."[6]  (AC ¶ 270.)  The same is true of the allegations relating to Labs, which are limited to the allegation that Labs ignored a customer complaint regarding the SAM token and a tweet from the issuers of LUKSO regarding stolen tokens.  (AC ¶¶ 279-81, 297.)

Additionally, Plaintiffs fail to plead fraud or negligent misrepresentation (and therefore their aiding and abetting claims) because they do not plead particularized facts demonstrating reliance on the alleged misstatements.  *See DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 461 (S.D.N.Y. 2018) (dismissing fraud and negligent misrepresentation claims for failure to plead reliance).  Nor, with respect to their negligent misrepresentation claim, do Plaintiffs plead that they had a "special relationship" with the issuers of the Tokens.  *See Dandong v. Pinnacle Performance Ltd.*, 2011 WL 5170293, at *15-16 (S.D.N.Y. Oct. 31, 2011)

---

[6]      https://wise-token.nl/wp-content/uploads/2021/01/WISE-Token-Teal-Paper.pdf.

(dismissing aiding and abetting negligent misrepresentation claim where relationship "was that of an ordinary buyer and seller").

      **C.**      **Plaintiffs Fail to State a Claim for Unjust Enrichment.**

Plaintiffs fail to state a claim for unjust enrichment because there is no well-pleaded allegation that Labs or Adams received any fees or other "specific and direct benefit" in connection with Plaintiffs' trades and at their "expense." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). As discussed above, the trading fees are paid to liquidity providers, and neither Labs nor Mr. Adams is alleged to have provided liquidity to any pool used by Plaintiffs to acquire the Tokens. Nor do Plaintiffs adequately plead that "equity and good conscience" would require restitution. *Id.* Plaintiffs fail to allege any enrichment, let alone unjust enrichment.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Court should dismiss the Amended Complaint with prejudice.

Dated:      New York, New York      DEBEVOISE & PLIMPTON LLP
            December 21, 2022

                              /s/ Elliot Greenfield

                              Maeve L. O'Connor
                              Elliot Greenfield
                              Brandon Fetzer
                              919 Third Avenue
                              New York, New York 10022
                              (212) 909-6000
                              *mloconnor@debevoise.com*
                              *egreenfield@debevoise.com*
                              *bfetzer@debevoise.com*

                              *Attorneys for Defendants Universal Navigation*
                              *Inc. (d/b/a Uniswap Labs) and Hayden Z. Adams*