**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NESSA RISLEY, JAMES FREELAND, ROBERT SCOTT, ANNIE VENESKY, ANDREW CARDIS, and DEAN MEYERS, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  -v-<br><br>UNIVERSAL NAVIGATION INC. dba UNISWAP LABS, UNISWAP FOUNDATION, HAYDEN Z. ADAMS, PARADIGM OPERATIONS LP, AH CAPITAL MANAGEMENT, L.L.C. dba ANDREESSEN HOROWITZ, and UNION SQUARE VENTURES, LLC,<br><br>      Defendants. | No. 1:22-cv-2780-KPF<br><br>The Honorable Katherine Polk Failla<br><br><br>CLASS ACTION<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF THE VC DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ....................................................................................................2

    A. The VC Defendants' Investment in Uniswap Labs ...................................3

    B. Trading on the Uniswap Protocol ..............................................................5

    C. The UNI Token ..........................................................................................6

III. LEGAL STANDARD.............................................................................................7

IV. THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 12(a)(1) OF THE SECURITIES ACT ...................................................................................8

    A. Plaintiffs Fail to State a Claim Under a "Passing Title" Theory ..............8

    B. Plaintiffs Fail to State a Claim Under a "Solicitation" Theory................12

V. PLAINTIFFS' UNREGISTERED BROKER-DEALER AND UNREGISTERED EXCHANGE CLAIMS FAIL.............................................................................13

VI. THE COMPLAINT FAILS TO STATE A CLAIM FOR CONTROL PERSON LIABILITY ..........................................................................................................14

    A. Plaintiffs Fail to Adequately Allege Control ..........................................14

        (1) *Plaintiffs Fail to Allege That Any VC Defendant Had the Power to Control Uniswap Labs* ...............................................................15

        (2) *Plaintiffs Fail to Allege That Any VC Defendant Exercised Actual Control Over Uniswap Labs' Purported Securities Violations* ................19

    B. Plaintiffs Fail to Allege Particularized Facts Raising a Strong Inference That the VC Defendants were "Culpable Participants"..........................21

VII. PLAINTIFFS' STATE-LAW CLAIMS FAIL ....................................................23

VIII. CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alpha Capital Anstalt v. Schwell Wimpfheimer & Associates LLP*,
No. 1:17-cv-1235-GHW, 2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018)................................16

*In re Alstom SA Securities Litigation*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)..............................................................................15, 16

*In re American Realty Capital Properties, Inc.*,
No. 15 MC 40(AKH), 2015 WL 6869337 (S.D.N.Y. Nov. 6, 2015) ....................................21

*Arkansas Teacher Retirement System v. Bankrate, Inc.*,
18 F. Supp. 3d 482 (S.D.N.Y. 2014)....................................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................7

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)..................................................................................................14

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ............................................................................................17

*In re BioScrip, Inc.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015)..........................................................................15, 16, 18

*Bratusov v. Comscore, Inc.*,
No. 19 Civ. 3210 (KPF), 2020 WL 3447989 (S.D.N.Y. June 24, 2020)...........................8, 14

*Capri v. Murphy*,
856 F.2d 473 (2d Cir. 1988)................................................................................................12

*Castillo v. Dean Witter Discover & Co.*,
No. 97 Civ. 1272(RPP), 1998 WL 342050 (S.D.N.Y. June 25, 1998)..................................17

*Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018)................................................................................................10

*CLAL Finance Batucha Investment Management, Ltd. v. Perrigo Co.*,
No. 09 Civ. 2255(TPG), 2010 WL 4177103 (S.D.N.Y. Oct. 7, 2010) .................................22

*Cosgrove v. Oregon Chai, Inc.*,
520 F. Supp. 3d 562 (S.D.N.Y. 2021)...................................................................................3

*In re Deutsche Telekom AG Securities Litigation*,
No. 00 CIV 9475 SHS, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002)...................................16

ii

*DiVittorio v. Equidyne Extractive Industries, Inc.*,
    822 F.2d 1242 (2d Cir. 1987)................................................................22

*DoubleLine Capital LP v. Odebrecht Finance, Ltd.*,
    323 F. Supp. 3d 393 (S.D.N.Y. 2018)....................................................19

*Fezzani v. Bear, Stearns & Co.*,
    384 F. Supp. 2d 618 (S.D.N.Y. 2004)....................................................20

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
    352 F. Supp. 2d 429 (S.D.N.Y. 2005)..............................................15, 18

*Friedman v. JPMorgan Chase & Co.*,
    No. 15-cv-5899 (JGK), 2016 WL 2903273 (S.D.N.Y. May 18, 2016) ..................15

*In re Global Crossing, Ltd. Securities Litigation*,
    No. 02 Civ. 910(GEL), 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005)..............15, 16

*Griffin v. PaineWebber, Inc.*,
    No. 99 CIV. 2292(VM), 2001 WL 740764 (S.D.N.Y. June 29, 2001)....................13

*Grupo Verzatec S.A. de C.V. v. RFE Investment Partners*,
    No. 17-CV-9887 (ALC), 2019 WL 1437617 (S.D.N.Y. Mar. 29, 2019) ..........15, 16

*Hao Zhe Wang v. Verizon Communications Inc.*,
    No. 19-CV-9506 (JMF), 2020 WL 5982882 (S.D.N.Y. Oct. 8, 2020)..............11, 17

*Ho v. Duoyuan Global Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012)....................................................16

*Kuhns v. Ledger*,
    202 F. Supp. 3d 433 (S.D.N.Y. 2016)....................................................16

*Lanza v. Drexel & Co.*,
    479 F.2d 1277 (2d Cir. 1973)................................................................21

*In re Lehman Bros. Mortgage-Backed Securities Litigation*,
    650 F.3d 167 (2d Cir. 2011)......................................................14, 18, 21

*In re Marsh & Mclennan Cos., Inc. Securities Litigation*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006)....................................................21

*Owen v. Elastos Foundation*,
    No. 1:19-cv-5462-GHW, 2021 WL 5868171 (S.D.N.Y. Dec. 9, 2021) ..................13

*Pinter v. Dahl*,
    486 U.S. 622 (1988)................................................................. passim

*Holsworth v. BProtocol Foundation*,
No. 20 Civ. 2810 (AKH), 2021 WL 706549 (S.D.N.Y. Feb. 22, 2021)............................9, 12

*Pollio v. MF Global Ltd.*,
608 F. Supp. 2d 564 (S.D.N.Y. 2009)....................................................................................22

*Public Employees' Retirement System v. Merrill Lynch & Co.*,
714 F. Supp. 2d 475 (S.D.N.Y. 2010)....................................................................................21

*Pyskaty v. Wide World of Cars, LLC*,
856 F.3d 216 (2d Cir. 2017)............................................................................................10, 11

*In re Refco Securities Litigation*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007)....................................................................................21

*Regnante v. Securities & Exchange Officials*,
134 F. Supp. 3d 749 (S.D.N.Y. 2015)....................................................................................17

*Seidemann v. Professional Staff Congress Local 2334*,
432 F. Supp. 3d 367 (S.D.N.Y. 2020)......................................................................................7

*Silsby v. Icahn*,
17 F. Supp. 3d 348 (S.D.N.Y. 2014)......................................................................................16

*Sloane Overseas Fund v. Sapiens International Corp.*,
941 F. Supp. 1369 (S.D.N.Y. 1996)......................................................................................16

*In re Smith Barney Transfer Agent Litigation*,
884 F. Supp. 2d 152 (S.D.N.Y. 2012)....................................................................15, 19, 20

*In re Sotheby's Holdings, Inc.*,
No. 00 Civ. 1041(DLC), 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000)................................22

*South Cherry Street, LLC v. Hennessee Group LLC*,
573 F.3d 98 (2d Cir. 2009)............................................................................................21, 23

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
96 F. Supp. 3d 325 (S.D.N.Y. 2015)......................................................................................21

*Steed Finance LDC v. Nomura Securities International, Inc.*,
No. 00 CIV. 8058(NRB), 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001)..................11, 12, 13

*Tanzanian Royalty Exploration Corp. v. Crede CG III, Ltd.*,
No. 18 Civ. 4201 (LGS), 2019 WL 1368570 (S.D.N.Y. Mar. 26, 2019) ................................14

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016)....................................................................................................8

*In re Weight Watchers International Inc. Securities Litigation*,
    504 F. Supp. 3d 224 (S.D.N.Y. 2020) ...................................................................16

*Wyche v. Advanced Drainage Systems, Inc.*,
    No. 15 Civ. 5955 (KPF), 2017 WL 971805 (S.D.N.Y. Mar. 10, 2017) ................................22

*Yi v. GTV Media Group Inc.*,
    No. 21 Civ. 2669 (VM), 2021 WL 2535528 (S.D.N.Y. June 18, 2021)..........................16, 18

*Youngers v. Virtus Investment Partners Inc.*,
    195 F. Supp. 3d 499 (S.D.N.Y. 2016)..................................................................19, 20, 21

*Zakinov v. Ripple Labs, Inc.*,
    No. 18-cv-06753-PJH, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020) .....................................13

## STATUTES

15 U.S.C. §§ 77*l*(a)(1), 77e ....................................................................................8, 11

Defendants Paradigm Operations, LP ("Paradigm"), AH Capital Management, L.L.C., ("Andreessen" or "a16z"), and Union Square Ventures, LLC, ("USV"), (collectively, the "VC Defendants") submit this memorandum of law in support of their Motion to Dismiss the First Amended Complaint (ECF No. 46 ("AC")).[1]

## I.     INTRODUCTION

Through this action, Plaintiffs contort the securities laws in an improper attempt to assert claims against the VC Defendants—a collection of unaffiliated and independent venture capital firms that each invest in private companies, such as Uniswap Labs.  The original complaint named the VC Defendants as purported "control persons" of Uniswap Labs under the Securities Act of 1933 ("Securities Act") and Securities Exchange Act of 1934 ("Exchange Act").  Without making any material change to the factual allegations in the original complaint, the AC now names the VC Defendants in *all* counts, including counts premised on the untenable notion that they themselves are unregistered "exchanges" or "broker-dealers."  But the AC is devoid of any well-pled allegation that any VC Defendant acted as an exchange or broker-dealer, entered into any contractual relationship with Plaintiffs, or interacted in any way with Plaintiffs regarding the Uniswap Protocol or any of the Tokens at issue.  As such, Plaintiffs' attempt to rescind their supposed contracts with the VC Defendants pursuant to Section 29 of the Exchange Act is nonsensical and should be rejected.  (*Infra* Section V.)

Plaintiffs' claim that the VC Defendants acted as "statutory sellers" of the Tokens is equally without merit.  (*Infra* Section IV.)  Absent from the AC is any well-pled allegation that

---

[1]     To avoid repetition, the VC Defendants incorporate herein by reference the arguments set forth in Uniswap Labs' brief (ECF No. 67) ("Labs Br."), adding additional context where warranted.  Unless otherwise indicated, all capitalized terms shall have the meanings ascribed in the AC.

the VC Defendants passed title of any Tokens to Plaintiffs.  Nor do Plaintiffs adequately allege that the VC Defendants "successfully solicited" the sale of any Token to Plaintiffs.  These fundamental flaws foreclose Plaintiffs' statutory seller claims as a matter of law.

Further, Plaintiffs do not allege that any VC Defendant (much less all of them) acted as "control persons" of Uniswap Labs.  (*Infra* Section VI.)  Taken alone or together, the AC's allegations amount to nothing more than the VC Defendants' support and potential influence over Uniswap Labs.  But the law is settled that influence is not enough; rather, Plaintiffs must plead that each of the VC Defendants had the ability to control Uniswap Labs *and* actually exercised such control with respect to the alleged violations at issue.  The AC does neither.

Finally, the AC fails to allege any state law claims against the VC Defendants.  (*Infra* Section VII.)  Other than reciting mere boilerplate allegations that the VC Defendants "knew" of the supposed fraudulent scams perpetrated by unaffiliated, third-party token issuers on the Uniswap Protocol, the AC does not contain a single well-pled allegation—much less particularized facts—connecting any VC Defendant to any purported scam.  And, again, the AC does not plead that the VC Defendants did anything to assist the purported fraud or had any relationship, contractual or otherwise, with any Plaintiff.

At bottom, the AC rests on the untenable notion that the VC Defendants, by virtue of their investment in Uniswap Labs, must be grouped together and held liable for the actions of third-party token issuers on the Uniswap Protocol.  This theory is based on unsound legal arguments, unsupported or non-existent factual allegations, and a fundamental misunderstanding of the technology at issue.  The AC should thus be dismissed in its entirety with prejudice.

## II.   BACKGROUND

On November 2, 2018, Hayden Adams and Uniswap Labs launched the Uniswap Protocol (the "Protocol"), a system of "self-executing, self-enforcing" smart contracts on the Ethereum

blockchain that permits anyone with an internet connection to trade one type of crypto token for another.  (AC ¶¶ 39, 42, 51-52.)  The Protocol is a decentralized exchange; instead of matching the orders of a buyer and a seller for a given token (as some centralized exchanges do), users of the Protocol trade with "liquidity pools" containing the two tokens that a user wishes to swap for one another.  (AC ¶¶ 39, 78-79; Labs Br. at 5-6.)

Plaintiffs are six individuals who allege that they used the Protocol to purchase 40 crypto tokens that allegedly qualify as unregistered securities (the "Tokens").  (AC ¶¶ 5-6, 13-18.)  In their fourteen-count First Amended Complaint, Plaintiffs bring claims for rescission of contracts with an unregistered exchange or unregistered broker-dealer under the Exchange Act; the offer and sale of unregistered securities in violation of the Securities Act; control person liability under the Securities Act and the Exchange Act; violations of Idaho and North Carolina securities laws; and common-law torts.  Plaintiffs name all three VC Defendants in all fourteen counts.

A.    **The VC Defendants' Investment in Uniswap Labs**

Decentralized exchanges such as the Protocol offer an "open, permissionless, and inclusive access model" capable of supporting "an exponentially growing ecosystem of virtual assets." Fetzer Ex. 3 (Pools) at 4.[2]  Recognizing that potential, each of the VC Defendants (and many others) invested in Uniswap Labs.  In April 2019, Paradigm participated in a "seed round" of financing for Uniswap Labs "to advance research and development of the Uniswap protocol and

---

[2]    As Labs and Adams explain, this Court may consider documents cited and relied on in the AC, as well as documents posted on Uniswap Labs' website.  (See Labs Br. at 3 n.1.); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 581 n.5 (S.D.N.Y. 2021) (noting that courts "'may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination'").  Copies of such documents are attached as exhibits to the Declaration of Brandon Fetzer (ECF No. 68) and the accompanying Declaration of Susan E. Engel and are cited herein as "Fetzer Ex. __" and "Engel Ex. __," respectively.  Exhibit page citations refer to the numbers in the ECF headings.

other decentralized products on Ethereum." (AC ¶¶ 22, 99-100.) By August 2020, the Protocol had become "one of the most widely-used platforms on Ethereum," and Uniswap Labs announced that it had raised $11 million in a round of Series A funding led by a16z and supported by additional investments from Paradigm, USV, and other investors. (AC ¶¶ 52, 100.) Plaintiffs do not allege "what rights" any VC Defendant "received in connection with [these] equity acquisition[s]." (AC ¶¶ 99-100.)

Citing Adams' tweets, Plaintiffs allege that the VC Defendants and other investors provided Adams and Uniswap Labs with advice (such as "writing smart contracts, writing whitepapers, [and] reading/explaining other peoples papers/smart contracts") and networking assistance (including "sourcing candidates, conducting interviews, [and] making introductions"). (AC ¶ 104 (quoting Engel Ex. 6 (Hayden Adams Feb. 11, 2021, 8pm Tweets) at 3).) What Plaintiffs selectively fail to mention is that in the same Twitter thread they cite, Adams also noted that the VC Defendants and other investors "have been super supportive of [Adams'] leadership," that Adams' "team has consistently set strategy and called the shots from day one," and that Adams had "never felt for a second [the investors] want to exert control over the direction of our company." Engel Ex. 6 (Hayden Adams Feb. 11, 2021, 8pm Tweets) at 2. "In fact," Adams added, "when making important decisions, I've often felt reluctance from investors on weighing in too strongly. Even when directly asked, the response is often that I have a better understanding of the project/situation and should trust my instinct." *Id.*

As Plaintiffs acknowledge, Adams' statements do not establish "what each of [the VC Defendants] did specifically (or continue[s] to do)" with respect to Uniswap Labs. (AC ¶ 106.) Aside from Adams' tweets, Plaintiffs assert that Paradigm drafted whitepapers with Adams and Uniswap Labs and helped develop features of the Protocol (AC ¶¶ 107-11), and that a16z and USV

4

advocated against treating crypto tokens as securities before the Securities and Exchange Commission (AC ¶¶ 113-14).

B. **Trading on the Uniswap Protocol**

Plaintiffs allege that Protocol users had engaged in more than "$1.1. trillion" in transactions across "over 111 million trades[] and well over 50,000 token pairs" as of September 2022. (AC ¶ 61; Labs Br. at 4-5 (describing deployment of successive versions of the Protocol since 2018).)

As noted, users who trade tokens on the Protocol do not interact directly with other users, but rather trade through a "liquidity pool" for a pair of tokens. (AC ¶ 39; *id.* ¶ 81 (quoting Fetzer Ex. 1 at 2 (Uniswap V2 Core)).) The tokens' value relative to one another depends on the amount of each token present in the pool. (AC ¶ 78.) The supply of tokens in a liquidity pool initially comes from "liquidity providers," users who contribute amounts of both tokens in exchange for "liquidity tokens." (*Id.* ¶ 79.) "[L]iquidity tokens are themselves tradable assets" on the Protocol. *Id.* (quoting Fetzer Ex. 3 (Pools) at 3). When users buy tokens from a given pool, they pay a transaction fee of 30 basis points (or .3%) to the liquidity pool, and those fees are distributed to liquidity providers. (AC ¶ 92.) Anyone can become a liquidity provider for a pool on the Protocol containing any "pairing of unique ERC-20 tokens." (*Id.* ¶¶ 89, 102.)[3]

Plaintiffs allege "[u]pon information and belief" and without further elaboration that the VC Defendants are "significant liquidity provider[s] for tokens traded on the Protocol." (AC ¶¶ 22-24, 101, 194.) Notably, Plaintiffs do not allege that the VC Defendants were liquidity providers for any of the Tokens they purchased. The only specific pools that Plaintiffs assert the VC Defendants provided liquidity for—again "[u]pon information and belief" and without further

---

[3]     *See also* Engel Ex. 7 (Introducing UNI) at 3 (stating that in "less than two years," "over **49,000** unique liquidity providers" had deposited "over $1bn liquidity").

elaboration—are pools that pair Ethereum with "mainstream tokens," including (1) USDT, (2) USDC, (3) DAI, and (4) wrapped Bitcoin.  (AC ¶¶ 170-71.)  According to Plaintiffs, transactions in these pools often precede transactions for so-called "scam tokens" because a "user's stablecoin first gets converted to ETH, earning a fee for the liquidity provider, and then the ETH is used to execute a trade for" a "scam token."  (*Id.* ¶ 174.)  But Plaintiffs do not allege that the VC Defendants issued any of the Tokens, traded any of the Tokens, or even held any of the Tokens.  According to Plaintiffs, many of the "Issuers" who perpetrated the alleged "scams" on the Protocol remain "unknown or anonymous."  (*Id.* ¶¶ 6, 199.)

### C.    The UNI Token

In September 2020, Uniswap Labs issued a governance token called "UNI."  (AC ¶ 122; *id.* ¶ 169 (citing Engel Ex. 7 (Introducing UNI)).)  Initially, UNI tokens were allocated to community members (including "historical liquidity providers"), employees, advisors, a "Community Treasury," and investors (including the VC Defendants).  (AC ¶¶ 122, 124, 126; Engel Ex. 7 (Introducing UNI) at 6-7.)  Plaintiffs allege that a16z "holds the most UNI tokens," possessing at least "6% of 'vote weight'" in UNI tokens in a wallet (AC ¶ 138), and has delegated UNI tokens to others (*id.* ¶¶ 140-42).  But Plaintiffs do not acknowledge the thousands of other UNI token holders or allege how many UNI tokens each VC Defendant actually holds, instead speculating that the VC Defendants "are each ***likely*** top 10 holders of UNI tokens" without providing any supporting factual allegations.  (*Id.* ¶ 135 (emphasis added).)

In any event, UNI token holders have the power to vote only on a limited set of issues, such as the use of UNI tokens in the "Community Treasury," *i.e.*, 430 million UNI (or 43% of the initial UNI supply) to be distributed "through contributor grants, community initiatives, liquidity mining, and other programs"; the amount of liquidity provider fees for certain liquidity pools; whether UNI token holders will receive fees; and "Uniswap governance," *i.e.*, the rules regarding the passage of

governance proposals for the Protocol.  (AC ¶ 123; Engel Ex. 7 (Introducing UNI) at 6, 8-9 (describing what UNI holders received "immediate ownership of" and "[i]nitial governance parameters").)[4]

Plaintiffs also do not allege that UNI token ownership confers the ability to control **which** tokens may be traded on the Protocol.  A user's access to tokens on the Protocol may depend on the "interface" (also called an "app" or a "portal") through which a user connects to the Protocol. (AC ¶¶ 118-20; *id.* ¶ 190 (citing Fetzer Ex. 5 (Token access on app.uniswap.org) at 2).)  In other words, an interface is a website that allows users to interact with a smart contract by contributing to a liquidity pool or swapping one token for another.  (AC ¶ 52.)  The Interface developed by Uniswap Labs offers one way to interact with the Protocol, but "many other portals" allow people to interact with the Protocol.  (Fetzer Ex. 5 (Token access on app.uniswap.org) at 2.)  Plaintiffs do not allege that any of the VC Defendants operate or control any such interface at all, let alone one that allows interaction with the Protocol.

## III.    LEGAL STANDARD

To avoid dismissal pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "'[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Seidemann v. Pro. Staff Cong. Loc. 2334*, 432 F. Supp. 3d 367, 377 (S.D.N.Y. 2020) (citation omitted) (Failla, J.), *aff'd*, 842 F. App'x 655 (2d Cir. 2021).  A court may consider the complaint's

---

[4]      Although Plaintiffs assert that UNI is an unregistered security (AC ¶ 131), they do not base their claims on any Plaintiff's purchase of UNI.

allegations, as well as documents that are attached to the complaint, incorporated into it by reference, integral to it, and documents possessed by or known to plaintiffs upon which it relied in bringing the suit. *See Bratusov v. Comscore, Inc.*, 2020 WL 3447989, at *1 n.2 (S.D.N.Y. June 24, 2020) (Failla, J.) (citing *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016)).

## IV.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 12(a)(1) OF THE SECURITIES ACT

Under Section 12(a)(1) of the Securities Act, "[a]ny person who . . . offers or sells" an unregistered security "shall be liable . . . to the person purchasing such security from him."  15 U.S.C. §§ 77*l*(a)(1), (2); *see also* 15 U.S.C. § 77e.  To state a claim under this provision, a plaintiff must plead that a defendant either (1) "passed title, or other interest in the security, to the buyer for value," or (2) "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve [its] own financial interests or those of the securities' owner."  *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988).  Plaintiffs fail to allege that any VC Defendant was a "statutory seller" of the Tokens they purchased under either theory.

### A.   Plaintiffs Fail to State a Claim Under a "Passing Title" Theory

Section 12(a)(1) "imposes liability" for the sale of an unregistered security "on only the buyer's immediate seller."  *Pinter*, 486 U.S. at 643-44 & n.21.  Thus, when a plaintiff pursues a Section 12(a)(1) claim based on a "passing title" theory, the plaintiff must plead "a buyer-seller relationship not unlike traditional contractual privity."  *Id.* at 642.  Plaintiffs fail to allege that any VC Defendant passed title to any Token to any Plaintiff.  Indeed, Plaintiffs do not allege interaction between any VC Defendant and any Plaintiff, let alone formation of a contractual relationship.  This pleading deficiency dooms Plaintiffs' "passing title" theory.

Unable to advance a conventional "passing title" theory, Plaintiffs rest their argument on allegations made "[u]pon information and belief" that the VC Defendants were "liquidity

provider[s] for tokens traded on the Protocol." (AC ¶¶ 22-24.) Not only are Plaintiffs wrong about the VC Defendants acting as liquidity providers for *any* tokens on the Protocol (ECF No. 54, at 2 n.3), but even if Plaintiffs' allegations were true, they fail to support Plaintiffs' "passing title" theory for several independent reasons.

*First*, Plaintiffs fail to plead that any VC Defendant was a liquidity provider for any of the Tokens at issue here. Most of Plaintiffs' "liquidity provider" allegations state in general terms that the VC Defendants are "significant liquidity provider[s] for tokens traded on the Protocol." (AC ¶¶ 22-24; *see also id.* ¶¶ 93, 101, 194 (similar)). But the only "tokens" relevant here are the 40 "Tokens" that Plaintiffs purchased. (*Compare* AC ¶¶ 93, 101, 194, *with id.* ¶ 5 (listing the "Tokens" purchased)). With respect to these Tokens, Plaintiffs do not and cannot allege that the VC Defendants acted as liquidity providers, foreclosing any claim that the VC Defendants were in "privity" with Plaintiffs. *Holsworth v. BProtocol Found.*, 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021).

The only allegations about the VC Defendants' participation in liquidity pools in fact undercut their "passing title" theory. (AC ¶¶ 171-74.) Plaintiffs "belie[ve]" the VC Defendants were contributors to four "Mining Pools," each of which pairs Ethereum with a "mainstream token[]." (*Id.* ¶ 171.) Not only do Plaintiffs allege zero facts to support their supposed belief, but those "mainstream tokens" also are not the "Tokens" that matter here. And the possibility that transfers of mainstream tokens might somehow facilitate Plaintiffs' purchase of "scam tokens" does not turn the VC Defendants into Plaintiffs' "immediate seller[s]." *Pinter*, 486 U.S. at 643-44 & n.21. Even if such transfers were a "substantial factor" leading to the transaction, that is not sufficient. *Id.* at 650-54; *see also infra* at 13. Plaintiffs' conspicuous failure to plead that any VC Defendant acted as a liquidity provider for any Token requires dismissal of Plaintiffs' claims based

on a "passing title" theory.

Indeed, Plaintiffs do not adequately allege that the VC Defendants are liquidity providers for *any* tokens. Nor could they. Plaintiffs instead rely solely on allegations made "upon information and belief" without any further factual support. (*See, e.g.*, AC ¶¶ 22-24, 101, 194.) As the Second Circuit has explained, "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018); *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (holding that allegation on "information and belief" that defendant "'regularly'" engaged in fraudulent conduct was "entirely speculative"). Such an allegation "will only make otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Citizens United*, 882 F.3d at 384-85 (citation omitted) (holding that "information and belief allegations" were insufficient where complaint alleged "*public* disclosures"). Here, Plaintiffs do not even allege that these facts are peculiarly within the VC Defendants' possession and control. To the contrary, Plaintiffs admit that "liquidity tokens are themselves tradable assets" on the Protocol (AC ¶ 79 (citation omitted)), but they do not allege that any VC Defendant has sold, traded, or otherwise used liquidity tokens. And because "'anyone can become a liquidity provider' on the Protocol" (*id.* ¶ 89), the mere existence of an incentive to become a liquidity provider to obtain a percentage of transaction fees provides no factual basis for concluding that the VC Defendants did so. Plaintiffs' only allegation tying the VC Defendants to Plaintiffs' purchases is thus "entirely speculative." *Pyskaty*, 856 F.3d at 226.[5]

---

[5]    Despite the VC Defendants' representation that they "never acted as liquidity providers on the platform" (ECF No. 54, at 2 n.3), Plaintiffs have declined to amend their pleading to cure this deficiency with factual allegations and whatever good faith basis they purport to have had for

*Second*, regardless of whether Plaintiffs adequately allege that the VC Defendants were liquidity providers for the challenged Tokens—which they do not—the VC Defendants-as-liquidity-providers would not have had a relationship remotely resembling contractual privity with any Plaintiff.  A liquidity provider and a token purchaser interact with the same smart contract, not with one another.  (AC ¶ 78 ("buyers and sellers do not trade with each other directly"); Fetzer Ex. 3 (Pools) at 4 ("[A] Pool is just a smart contract, operated by users calling functions on it. Swapping tokens is calling 'swap' on a Pool contract instance, while providing liquidity is calling 'deposit.'").)  The purchase of a Token through a "self-executing, self-enforcing program[]," (AC ¶ 42), does not place the purchaser in privity with any liquidity provider.  *Pinter*'s first prong turns on whether a plaintiff has directly "purchas[ed a] security from" a defendant, 15 U.S.C. § 77*l*(a), and the fact that a defendant (along with many others) contributed to a liquidity pool at some point prior to a plaintiff's purchase does not establish the requisite connection, *see Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001) (holding that defendant who was merely "'part of the chain of title'" was not liable under *Pinter*'s first prong). A liquidity token holder's receipt of a pro-rata share of a transaction fee does not alter this conclusion.  (AC ¶ 92.)  Such a benefit does not render a liquidity provider an "immediate seller." *Pinter*, 486 U.S. at 643-44 & n.21; *Steed Fin. LDC*, 2001 WL 1111508, at *7 n.7 (rejecting insufficient direct seller allegations notwithstanding Plaintiffs' assertion that the defendant "acted for its own financial gain").  Plaintiffs' own allegations and the documents on which they rely thus refute the notion that a liquidity provider is an "immediate seller" to users trading tokens on the

---

making these assertions.  *See Hao Zhe Wang v. Verizon Commc'ns Inc.*, 2020 WL 5982882, at *2 (S.D.N.Y. Oct. 8, 2020) (warning "that bringing claims against an entity without a good faith basis to believe that the entity was responsible for the alleged wrongdoing could expose [plaintiff] to sanctions under Rule 11 . . . .").

Protocol.  *Pinter*, 486 U.S. at 643-44 & n.21.

In short, Plaintiffs' "passing title" theory based on the VC Defendants' purported status as liquidity providers fails because the AC's allegations are untethered from the Tokens at issue, entirely speculative, and insufficient to establish contractual privity in any event.

**B.**     **Plaintiffs Fail to State a Claim Under a "Solicitation" Theory**

As with a "passing title" theory, a "solicitation" theory of Section 12(a)(1) liability turns "on the defendant's relationship with the plaintiff-purchaser."  *Id.* at 651.  To plead a solicitation claim, a plaintiff must allege (1) direct contact between the plaintiff and the defendant and (2) the plaintiff's purchase of securities as a result of that contact.  *See Holsworth*, 2021 WL 706549, at *3 (rejecting solicitation claim where Plaintiff had not "shown that he was directly contacted by Defendants or that he purchased securities as a result of any active solicitations by Defendants"); *see also Capri v. Murphy*, 856 F.2d 473, 478-79 (2d Cir. 1988) (solicitation allegations must establish that particular defendant "actually solicited [plaintiffs'] investment").  While Plaintiffs conclusorily claim—without any factual support—that the VC Defendants "sold, promoted, and/or solicited the Tokens" (AC ¶ 735), such threadbare allegations fail to satisfy this well-settled rule governing solicitation theories.

Where, as here, a complaint is devoid of allegations of contact between a plaintiff and a defendant and a purchase of securities resulting from that direct contact, a solicitation claim cannot proceed.  *See Steed Fin. LDC*, 2001 WL 1111508, at *7 (rejecting solicitation theory where plaintiff "failed to allege any specific acts by [defendant] to directly solicit [plaintiffs] to purchase").  Just as the complete absence of interaction between Plaintiffs and any VC Defendant prevents Plaintiffs from showing privity, that absence of interaction prevents Plaintiffs from showing direct contact between them.  That lack of direct solicitation defeats Plaintiffs' claim at the first step.  *See Griffin v. PaineWebber, Inc.*, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001)

(dismissing Section 12 claim where plaintiff did "not allege that [defendant] was directly involved in the actual solicitation of [plaintiff's] purchase").  Nor can Plaintiffs satisfy the independent requirement that the solicitation be "successful[]."  *Pinter*, 486 U.S. at 647.  Plaintiffs fail to allege that they "purchased [a Token] as a result of [any VC Defendant's] solicitation."  *Steed Fin. LDC*, 2001 WL 1111508, at *7.

Plaintiffs suggest that Section 12(a)(1) liability "applies to 'any person who engaged in steps necessary to the distribution of the unregistered security.'"  (ECF No. 60 at 4 (quoting *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *12 (N.D. Cal. Feb. 26, 2020)).)  But Plaintiffs' standard cannot be reconciled with *Pinter*, which expressly rejected a "substantial factor" test that "focuses on the defendant's degree of involvement in the securities transaction and its surrounding circumstances."  486 U.S. at 651.  Plaintiffs cannot state a claim under *Pinter* simply by asserting that the VC Defendants "engaged in steps necessary to the distribution" of Tokens.  *See, e.g.*, *Owen v. Elastos Found.*, 2021 WL 5868171, at *15 n.6 (S.D.N.Y. Dec. 9, 2021) (explaining that this formulation "is not the law"); (*see* ECF No. 60 at 4 (citing allegations regarding certain VC Defendants' investments in Uniswap Labs, assistance with development of features on the Protocol, and possession of UNI).)  Because Plaintiffs plead nothing more than a connection between the VC Defendants and the "surrounding circumstances" of the transactions at issue, Plaintiffs cannot avoid dismissal by relying on a solicitation theory.  *Pinter*, 486 U.S. at 651.

## V.   PLAINTIFFS' UNREGISTERED BROKER-DEALER AND UNREGISTERED EXCHANGE CLAIMS FAIL

Plaintiffs' Section 29(b) claims predicated on Sections 5 and 15 of the Exchange Act fail for the reasons articulated by Uniswap Labs and Adams (Labs Br. at 9-13), and they are patently meritless with respect to the VC Defendants.  The Section 29(b) allegations focus on alleged conduct by Labs.  (AC ¶¶ 711, 718, 720, 722.)  Plaintiffs cannot plead that the VC Defendants

operated as unregistered brokers, dealers, or securities exchanges simply by naming "the Owners" as an afterthought.  And Plaintiffs fail to identify a contract between any Plaintiff and any VC Defendant, let alone a contract that, if performed, requires an illegal act.  *Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, 2019 WL 1368570, at *13 (S.D.N.Y. Mar. 26, 2019).  Nor can Plaintiffs fall back on their liquidity provider allegations for the reasons discussed above (*supra* 9-12).[6]

## VI.   THE COMPLAINT FAILS TO STATE A CLAIM FOR CONTROL PERSON LIABILITY

Plaintiffs also cannot avoid dismissal of their control person claims.[7]  To state such a claim, Plaintiffs must allege facts showing "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).  As explained above and in Uniswap Labs' motion to dismiss (Labs Br. at 9-14), Plaintiffs have not pled any primary violation.  This alone warrants dismissal. *See Bratusov*, 2020 WL 3447989, at *15.  Additionally, Plaintiffs fail to adequately allege the remaining two elements—control of Uniswap Labs or culpable participation.

### A.    Plaintiffs Fail to Adequately Allege Control

To plead control, Plaintiffs must allege that *each* VC Defendant (1) had control over the primary violator *and* (2) actually exercised such control with respect to the conduct or transaction at issue.  *Grupo Verzatec S.A. de C.V. v. RFE Inv. Partners*, 2019 WL 1437617, at *6 (S.D.N.Y.

---

[6]    As explained by Uniswap Labs and Adams, Plaintiffs' federal claims are also time-barred with respect to most of the Tokens.  (*See* Labs Br. at 13-14.)

[7]    Plaintiffs allege control person claims under the Exchange Act (Count 3) and the Securities Act (Count 5).  Courts generally have construed control person liability the same under both statutes.  *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011); (*see infra* n.13).

Mar. 29, 2019); *In re Glob. Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, at *11 (S.D.N.Y. Aug. 8, 2005).  The AC does neither.

(1)     *Plaintiffs Fail to Allege That Any VC Defendant Had the Power to Control Uniswap Labs*

First, Plaintiffs offer no support for their bare assertion that the VC Defendants controlled Uniswap Labs.  Plaintiffs improperly group the VC Defendants together as if they were a single actor.  But each of the VC Defendants is an independent entity and its alleged control must be evaluated on an individual basis.  *See, e.g., In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 740-41 (S.D.N.Y. 2015) (evaluating control person liability as to each defendant).  Plaintiffs do not, as they must, allege facts showing that any (or all of) the VC Defendants possessed "'the power to direct or cause the direction of the management and policies of [Uniswap Labs], whether through the ownership of voting securities, by contract, or otherwise.'"  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 486 (S.D.N.Y. 2005) (citation omitted); *see also Friedman v. JPMorgan Chase & Co.*, 2016 WL 2903273, at *11 (S.D.N.Y. May 18, 2016) (rejecting allegations that "do not point to any of the typical indicia of control"), *aff'd*, 689 F. App'x 39 (2d Cir. 2017).  Importantly, Plaintiffs must allege that ***each*** VC Defendant had "'the practical ability to ***direct*** the actions of [Uniswap Labs],'" and "'not the mere ability to ***persuade***,'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458 (S.D.N.Y. 2005) (second emphasis added) (citation omitted), and courts routinely dismiss claims that, like here, are based on mere "'[c]onclusory allegations of control.'"  *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012) (alteration in original) (quoting *In re Glob. Crossing,* 2005 WL 1907005, at *12).[8]

---

[8]     *See also, e.g.*, *Grupo*, 2019 WL 1437617, at *8; *Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, 2018 WL 1627266, at *20 (S.D.N.Y. Mar. 30, 2018); *Kuhns v.*

Although the AC refers generically to the VC Defendants' status as investors in Uniswap Labs (*see, e.g.*, AC ¶¶ 100, 102, 727, 742), these bare allegations alone "do not create power to direct management and policies, and thus do not constitute sufficient control." *In re Alstom*, 406 F. Supp. 2d at 492; *In re Glob. Crossing,* 2005 WL 1907005, at *12 (dismissing control person claims because defendant's "status as a minority shareholder [is] [in]sufficient 'by itself to infer control'" (citation omitted)); *Kuhns*, 202 F. Supp. 3d at 440-41 (rejecting control person claims against large shareholder who could exercise "considerable sway" over primary violator).[9] Indeed, even where investors are alleged to exert "substantial influence," that "is not the same as actual control." *In re BioScrip,*, 95 F. Supp. 3d at 740; *see also Yi v. GTV Media Grp. Inc*., 2021 WL 2535528, at *4 (S.D.N.Y. June 18, 2021) (rejecting allegations that defendant "conceived of and incorporated [the primary violator], was the primary spokesman and solicitor of investors, and claimed responsibility for raising large sums of money"). To the contrary, Plaintiffs readily admit that their allegations provide no indication of "what each of [the VC Defendants] did specifically (or continue to do)" as Uniswap Labs investors. (AC ¶ 106.)

---

*Ledger*, 202 F. Supp. 3d 433, 440-41 (S.D.N.Y. 2016); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 578 (S.D.N.Y. 2012).

[9]     *See also In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 263-64 (S.D.N.Y. 2020) (finding control person liability insufficiently alleged despite defendant's 46% ownership stake); *Silsby v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014) (rejecting control person claims based on defendant's status as 14.8% stock-owner and employment of two directors at separate enterprise), *aff'd*, 616 F. App'x 448 (2d Cir. 2015); *In re Deutsche Telekom AG Sec. Litig*., 2002 WL 244597, at *1, *6-8 (S.D.N.Y. Feb. 20, 2002) (dismissing control claims based on allegations that defendant was a control person "by virtue of 'its [22%] stock ownership of [the primary violator] and/or [defendant's] participation in [the primary violator's] operations'"); *Sloane Overseas Fund v. Sapiens Int'l Corp.*, 941 F. Supp. 1369, 1379 (S.D.N.Y. 1996) (dismissing Section 20(a) claims against investing corporation where it was a founder, creditor, and minority shareholder of the primary violator because those facts did not show that it had the power to direct the activities of primary violator).

Plaintiffs' allegation that the VC Defendants hold an untold quantum of UNI tokens (*e.g.*, AC ¶¶ 101, 129, 132, 134-35) is similarly unavailing.  The AC contains no facts to support Plaintiffs' conclusory assertion that by virtue of holding tokens that confer voting rights on select issues related to governance of the Uniswap Protocol, the VC Defendants have control over the Protocol.  *See supra* at 6-7.  Nor do Plaintiffs offer any explanation of how holding tokens would allow the VC Defendants to direct the actions of Uniswap Labs.  In fact, Plaintiffs do not allege how many UNI tokens each VC Defendant holds, let alone how holding such tokens is connected to any of the alleged violations in this case.[10]  Instead, Plaintiffs lump the VC Defendants together, speculating that they "are each ***likely*** top 10 holders of UNI tokens." (AC ¶ 135 (emphasis added).) Such unsupported speculation, even if credited, fails to establish control over Uniswap Labs. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("[L]umping all the defendants together in each claim and providing no factual basis to distinguish their conduct . . . fail[s] to satisfy [Rule 8's] minimum standard."); *Hao Zhe Wang*, 2020 WL 5982882, at *2 (same).[11]

Plaintiffs also vaguely assert that the VC Defendants were "value additive," such as by "[a]dvising" and "making introductions." (AC ¶ 104.)  But mere allegations of "advice, feedback, and guidance fail to raise a reasonable inference that [defendants] ha[ve] the power to ***direct***, rather than merely inform, the [primary violators'] ultimate . . . decisions." *In re Lehman Bros.*, 650 F.3d

---

[10]     While Plaintiffs allege that "Andreessen holds at least 15 million votes in connection with the governance, amounting to over 6% of 'vote weight'" (AC ¶ 138), this hardly constitutes a majority and fails to explain how Andreessen could "direct" Uniswap Labs' management.

[11]     Although some courts have permitted "group pleading" in limited circumstances to attribute corporate statements to a group of insider individuals, that principle does not apply here, where the allegations are leveled against separate and distinct VC Defendants.  In this case, Plaintiffs must "set forth separately the acts complained of by each defendant." *Regnante v. Sec. & Exch. Offs.*, 134 F. Supp. 3d 749, 771 & n.15 (S.D.N.Y. 2015) (Failla, J.); *Castillo v. Dean Witter Discover & Co.*, 1998 WL 342050, at *12 (S.D.N.Y. June 25, 1998) (group pleading doctrine does not apply in cases that do "not involve corporate insiders but involves separate corporate defendants").

at 187-88; *In re BioScrip, Inc.*, 95 F. Supp. 3d at 740-41 (dismissing control claims against private equity firm that held 26% of alleged violator's stock, had right to designate two directors, and was described as the "largest shareholder" that exercised "substantial influence").  Indeed, a review of the full Twitter thread that Plaintiffs selectively quote from and rely upon for this allegation (AC ¶ 104) belies any suggestion that any of the VC Defendants exercised control over Uniswap Labs. *See supra* at 4.

The decision in *In re Flag Telecom Holdings, Ltd. Securities Litigation* is instructive. There, the court dismissed a claim that Verizon controlled Flag Telecom ("Flag") despite allegations that (1) Verizon owned 30% of Flag's stock, making it Flag's largest stockholder; (2) Verizon could appoint three of Flag's nine directors; (3) Flag was "'instructed'" by Verizon to purchase capacity for resale to Verizon; and (4) Flag was "'strong-armed into booking capacity with Verizon . . . that [it] didn't need and Verizon never provided.'"  352 F. Supp. 2d at 457-58. Concluding that "[t]hese allegations do not demonstrate that Verizon possessed 'the power to direct or cause the direction of the management and policies' of Flag," the court distinguished the "powers of persuasion" from "actual control," emphasizing that just because "a party '*affected* [a primary violator's actions] does not mean . . . that it *directed* those actions.'"  *Id.* at 458-59 (citations omitted).  The same reasoning applies here and underscores the inadequacy of Plaintiffs' control person claims.

Plaintiffs' remaining allegations (*see, e.g.*, AC ¶¶ 727-28, 742-43, 769, 791), which "[s]imply reiterat[e] the definition of control, without facts demonstrating whether this definition has been met, [are] insufficient" and thus fail to state a claim.  *Yi*, 2021 WL 2535528, at *4.

(2)     *Plaintiffs Fail to Allege That Any VC Defendant Exercised Actual Control Over Uniswap Labs' Purported Securities Violations*

Even if Plaintiffs had alleged that any VC Defendant had the ability to control Uniswap Labs (and they do not), their control person claims fail because the AC is devoid of facts that any VC Defendant "'exercised actual control over the matters at issue.'"  *DoubleLine Cap. LP v. Odebrecht Fin., Ltd*., 323 F. Supp. 3d 393, 460 (S.D.N.Y. 2018) (citation omitted).  Plaintiffs allege that Uniswap Labs operated as an unregistered "exchange" or "broker-dealer" (AC ¶ 729) and purportedly sold the Tokens at issue as "unregistered securities" (*id.* ¶¶ 5, 732-38).  But Plaintiffs do not allege anywhere in their 166-page AC that any VC Defendant ***actually exercised*** any ability to control or direct this alleged conduct.  *See Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 525 (S.D.N.Y. 2016) (finding control person allegations insufficient where plaintiff did not allege that defendants exercised actual control over the matters at issue); *Ark. Teacher Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) (dismissing control person claim where plaintiffs failed to allege "particularized facts suggesting that the [defendants] had control over the alleged misrepresentations at issue"); *In re Smith Barney*, 884 F. Supp. 2d at 166-67 (rejecting control person claims that focused "exclusively on Jones's 'control person status' rather than Jones's exercise of 'actual control over the matters at issue'").

While Plaintiffs allege generally that certain of the VC Defendants advised Uniswap Labs, wrote smart contracts and white papers, or contributed to previous versions of the Protocol (AC ¶¶ 103, 104, 109, 111), they do not allege how these activities gave rise to Uniswap Labs' alleged violations.  Critically, Plaintiffs do not plead that the VC Defendants engaged in any activities that would have allowed any VC Defendant to direct whether Uniswap Labs registered as an "exchange" or "broker-dealer," or which tokens would be transacted on the Protocol.  This is a significant omission because the Protocol is used to transact in tokens that are ***not*** alleged to be

19

securities (and thus do not form the basis of any claims against Uniswap Labs).  (*See, e.g.*, *id.*
¶¶ 69, 82, 170.); *see also supra* at 14 (explaining that Plaintiffs fail to plead existence of a contract

that requires an illegal act).  Accordingly, Plaintiffs fail to allege that any VC Defendant actually

controlled Uniswap Labs in connection with any supposed violations.  *See Youngers*, 195 F. Supp.

3d at 525 ("Plaintiffs' allegation that Virtus Advisers . . . caused Virtus Trust to adopt the

AlphaSector strategy adds nothing because 'the matter[] at issue' is the misstatements contained

in the registration statement and marketing documents, not the adoption of the AlphaSector

strategy." (alteration in original)); *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 646

(S.D.N.Y. 2004) ("Participation, even significant participation, in [the primary violator's] scheme

to defraud is not equivalent to directing [the primary violator] to engage in that scheme.").

     Plaintiffs again point to the VC Defendants' holdings of UNI tokens (*e.g.*, AC ¶¶ 90, 93,

101, 124, 134, 138), but they do not allege that any VC Defendant actually exercised any voting

rights related to UNI tokens, let alone connect that voting power in any way to any supposed

securities law violations.  *See In re Smith Barney*, 884 F. Supp. 2d at 166-67.[12]  Rather, Plaintiffs

admit that the Uniswap Protocol's smart contracts are "self-executing, self-enforcing" code (AC

¶ 42); as such, they could not be changed by anyone, including the VC Defendants.  Thus, the VC

Defendants' possession of UNI Tokens does not allow them to decide who creates liquidity pools

or which assets they contain.

     To the extent Plaintiffs seek to rely on their conclusory, "information and belief"

allegations that the VC Defendants acted as "liquidity providers" on the Protocol (*e.g.,* AC ¶¶ 93,

101, 171, 173), such an argument would be unavailing for the reasons discussed above (*supra* 9-

---

[12]    Tellingly, Plaintiffs point to no meaningful vote that bears on their claims against the VC
Defendants.

12).  *See In re Refco Sec. Litig.,* 503 F. Supp. 2d 611, 629 (S.D.N.Y. 2007) (rejecting allegations "'upon information and belief'" that the underwriter defendants "'participated in the preparation of the Bond Registration Statement'"); *see also Ho*, 887 F. Supp. 2d at 578.

Finally, Plaintiffs' generic claim that the VC Defendants were "intimately involved with the operations of Uniswap [Labs]" (AC ¶ 103) is insufficient, since "generalized allegations do not establish [an entity's] control of any specific transaction."  *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 96 F. Supp. 3d 325, 345 n.16 (S.D.N.Y. 2015).  Accordingly, it should be rejected.

### B.   Plaintiffs Fail to Allege Particularized Facts Raising a Strong Inference That the VC Defendants were "Culpable Participants"

Although the Court need not reach the issue, Plaintiffs' control person claims can be dismissed for the additional reason that the AC does not contain particularized facts showing "culpable participation" by any VC Defendant in Uniswap Labs' alleged violations.[13]  *See Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973).  This element requires Plaintiffs to plead "'at a minimum particularized facts establishing a controlling person's conscious misbehavior or recklessness in the sense required by Section 10(b).'"  *Youngers*, 195 F. Supp. 3d at 524 (citation omitted).  "[C]onscious recklessness" refers to "a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*."  *S. Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (citation omitted).  Because pleading culpable participation is

---

[13]   Courts in this Circuit hold that culpable participation is an element under Section 20(a) of the Exchange Act, but are split on whether it is an element under Section 15 of the Securities Act. *In re Lehman Bros.*, 650 F.3d at 186.  The better-reasoned decisions find that culpable conduct must be alleged. *See, e.g.*, *Pub. Emps' Ret. Sys. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010); *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 493-94 (S.D.N.Y. 2006); *In re Am. Realty Cap. Props., Inc.*, 2015 WL 6869337, at *4 (S.D.N.Y. Nov. 6, 2015).

subject to the PSLRA's heightened pleading requirements, "[a] complaint that does not contain 'detailed allegations regarding the state of mind of the "control person"' must be dismissed." *In re Glob. Crossing*, 2005 WL 1907005, at *12 (citation omitted); *see also Pollio v. MF Glob. Ltd.*, 608 F. Supp. 2d 564, 572 n.4 (S.D.N.Y. 2009).

Plaintiffs' AC falls far short of this standard.  First, the AC relies on "group pleading" that impermissibly lumps the VC Defendants together without any attempt at differentiation.  (*E.g.*, AC ¶¶ 3, 62, 90, 194.)  *See Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *11 n.6 (S.D.N.Y. Mar. 10, 2017) (Failla, J.) ("'[S]cienter is not amenable to group pleading.'" (citation omitted)), *aff'd*, 710 F. App'x 471 (2d Cir. 2017); *see also CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*, 2010 WL 4177103, at *10 (S.D.N.Y. Oct. 7, 2010).

Second, the AC rests on conclusory allegations of awareness of third parties' (*i.e.*, token issuers') alleged fraud.  (*E.g.*, AC ¶¶ 3, 62, 90, 194.)  This fails to allege any VC Defendant's culpable participation.  *See, e.g., In re Sotheby's Holdings, Inc.,* 2000 WL 1234601, at *7-8 (S.D.N.Y. Aug. 31, 2000) (dismissing control person claims based on "boilerplate allegations that defendants knew or should have known" of the fraud).  Nor can Plaintiffs rely upon allegations made "upon information and belief" (*e.g.*, AC ¶¶ 93, 101, 171) to adequately allege culpable participation. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).[14]

Finally, Plaintiffs' unsupported theory does not give rise to a strong inference of fraudulent intent that is as compelling as competing inferences—including, for example, that the VC Defendants were investors in Uniswap Labs with no knowledge that any specific Token transacted on the Protocol was an "unregistered security" or that the Token issuers had engaged in supposedly

---

[14]     Indeed, because any user may become a liquidity provider for any pool without action by Uniswap Labs or the VC Defendants, Plaintiffs' conclusory allegations in no way suggest that the VC Defendants would have been aware of the Tokens at issue.  (AC ¶ 89.)

fraudulent conduct.  *See S. Cherry St.,* 573 F.3d at 111-14 (affirming dismissal of 10(b) claims where the inferences of conscious recklessness were not as compelling as inference of non-fraudulent intent or negligence).  Given these myriad deficiencies, Plaintiffs' control person claims should be dismissed.

## VII.    PLAINTIFFS' STATE-LAW CLAIMS FAIL

Plaintiffs' remaining state and common-law claims fail for the reasons articulated by Uniswap Labs and Adams.  (Labs Br. at 16-19.)  To avoid repetition, the VC Defendants adopt and incorporate by reference those arguments herein.

## VIII.   CONCLUSION

Plaintiff have already amended their pleading once and declined an opportunity to amend a second time at the November 9, 2022 pre-motion conference.  That decision followed the parties' exchange of pre-motion letters concerning deficiencies of the AC and an extensive discussion of those deficiencies during the pre-motion conference.  Accordingly, for the foregoing reasons and those stated in the motion to dismiss filed by Defendants Uniswap Labs and Adams, the VC Defendants respectfully request that the Court dismiss the AC with prejudice.

Dated:  New York, New York       Respectfully submitted,
        December 21, 2022

LATHAM & WATKINS LLP       SKADDEN, ARPS, SLATE,
        MEAGHER & FLOM LLP

By:  s/ Susan E. Engel
Susan E. Engel       By:  s/ Alexander C. Drylewski
(susan.engel@lw.com)     Alexander C. Drylewski
555 Eleventh Street, NW, Suite 1000  (alexander.drylewski@skadden.com)
Washington, D.C. 20004-1304   Tansy Woan
Telephone: (212) 637-2200    (tansy.woan@skadden.com)
        One Manhattan West
Benjamin A. Naftalis     New York, New York 10001-8603
(Benjamin.naftalis@lw.com)   Telephone: (212) 735-2129
Douglas K. Yatter
(douglas.yatter@lw.com)    *Attorneys for Defendant Paradigm*
Julia R. Miller (admitted *pro hac vice*) *Operations LP*
(julia.miller@lw.com)
Peter Trombly (admitted *pro hac vice*)
(peter.trombly@lw.com)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200

*Attorneys for Defendant AH Capital*
*Management, L.L.C.*

DEBEVOISE & PLIMPTON LLP

By:  s/ Elliot Greenfield
Elliot Greenfield
(egreenfield@debevoise.com)
Maeve L. O'Connor
(moconnor@debevoise.com)
Brandon Fetzer
(bfetzer@debevoise.com)
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000

*Attorneys for Defendant Union Square*
*Ventures, LLC*