UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NESSA RISLEY, JAMES FREELAND, ROBERT SCOTT, ANNIE VENESKY, ANDREW CARDIS, and DEAN MEYERS, individually and on behalf of all others similarly situated,

        Plaintiffs,

-against-

UNIVERSAL NAVIGATION INC. dba UNISWAP LABS, UNISWAP FOUNDATION, HAYDEN Z. ADAMS, PARADIGM OPERATIONS LP, AH CAPITAL MANAGEMENT, L.L.C. dba ANDREESSEN HOROWITZ, and UNION SQUARE VENTURES, LLC.,

        Defendants.

Case No.1:22-cv-2780-KPF

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNISWAP FOUNDATION'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Jason Gottlieb
Michael Mix
Vani Upadhyaya
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
Telephone: (212) 735-8600
Facsimile: (212) 735-8708

*Attorneys for Defendant Uniswap Foundation*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 2

ARGUMENT .................................................................................................................................. 4

I. PLAINTIFFS DO NOT STATE ANY CLAIM AGAINST ANY DEFENDANT ............ 5

II. PLAINTIFFS DO NOT SUFFICIENTLY ALLEGE THAT THE FOUNDATION IS THE ALTER EGO OF LABS ........................................................................................... 5

    A.    There Are No Allegations that the Foundation and Labs Acted as One Entity ...... 7

    B.    There Are No Allegations that Labs Used the Foundation for Any Improper Purpose ................................................................................................................. 12

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.V.E.L.A., Inc. v. The Est. of Marilyn Monroe, LLC*,
  12 Civ. 4828 (KPF), 2018 U.S. Dist. LEXIS 35536 (S.D.N.Y. Mar. 5, 2018) .................10, 13

*Cohen v. Schroeder*,
  724 F. App'x 45 (2d Cir. 2018) ..................................................................................6, 7

*Costabile v. N.Y.C Health & Hosps. Corp.*,
  951 F.3d 77 (2d Cir. 2020)............................................................................................5

*Dane v. UnitedHealthcare Ins. Co.*,
  974 F.3d 183 (2d Cir. 2020)..........................................................................................5

*DG BF, LLC v. Ray*,
  No. 2020-0459-MTZ, 2021 WL 776742 (Del. Ch. Mar. 1, 2021)..........................................12

*Doberstein v. G-P Indus., Inc.*,
  No. 9995-VCP, 2015 WL 6606484 (Del. Ch. Oct. 30, 2015) ................................................13

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
  No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512 (E.D.N.Y. Aug. 29,
  2013) ...................................................................................................................13

*Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995).............................................................................................9

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
  8 F.3d 130 (2d Cir. 1993)..............................................................................................6

*Kirschner v. CIHLP LLC*,
  No. 15-CV-8189(RA), 2017 U.S. Dist. LEXIS 162719 (S.D.N.Y. Sept. 30,
  2017) ............................................................................................................10, 12

*Maloney-Refaie v. Bridge at Sch., Inc.*,
  958 A.2d 871 (Del. Ch. 2008)....................................................................................8, 9

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
  861 F.Supp.2d 344 (S.D.N.Y. 2012).................................................................................7

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
  975 F.Supp.2d 392 (S.D.N.Y. 2013).....................................................................6, 11, 12

*Nieves v. Insight Bldg. Co., LLC*,
  No. 2019-0464-SG, 2020 WL 4463425 (Del. Ch. Aug. 4, 2020)...........................................10

*Paul Elton, LLC v. Rommel Del., LLC*,
 No. 2019-0759, 2020 WL 2203708 (Del. Ch. May 7, 2020)......................................................6

*Radiancy, Inc. v. Viatek Consumer Prods. Grp.*,
 No. 13-cv-3767 (NSR), 2014 U.S. Dist. LEXIS 42474 (S.D.N.Y. Mar. 28,
 2014) ..........................................................................................................................................7

*Trevino v. Merscorp, Inc.*,
 583 F. Supp. 2d 521 (D. Del. 2008)....................................................................................7, 13

*Tronox Inc. v. Anadarko Petroleum Corp.*,
 549 B.R. 21 (S.D.N.Y. 2016)....................................................................................................6

*Wallace v. Wood*,
 752 A.2d 1175 (Del. Ch. 1999).................................................................................................7

*Wilson v. Dantas*,
 746 F.3d 530 (2d Cir. 2014)..................................................................................................4, 5


**Statutes**

Federal Rules of Civil Procedure Rule 12(b)(6) .........................................................................1, 4


**Other Authorities**

Create the Uniswap Foundation, Uniswap Proposals,
 https://app.uniswap.org/#/vote/2/24?chain=mainnet (last visited December 21,
 2022) ..........................................................................................................................................3

*Introducing UNI*, Uniswap Protocol (Sept. 16, 2020), https://uniswap.org/blog/uni ......................9

Defendant Uniswap Foundation (the "Foundation") respectfully submits this memorandum of law in support of its motion (the "Motion"), under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the First Amended Complaint, dated September 27, 2022 (ECF No. 46, the "Complaint" or the "Compl."), filed by Plaintiffs Nessa Risley, James Freeland, Robert Scott, Annie Venesky, Andrew Cardis, and Dean Meyers (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs do not allege that the Foundation itself did a single thing to damage them, or anyone else. Plaintiffs have added the Foundation as a defendant in this lawsuit, even though Plaintiffs do not allege that the Foundation itself participated in any of the purported wrongdoing. Instead, Plaintiffs allege that the Foundation – a separate, registered non-stock Delaware corporation with its own officers, directors, corporate existence, and corporate mission – is an "alter ego" of co-Defendant Universal Navigation Inc. dba Uniswap Labs ("Labs").

But the Complaint does not meet the extremely high pleading burden to allege that the Foundation is an alter ego of Labs, or anyone else. Under applicable Delaware law, establishing liability under an "alter ego" theory requires a plaintiff to plead facts that the two entities are acting as one, and that one entity was formed as a sham for the purpose of fraud. Plaintiffs have not come close to meeting this standard.

The Complaint generally alleges various violations of federal and state securities laws, as well as common law torts, concerning the "Uniswap Protocol." Those allegations don't hold water, and the Foundation adopts and incorporates the motions to dismiss by Labs (the "Labs Motion") and by the "VC Defendants" (the "VC Motion"), which explain in detail why Plaintiffs' fourteen causes of action fail to state a claim against anyone at all. For brevity, we will not repeat those arguments here.

Instead, we focus on what the Complaint does <u>not</u> allege about the Foundation. The Complaint does not allege that the Foundation (or Labs) was undercapitalized or insolvent. The Complaint does not allege that the Foundation failed to observe corporate formalities, or failed at any of the other ways that a corporation can maintain its separate existence. Plaintiffs do not allege facts suggesting that the personnel of the Foundation are under anyone's control. The Complaint does not allege any of the other touchstones of the Foundation and Labs being a "single entity" under Delaware law. Plaintiffs also have not alleged that the Foundation was formed as a vehicle for fraud. The Complaint affirmatively recites the Foundation's stated, fully-legitimate purpose, which is separate from anything Labs does, and observes that the Foundation has separate officers and directors. Indeed, the Complaint itself points out that the Foundation was only created in mid-2022, well after the occurrence of the vast majority of the facts alleged in the Complaint.

In sum, Plaintiffs have not met, and cannot meet, the high bar to plead that the Foundation is the alter ego of Labs. The Foundation should be dismissed from this case.

## STATEMENT OF FACTS

The Foundation incorporates by reference the fact sections contained in the Labs Motion and the VC Motion. To ease the Court's burden, the Foundation does not repeat all of those facts here. Instead, the Foundation sets forth only alleged facts related to the Foundation, as well as Plaintiffs' "alter ego" claim.

Plaintiffs allege that "Given their overlapping control and common purpose, the Uniswap Foundation is an alter ego of Uniswap." Compl. ¶ 20. To buttress those *ipse dixit* legal conclusions, the Complaint alleges that the Foundation was created in Delaware on June 30, 2022, *Id*. ¶ 158, as a membership corporation with no authority to issue capital stock. *Id*. ¶ 166. The members of the Foundation consist of the Foundation's directors, *Id*. ¶ 166, including one

2

individual who previously worked at Labs, and another who was previously the "Lead of the Uniswap Grants Program." *Id.* ¶¶ 159, 165.

Plaintiffs allege that "Uniswap's then chief of staff, Devin Walsh, submitted a Governance proposal to 'Create the Uniswap Foundation' . . . even though, according to the Secretary of State of Delaware, the company was already formed on June 30, 2022." *Id*. ¶ 159. "On August 17, 2022, Ms. Walsh signed the Amended UF Certificate as "Executive Director" of the Uniswap Foundation." *Id*. ¶ 160.

A Uniswap Protocol governance proposal was submitted to "Create the Uniswap Foundation." *Id.* ¶ 159; *see also* Create the Uniswap Foundation, Uniswap Proposals, https://app.uniswap.org/#/vote/2/24?chain=mainnet (last visited December 21, 2022) (the "Foundation Proposal"). The Foundation Proposal makes explicitly clear that the Foundation "is an independent entity" from Labs and "will build its own lean team," whereas Labs "is one of many organizations in the Uniswap ecosystem. [Labs] built, deployed, and, alongside many other teams, will continue to contribute to and build on the Protocol in the future."

As Plaintiffs allege, the Foundation Proposal also states that the Foundation's "mission" was to "support the decentralized growth and sustainability of the Uniswap Protocol and its supporting ecosystem and community." Compl. ¶ 163. It further states that the "Uniswap Foundation (UF) will provide grants to builders, researchers, organizers, academics, analysts, and more to grow the Protocol and plan for its future." *Id*. ¶ 162. As part of the Foundation Proposal, the Foundation requested $74 million in UNI tokens, $54 million of which would be used for a grants program and $20 million for an operating budget. *Id*. ¶ 167. Additionally, the Foundation Proposal called for the ability "to grant v3 BSL license exemptions, to maintain the governance forum, Sybil.org, and Protocol-related developer docs, and to help facilitate protocol development

3

across many teams. Labs has given their blessing to this preliminary **proposal for asset transition**." *Id*. ¶ 164 (emphasis added by Plaintiffs).

Plaintiffs allege that the proposed Foundation board members (Devin Walsh and Ken Ng) had prior roles with entities in the Uniswap ecosystem: Ms. Walsh, formerly at Uniswap Labs, and Mr. Ng, formerly with a separate entity called the "Uniswap Grants Program." *Id*. ¶¶ 159, 165. Plaintiffs do not allege that either Ms. Walsh or Mr. Ng were "overlapping" in their roles, or that they are presently anything other than board members and officers of the Foundation.

Plaintiffs allege that the "UF Proposal passed with 86.3 million votes in favor, and such votes were overwhelmingly cast by 10 wallets." *Id*. ¶ 161. Plaintiffs allege that "Defendants raided $74 million from Uniswap's treasury of unallocated UNI tokens in order to create a separate spin off company," *Id*. ¶ 168, even though Plaintiffs also make clear that only $20 million of funds were granted (with an additional $54 million subject to a separate, later vote by the community in six to twelve months). *Id*. ¶ 167.

Finally, Plaintiffs allege that the Foundation was "run by individuals under their influence and/or control," *Id*. ¶ 168, although there are no facts alleged substantiating that Ms. Walsh or Mr. Ng are under anyone's influence or control, much less that of Defendant Labs, to whom Plaintiffs are referring to in this accusation.

## ARGUMENT

"To survive a rule 12(b)(6) motion to dismiss, the complaint must include enough facts to state a claim to relief that is plausible on its face." *Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014) (citation and quotation marks omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "Although all allegations contained in the complaint are assumed to be true, this tenet is inapplicable to legal conclusions." *Id.* (citation

4

and quotation marks omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020) (citation omitted).  Although the court is "obligated to draw the most favorable inferences that plaintiff's complaint supports, [the court] cannot invent factual allegations that he has not pled." *Costabile v. N.Y.C Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020) (citation omitted).

I. **PLAINTIFFS DO NOT STATE ANY CLAIM AGAINST ANY DEFENDANT**

The Labs Motion and the VC Motion explain in great detail why the Complaint's fourteen causes of action fail to state a claim against any Defendant.  The Foundation adopts and incorporates by reference those motions and the arguments therein.

II. **PLAINTIFFS DO NOT SUFFICIENTLY ALLEGE THAT THE FOUNDATION IS THE ALTER EGO OF LABS**

In addition to the reasons set forth in the Labs Motion and the VC Motion, the Foundation should be dismissed because there are no allegations of any wrongdoing by the Foundation.

The Complaint contains no allegations that the Foundation ever owned or operated the Uniswap Protocol, sold any UNI tokens to Plaintiffs (or anyone else), collected any user fees, or did literally anything else alleged in the Complaint to be unlawful.  In fact, as Plaintiffs concede, the Foundation did not even exist until June 30, 2022, Compl. ¶ 158, years after the Uniswap Protocol was launched, Compl. ¶ 151, and after the vast majority of the activity recited in the Complaint occurred.

Instead, the Complaint's sole basis for naming the Foundation is the assertion that the Foundation is the "alter ego" of Labs and thus "shares liability" with Labs for each cause of action.  Compl. ¶¶ 20, 714, 724, 740, 755, 764, 779, 786, 801, 808, 814.  Plaintiffs have not come close to

meeting the high bar to plead that the Foundation is an "alter ego" of Labs such that any allegations against Labs could be imputed to the Foundation.

Because, as Plaintiffs allege, both the Foundation and Labs are Delaware entities, Compl. ¶¶ 19-20, Delaware law determines whether the actions of Labs can be imputed to the Foundation. *See Cohen v. Schroeder*, 724 F. App'x 45, 47 (2d Cir. 2018); *see also Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("The law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders."). Delaware law uses the terms "alter ego" and "veil piercing" interchangeably. *Tronox Inc. v. Anadarko Petroleum Corp.*, 549 B.R. 21, 44 (S.D.N.Y. 2016).

"Delaware public policy disfavors disregarding the separate legal existence of business entities." *Paul Elton, LLC v. Rommel Del., LLC*, No. 2019-0759 (KSJM), 2020 WL 2203708, at *14 (Del. Ch. May 7, 2020); *see also Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F.Supp.2d 392, 402 (S.D.N.Y. 2013) ("Delaware courts especially take the corporate form very seriously and will disregard it only in the exceptional case.") (citations omitted). Piercing the corporate veil is thus a "difficult task" under Delaware law. *Cohen*, 724 F. App'x at 47 (citations omitted).

The Second Circuit has explained that under Delaware law, the "plaintiff must demonstrate that the corporation and the owner operated as a single economic entity such that it would be inequitable to uphold a legal distinction between them." *Id.* (citations, quotation marks, and ellipses omitted). To do so, a plaintiff "must show *both* that (1) the owner and his corporation operated as a single economic entity and that (2) the owner's actions contained an overall element of injustice or unfairness." *Id.* (citations and quotation marks omitted, emphasis in original). "[M]ere ownership or direction of a corporate entity, without more, is not sufficient to establish

6

that the corporate form should be disregarded. The plaintiff must also show some fraud, injustice, or inequity in the use of the corporate form." *Id.* (citations and quotation marks omitted).

The Complaint both fails to sufficiently plead that the Foundation and Labs acted as a single economic entity, and that there was an overall element of injustice or unfairness in the formation of the Foundation.

### A. There Are No Allegations that the Foundation and Labs Acted as One Entity

The "degree of control required to pierce the veil is exclusive domination and control to … the point where the [pierced entity] no longer has legal or independent significance of its own." *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) (quotation marks and brackets omitted). Factors considered by courts in order to determine whether or not the two companies in question are acting as a single entity include:

> (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) the absence of corporate records; and (7) the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.

*Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528-29 (D. Del. 2008). "While no single factor justifies a decision to disregard the corporate entity, some combination of the above is required." *Id.* at 529. These factors "apply in Delaware regardless of whether the cause of action is based on federal or state law." *Radiancy, Inc. v. Viatek Consumer Prods. Grp.*, No. 13-cv-3767 (NSR), 2014 U.S. Dist. LEXIS 42474, *15 n.4 (S.D.N.Y. Mar. 28, 2014) (citation omitted).

Plaintiffs have failed to meet this extremely high bar. Indeed, Plaintiffs plead literally none of the many factors listed above. *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F.Supp.2d 344, 376 (S.D.N.Y. 2012) ("Plaintiff does not allege a single fact that addresses these factors, thus mortally wounding its claims against [defendant]."). There is no allegation of

7

undercapitalization or insolvency at either entity. There is no allegation that the Foundation failed to observe corporate formalities. There is no allegation of nonpayment of dividends (and the Foundation is a non-profit, in any event). There is no allegation of siphoning of the corporation's funds by the dominant stockholder – indeed, the Complaint alleges that the purportedly dominating party helped send money <u>away</u> from the Uniswap Protocol, <u>to</u> the Foundation, for whatever use the Foundation saw fit. There is no allegation of an absence of corporate records. And the Complaint's allegations that the Foundation is a façade for the operations of Labs are simply *ipse dixit*, with no facts alleged to actually support that legal conclusion.

The Foundation is not alleged to be a subsidiary of, or even an affiliate of, Labs. Plaintiffs affirmatively allege that the Foundation is a "membership corporation" without authority to issue capital stock, and with one class of members consisting of the Foundation's directors. Compl. ¶ 166. The lack of a parent/subsidiary or affiliate relationship, or common ownership, underscores the implausibility of Plaintiffs' argument that the Foundation and Labs are operating as a single economic entity.

For example, in *Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 881 (Del. Ch. 2008), plaintiff alleged that Bridge at School was an alter ego of a foundation, in part because (1) the foundation controlled Bridge at School because two members of Bridge at School's board of directors served as advisors to the foundation's board of trustees, and (2) Bridge at School was reliant upon the foundation's funds to operate. The court rejected both these arguments and dismissed the complaint, finding that the two entities have entirely separate boards, and plaintiff "has not alleged that the Foundation has any ownership interest in Bridge at School." *Id.* Further, Bridge at School's reliance on the foundation's funds did not mean the foundation controlled Bridge at School. The court noted, "At most, the Foundation can threaten to cease funding Bridge

8

at School if Bridge at School fails to comply with its wishes. Yet at the same time, Bridge at School can seek funding from other organizations." *Id.*

Similarly here, the Complaint asserts that $20 million of UNI tokens were transferred from the "Uniswap Treasury" – money that does not come from Labs, but from a treasury controlled by a dispersed collection of holders of UNI tokens[1] – to the Foundation, in order to fund operating expenses and to be disbursed. Compl. ¶ 167. The Complaint also notes that an additional $54 million is proposed to be granted later. *Id.* But there are no allegations that these amounts – even the full $74 million, let alone the $20 million that was actually transferred, left Labs undercapitalized or insolvent. Indeed, those funds did not belong to Labs to begin with, so the transfer did not affect Labs' financial condition at all.

Likewise, Plaintiffs point to a statement in the Foundation Proposal[2] that "Labs has given their blessing to this preliminary proposal for asset transition," and conclude that "Uniswap is giving away many of its assets to the Uniswap Foundation." Compl. ¶ 164. (Plaintiffs put "proposal for asset transition" in bold type, apparently to suggest that there is something nefarious about it.) The quoted paragraph of the Foundation Proposal makes clear that the "assets" in question are not even the financial assets that were transferred, but instead, rights that would enable the Foundation to perform various community-focused activities, such as the rights to "grant v3 BSL license exemptions, to maintain the governance forum, Sybil.org, and Protocol-related developer docs, and to help facilitate protocol development across many teams." *Id. See also*

---

[1]    *See Introducing UNI*, Uniswap Protocol (Sept. 16, 2020), https://uniswap.org/blog/uni (explaining that the Uniswap Treasury is community-managed). Because Plaintiffs explicitly reference and rely upon this specific page of the Uniswap Protocol website (Compl. ¶ 169), the Court may consider it on a motion to dismiss. *See, e.g., Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

[2]    Plaintiffs explicitly reference and rely upon the Foundation Proposal (Compl. ¶ 159), and as such the Court may consider it on a motion to dismiss. *See Int'l Audiotext Network*, 62 F.3d at 72.

Compl. ¶ 164 (quoting the Foundation Proposal).  Neither the Complaint nor the Foundation Proposal alleges that these assets transferred to the Foundation left Labs undercapitalized or insolvent, or were used in furtherance of any of the wrongdoing alleged in the Complaint.  The Complaint does not allege that any of these assets are being used for improper purposes, or that there is anything unlawful about granting license exemptions, maintaining the governance forum and developer documents, or helping to facilitate protocol development.

Plaintiffs also allege that one of the Foundation directors (Ms. Walsh) was, at one point, the Labs' chief of staff, and another director (Mr. Ng) was previously the "Lead of the Uniswap Grants Program."  Compl. ¶¶ 159, 165.  But "overlapping or identical personnel does not by itself warrant ignoring the corporate form."  *Nieves v. Insight Bldg. Co., LLC*, No. 2019-0464-SG, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020) (dismissing alter ego claims even though plaintiff alleged that parent company's principals conducted business for subsidiary).  And even so, "overlapping or identical personnel" has not even been pleaded here:  Ms. Walsh did not continue working at Labs after beginning work at the Foundation,[3] and Mr. Ng is not alleged to have ever worked at Labs.  *Cf. A.V.E.L.A., Inc. v. The Est. of Marilyn Monroe, LLC*, 12 Civ. 4828 (KPF), 2018 U.S. Dist. LEXIS 35536, at *16 (S.D.N.Y. Mar. 5, 2018) (dismissing counterclaims and finding that overlapping legal and finance departments, as well as a General Counsel and other officers and managers, are not sufficient to pierce the corporate veil under Delaware law); *Kirschner v. CIHLP LLC*, No. 15-CV-8189(RA), 2017 U.S. Dist. LEXIS 162719, at *16 (S.D.N.Y. Sept. 30, 2017) (dismissing claim and rejecting alter ego argument and explaining that under Delaware law, "Plaintiff's allegations of overlapping management, directors, and employees at

---

[3]   *See* Foundation Proposal (explaining that at the time of the Foundation Proposal, which Plaintiff allege was submitted on June 30, 2022, Compl. ¶ 159, Ms. Walsh had "recently resigned as Chief of Staff at Uniswap Labs in order to propose the creation of the [Foundation]").

10

Cantor entities is not sufficient to establish that these entities operated as a single economic entity"); *Nat'l Gear & Piston*, 975 F. Supp. 2d at 403-04 (dismissing alter ego claim under Delaware law despite "substantial degree of overlap" between management of two entities).

Plaintiffs' Pre-Motion Letter (ECF No. 60) points to the allegation that the Foundation Proposal was issued after the Foundation was officially formed as an entity in Delaware. Compl. ¶¶ 159-60. Plaintiffs make no attempt to tie this fact to the above factors indicating a "single economic entity." And contrary to Plaintiffs' implication that these actions were somehow improper or nefarious, the Foundation Proposal explicitly states that the Foundation was a "pre-existing Delaware corporation." This fact was not a secret to anyone. Moreover, creating the Foundation prior to the vote on the Proposal to fund the Foundation makes logical sense; otherwise there would be no entity to receive tokens once the proposal was approved. It is hardly surprising that the separate officers of the Foundation would create a separate entity, in order to advocate for separate funding, to carry out a separate agenda.

Similarly, the fact that the votes in favor of the public governance proposal passed with votes that "were overwhelmingly cast by 10 wallets," Compl. ¶ 161, does not support Plaintiffs' alter ego argument. The Complaint does not state the identity of the owners of the ten wallets, or if those wallets were even related to Labs. Even if the ten wallets were related to Labs in some way (which again, is not pleaded in the Complaint), such fact does not support any inference that Labs and the Foundation were a single economic entity. Indeed, the allegation that the Foundation vote was approved by ten <u>different</u> sources strongly undercuts the notion that the Foundation was under any one entity's dominion and control.

Finally, the very governance proposal cited in the Complaint makes clear that the Foundation and Labs are separate entities. In response to the question "What is [the Foundation's]

relationship with Uniswap Labs?", the Foundation Proposal states that the Foundation "is an independent entity" and "will build its own lean team," whereas Labs "is one of many organizations in the Uniswap ecosystem. It built, deployed, and, alongside many other teams, will continue to contribute to and build on the Protocol in the future." *See* Foundation Proposal.

Thus, in sum, both the allegations in the Complaint and the Foundation Proposal referenced in the Complaint make clear that the Foundation and Labs are two distinct entities. Plaintiffs have failed to meet the extremely high bar to show that the Foundation and Labs are a single economic entity. *See Nat'l Gear & Piston*, 975 F. Supp. 2d at 404 (finding that "allegations of mere shared management, shared corporate principles, or a parent's ownership and operation of a subsidiary" … "[did] not get Plaintiff over the high hurdle established by Delaware law.").

### B. There Are No Allegations that Labs Used the Foundation for Any Improper Purpose

Even if there were sufficient allegations that the Foundation and Labs were operating as a single entity, the Complaint does not sufficiently allege that Labs utilized the Foundation for any improper purpose (or vice versa). To satisfy this requirement, Plaintiffs must "plead facts showing that the corporation is a sham and exists for no other purpose than as a vehicle for fraud." *Kirschner*, 2017 U.S. Dist. LEXIS 162719 at *19. Courts routinely dismiss alter ego claims under Delaware law where the plaintiff has pleaded that the corporation was created for a legitimate purpose, or where there are no pleaded facts that the corporation was created as part of a sham. *See id.* at *19-20 ("Plaintiff does not plead any facts suggesting that the Cantor entities exist for no other purpose than as a vehicle for fraud. To the contrary, Plaintiff alleges that at least some of the entities were created for legitimate business purposes") (internal quotation marks omitted); *DG BF, LLC v. Ray*, No. 2020-0459-MTZ, 2021 WL 776742, at *27 (Del. Ch. Mar. 1, 2021) (dismissing alter ego claim where "[t]here are no allegations that support an inference that AGR

is a 'sham' or that it exists for no other purpose than as a vehicle for fraud. To the contrary, Plaintiffs describe AGR as a multi-million-dollar cannabis and CBD business.") (internal quotation marks omitted); *Trevino*, 583 F. Supp. 2d at 530 (dismissing causes of action, rejecting alter ego theory "[i]n light of Plaintiffs' concession that MERS was created for a legitimate purpose"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *6 (E.D.N.Y. Aug. 29, 2013) (dismissing allegations against certain defendant under Delaware law because Plaintiff's allegations of alter ego "are also deficient because they fail entirely to plead what justice or unfairness is present by the defendants' misuse of the corporate form"); *Doberstein v. G-P Indus., Inc.*, No. 9995-VCP, 2015 WL 6606484, at *5 (Del. Ch. Oct. 30, 2015) (dismissing claim for piercing the corporate veil where plaintiff "failed to allege that Greenplate utilized G-P as a sham entity to defraud her."); *A.V.E.L.A., Inc.*, 2018 U.S. Dist. LEXIS 35536 at *20 ("Counter-Plaintiffs have not adequately alleged, as they must do at this stage, that the corporation has committed an injustice beyond the harm caused to Counter-Plaintiffs. For these reasons, Counter-Plaintiffs have again fallen short of their obligation to plead adequately that the Monroe Estate is a sham and exists for no other purpose than as a vehicle for fraud.") (quotation marks and brackets omitted).

Here, by the very allegations of the Complaint itself, the Foundation was formed for a legitimate purpose, to "provide grants to builders, researchers, organizers, academics, analysts and more to grow the Protocol and plan its future." Compl. ¶ 162. Plaintiffs have adduced no facts illustrating that the Foundation was formed for a fraudulent purpose, or as a vehicle for committing fraud, let alone that it was formed for <u>no other purpose</u> than to commit fraud.

Indeed, Plaintiffs fail to allege that the Foundation did <u>anything</u>, other than exist. There are no allegations that the Foundation took part in any of the other purportedly wrongful activity

set forth in the Complaint. Accordingly, even if those allegations sustained a claim against any other defendant (which they do not), they have absolutely no relevance to the Foundation or the alter ego claims against it.

Plaintiffs have therefore failed to satisfy this prong, and have not sufficiently pleaded that the Foundation is the alter ego of Labs.

## **CONCLUSION**

For the foregoing reasons, the Foundation respectfully requests that the Court dismiss the Complaint in its entirety as against the Foundation, and grant such other and further relief as is just and proper.

Dated: New York, New York
      December 21, 2022           MORRISON COHEN LLP

                                      By: /s/ *Jason Gottlieb*
                                          Jason Gottlieb
                                          Michael Mix
                                          Vani Upadhyaya
                                          909 Third Avenue
                                          New York, New York 10022
                                          (212) 735-8600

                                *Attorneys for Defendant Uniswap Foundation*