UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NESSA RISLEY, JAMES FREELAND, ROBERT
SCOTT, ANNIE VENESKY, ANDREW CARDIS, and
DEAN MEYERS, Individually and on Behalf of All Others
Similarly Situated,

                         Plaintiffs,

      v.

UNIVERSAL NAVIGATION INC. d/b/a UNISWAP
LABS, UNISWAP FOUNDATION, HAYDEN Z.
ADAMS, PARADIGM OPERATIONS LP, AH CAPITAL
MANAGEMENT, L.L.C. d/b/a ANDREESSEN
HOROWITZ, and UNION SQUARE VENTURES, LLC,

                        Defendants.

---

Case No. 22 Civ. 2780 (KPF)

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF
UNIVERSAL NAVIGATION INC. (d/b/a UNISWAP LABS) AND HAYDEN Z. ADAMS**

---

Maeve L. O'Connor
Elliot Greenfield
Brandon Fetzer
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000

*Attorneys for Defendants Universal Navigation Inc.
(d/b/a Uniswap Labs) and Hayden Z. Adams*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 29(b) OF
      THE EXCHANGE ACT. ......................................................................................... 2

      A.    Plaintiffs Fail to Plead Contractual Privity with Labs. ........................... 3

      B.    Plaintiffs Fail to Identify a Contract That Violates the Exchange Act. ................. 5

II.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 12(a)(1) OF
      THE SECURITIES ACT. ......................................................................................... 5

III.  PLAINTIFFS' FEDERAL CLAIMS ARE TIME-BARRED WITH RESPECT
      TO MOST OF THE TOKENS. ............................................................................... 7

IV.   PLAINTIFFS FAIL TO STATE A FEDERAL SECURITIES CLAIM
      AGAINST MR. ADAMS. ......................................................................................... 8

V.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER STATE LAW ............................... 8

      A.    Plaintiffs Fail to State a Claim Under the Idaho or North Carolina
            State Securities Laws. .............................................................................. 8

      B.    Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud and
            Negligent Misrepresentation. .................................................................... 9

      C.    Plaintiffs Fail to State a Claim for Unjust Enrichment. ........................... 10

VI.   DISMISSAL SHOULD BE WITH PREJUDICE. ......................................................... 10

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012)...................................................................................9

*Anderson v. Binance*,
    2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) .................................................6, 8

*Berdeaux v. OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021)...................................................................9

*EMA Fin., LLC v. Vystar Corp.*,
    2021 WL 1177801 (S.D.N.Y. Mar. 29, 2021) ......................................................4

*Holsworth v. BProtocol Found.*,
    2021 WL 706549 (S.D.N.Y. Feb. 22, 2021)..........................................................7

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
    534 F. Supp. 3d 326 (S.D.N.Y. 2021)...............................................................7, 8

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014).....................................................................7

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)................................................................................10

*Kolbeck v. LIT America, Inc.*,
    939 F. Supp. 240 (S.D.N.Y. 1996) .....................................................................10

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)..................................................................................9

*LLM Bar Exam, LLC v. Barbri, Inc.*,
    271 F. Supp. 3d 547 (S.D.N.Y. 2017)...................................................................3

*Pinter v. Dahl*,
    486 U.S. 622 (1988).............................................................................................5

*Sussman Sales Co., Inc. v. VWR Int'l, LLC*,
    2021 WL 1165077 (S.D.N.Y. Mar. 26, 2021) ....................................................10

*Underwood v. Coinbase Glob., Inc.*,
    2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023).........................................4, 5, 6, 7, 10

*Vasquez v. Hong Kong & Shanghai Banking Corp.*,
    2019 WL 2327810 (S.D.N.Y. May 30, 2019) ......................................................9

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998)..................................................................................................3

Defendants Universal Navigation Inc. d/b/a/ Uniswap Labs ("Labs") and Hayden Z. Adams submit this reply memorandum of law in support of their motion to dismiss the AC.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition highlights their inability to identify well-pleaded factual allegations in the Amended Complaint supporting their claims.  Instead, Plaintiffs resort to obfuscation – continuing to conflate Labs, the Protocol and the Interface by referring to all three as "Uniswap" – and improperly make new allegations in the Opposition, relying on a hodgepodge of new documents, including a YouTube video, Investopedia.com and other third-party websites, news articles and social media posts.  Despite all of that, this remains a straightforward case for dismissal:  Plaintiffs fail to state a claim because they (*i*) do not identify any contract between any Plaintiff and Labs or Mr. Adams, much less one that violated the Exchange Act, (*ii*) do not plausibly allege that Labs or Mr. Adams was a "seller" of any of the Tokens, and (*iii*) do not plead essential elements of their state common law claims.

*First*, Plaintiffs' Section 29(b) claim fails because Plaintiffs' use of software developed by Labs – the Protocol's "smart contracts" or the Interface – does not mean that Plaintiffs were in contractual privity with Labs or Mr. Adams.  Moreover, Plaintiffs do not identify any terms of those purported contracts that require a violation of the Exchange Act.

*Second*, Plaintiffs' Section 12(a)(1) claim fails because Plaintiffs do not plausibly allege that Labs or Mr. Adams ever held or transferred title of the Tokens to Plaintiffs.  Their alleged role in the design, development and governance of the Protocol does not make them "sellers" of

---

[1]   Capitalized terms not defined herein have the same meaning as in the Memorandum of Law in Support of the Motion to Dismiss of Universal Navigation Inc. (d/b/a/ Uniswap Labs) and Hayden Z. Adams.  (Dkt. No. 67, "Mem.")

the Tokens under the securities laws.  Nor does the alleged use of social media to promote the

Protocol constitute "solicitation" of the Tokens.

*Third*, the "relation back" doctrine does not save Plaintiffs' time-barred federal securities

claims with respect to Tokens and transactions alleged for the first time in the Amended

Complaint.

*Fourth*, the Opposition confirms that Plaintiffs fail to plead essential elements of their

state law claims.  Plaintiffs' state securities claims fail because Plaintiffs do not adequately

allege that Labs or Mr. Adams sold any of the Tokens or that any such transactions occurred in

Idaho or North Carolina.  Plaintiffs' aiding and abetting claims fail because Plaintiffs do not

plead actual knowledge or substantial assistance; New York law is clear that allegations of

inaction or failure to investigate are insufficient to state a claim.  Plaintiffs' unjust enrichment

claim fails because Plaintiffs admit that trading fees go to liquidity providers, not to Labs.

The Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 29(b) OF THE EXCHANGE ACT.

In the Opposition, Plaintiffs base their Section 29(b) claim entirely on their alleged use of

the Protocol's "smart contracts" and the Interface.  (Opp'n 21-22.)  In doing so, Plaintiffs

abandon any claim that Labs received any fees from their purchase of the Tokens.  (AC ¶¶ 711,

722.)  Plaintiffs now acknowledge that fees "are collected and distributed by" smart contracts

and are "stored in" liquidity pools until they are "distributed to liquidity providers."  (Opp'n 9.)

Plaintiffs also abandon any reliance on alleged contracts between Labs and the issuers of the

Tokens.  (AC ¶¶ 711, 722.)

A.      **Plaintiffs Fail to Plead Contractual Privity with Labs.**

Plaintiffs fail to identify any contract between any Plaintiff and Labs, much less one that

violates the Exchange Act.  (Opp'n 21-26; Mem. 9-12.)  Plaintiffs' alleged use of "smart

contracts Defendants wrote" and "the Interface" is not sufficient to plead a legal contract with

Labs.  (Opp'n 21-22.)

*First*, as a threshold matter, Plaintiffs' assertion that the Protocol's "smart contracts" are

legal agreements is unsupported by factual allegations.  (Opp'n 22-24.)  To the contrary,

Plaintiffs acknowledge that those "smart contracts" are simply "self-executing, self-enforcing"

computer code, and that users swap tokens on the Protocol by unilaterally interacting with a

liquidity pool.  (AC ¶¶ 42, 78.)  In the Amended Complaint's illustration, a user sends Token A

(plus a small fee that goes to liquidity providers) to a liquidity pool, and the liquidity pool

automatically sends Token B to the user.  (Opp'n 8; AC ¶ 78.)  Plaintiffs' references to generic

definitions of smart contracts from the Investopedia and IBM websites say nothing about the

smart contracts that make up the Protocol – a decentralized trading platform.[2]  (Opp'n 22-23.)

Furthermore, even if a "smart contract" could give rise to a legal contract, Plaintiffs fail

to plead that they entered into such a contract *with Labs*.  Nothing in the Amended Complaint –

or in the third-party websites Plaintiffs cite – suggests that the *developer* of the underlying

computer code is a *party* to a smart contract.  As discussed below in Section II, Plaintiffs do not

---

[2]     The Court should disregard these new allegations, as Second Circuit law is clear that a
complaint "cannot be amended by the briefs in opposition to a motion to dismiss."  *LLM Bar
Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 580 (S.D.N.Y. 2017); *see also Wright v.
Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (party may not amend pleading
through statements in briefs).  The same is true of Plaintiffs' other new allegations,
including YouTube videos, social media posts, third-party websites and news reports, which
are cited in the Opposition (*e.g.*, Opp'n 8 n.4, 12 n.10, 23, 24 n.17, 30 n.18, 44 n.20) or
included as exhibits to the Declaration of James R. Serritella (Dkt. No. 83).  None of
Plaintiffs' new allegations, in any event, remedy the fundamental deficiencies of their
claims.

plausibly allege that Labs was a counterparty to any alleged transaction – *i.e.*, that Labs sold any

of the Tokens to Plaintiffs.  Indeed, Plaintiffs make no attempt to explain how their use of the

Protocol's "smart contracts" could possibly satisfy the "familiar elements" of a contract *with*

*Labs*, namely "offer, acceptance, consideration, and mutual assent and intent to be bound."

(Opp'n 21.)

Plaintiffs' related assertion that each trade on the Protocol constitutes a separate contract

is likewise unsupported by factual allegations.  (Opp'n 25.)  Courts have rejected such theories

for purposes of Section 29(b) claims where, as here, the plaintiffs do not "identify any

transaction-specific contract."  *Underwood v. Coinbase Glob., Inc.*, 2023 WL 1431965, at *11-

12 (S.D.N.Y. Feb. 1, 2023) (rejecting as unsupported "plaintiffs' notion" that "each individual

purchase or sale qualifies as a contract within the meaning of Section 29(a)"); *see also EMA Fin.,*

*LLC v. Vystar Corp.*, 2021 WL 1177801, at *2 (S.D.N.Y. Mar. 29, 2021) (distinguishing

between "unlawful *contracts*" and "unlawful *transactions* made pursuant to lawful contracts")

(emphasis added).

*Second*, Plaintiffs offer no factual or legal support for their new theory that, by using the

Interface, "Plaintiffs entered into binding contracts with [Labs] to execute the trading of

securities." (Opp'n 22.)  The Interface, which is distinct from the Protocol, is simply a front-end

website that some users employ to access the Protocol.  (AC ¶ 64.)  Here again, Plaintiffs attempt

to conflate Labs, the Protocol and the Interface, referring to them all without distinction as

"Uniswap." (Opp'n 22; Mem. 7-8.)  As the Amended Complaint makes clear, however, all

transactions are executed on the Protocol; the Interface does not execute any transactions.  (AC

¶¶ 78-79.)  A user sends a token to a liquidity pool on the Protocol – not to Labs or the Interface

– and the liquidity pool sends a different token back to the user.  (AC ¶¶ 64, 78.)  The liquidity

pool – not Labs or the Interface – receives a fee from the user and distributes it to the liquidity providers.  (AC ¶¶ 78, 92.)  The process is entirely decentralized and automated.

> **B.      Plaintiffs Fail to Identify a Contract That Violates the Exchange Act.**

Plaintiffs' attempt to base their Section 29(b) claim on the use of "smart contracts" and the Interface fails for the additional reason that neither, on its face, *requires* the performance of an illegal act in violation of the Exchange Act.  (Opp'n 25-26; Mem. 11.)  Plaintiffs ignore, for example, that the Protocol's smart contracts and the Interface can be used in connection with tokens that are *not* alleged to be securities and therefore do not implicate the federal securities laws, such as Bitcoin or Ether.  *See Underwood*, 2023 WL 1431965, at *12 (dismissing Section 29(b) claim where alleged contract did not require "any party to transact in the Tokens that the AC depicts as unregistered securities" and allowed transaction in other assets "including Bitcoin or Ether[]").  Furthermore, Plaintiffs' failure to allege the *terms* of any supposed contract necessarily means that Plaintiffs have not adequately pleaded this element of their Section 29(b) claim.  (Mem. 11-12.)

## II.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 12(a)(1) OF THE SECURITIES ACT.

Plaintiffs fail to identify any well-pleaded facts establishing that Labs (*i*) "passed title, or other interest in a security, to the buyer for value" or (*ii*) "successfully solicit[ed] the purchase" of a security.  *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988).  (Opp'n 27-31; Mem. 12-13.)

*First*, Plaintiffs' conclusory assertion that "Defendants held and passed title of the Tokens to Plaintiffs" is wholly unsupported by factual allegations.  (Opp'n 27.)  The Amended Complaint is clear that issuers or other liquidity providers add pairs of tokens to a liquidity pool, and other users interact with the liquidity pool to swap one token for the other.  (AC ¶¶ 39, 78, 79.)  Those liquidity pools are "self-executing, self-enforcing" computer programs, with the rules

for providing liquidity or trading tokens written "directly into the program's code." (AC ¶¶ 39, 42, 77, 81.) The diagram in paragraph 78 of the Amended Complaint illustrates this in detail, as do the Uniswap Labs website and the Uniswap v2 Whitepaper, which Plaintiffs cite and rely on. (AC ¶ 78; Mem. 5-6.)

Nothing in the Amended Complaint (or the documents incorporated therein) lends any support to the idea that Labs ever held title or other interest in the Tokens, or even had possession, custody or control of them. Indeed, Plaintiffs expressly admit in the Opposition that all of the liquidity providers' tokens traded on the Protocol are held by smart contracts – the liquidity pools – not by Labs. (Opp'n 23 ("[a]ll tokens traded on the Protocol are stored in the pair contracts"); *id.* at 27 (the "pair contracts . . . held the Tokens in Uniswap Pools").) The Court need not decide whether, given how liquidity pools function, a liquidity provider could be considered a transaction counterparty or a "seller" of the tokens; Plaintiffs do not allege that Labs was a liquidity provider for the Tokens and have abandoned that theory. (*Id.* 27.) Either way, there certainly is no basis to conclude that Labs, by virtue of having developed the Protocol's underlying computer code, "held and passed title" of the Tokens. (*Id.*) Plaintiffs' analogy to "self-driving cars with flaws" makes no sense because their alleged harm was caused by the fraudulent conduct of third-party Token issuers, not an error in the software developed by Labs. (*Id.* 27-28.) If someone uses a self-driving car to rob a bank, that is not the car's fault.

Courts have consistently rejected similar theories, even for centralized crypto-exchanges. *See Underwood*, 2023 WL 1431965, at *6-8 (holding plaintiffs failed to plead that Coinbase held or passed title, where plaintiffs did not adequately allege that Coinbase controlled the tokens or transacted directly with plaintiffs); *Anderson v. Binance*, 2022 WL 976824, at *3 n.2 (S.D.N.Y. Mar. 31, 2022) (same as to Binance). The idea that Labs "held and passed title" of the Tokens is

even less plausible than in those cases, as Labs is a software company that does not take possession of assets in the Protocol and the Protocol is fully decentralized and autonomous.

*Second*, Plaintiffs' assertion that Labs solicited the purchase of the Tokens is not supported by any of the cited paragraphs of the Amended Complaint.  (Opp'n 28 (citing AC ¶¶ 9, 52-53, 133, 198, 735).)  Those allegations are unrelated to solicitation, conclusory, or suggest (at most) that Labs promoted the Protocol, not any of the Tokens.  Indeed, nothing in the Amended Complaint indicates that Plaintiffs were "directly contacted" by Labs regarding the Tokens or that they purchased the Tokens "as a result of any active solicitations" by Labs.  *Holsworth v. BProtocol Found.*, 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021).  Implicitly acknowledging their failure to plead solicitation, Plaintiffs rely on out-of-circuit opinions that are contrary to Second Circuit law.  (Opp'n 29-30.)  Plaintiffs fail to meet the Second Circuit's standard because they allege no facts showing "direct and active participation in the solicitation of the immediate sale."  *Underwood*, 2023 WL 1431965, at *9 (noting that "solicitation" is "narrowly construed").

## III.   PLAINTIFFS' FEDERAL CLAIMS ARE TIME-BARRED WITH RESPECT TO MOST OF THE TOKENS.

The claims asserted by Plaintiffs Freeland, Scott, Venesky, Cardis and Meyers do not relate back to the filing of the original complaint.  (Opp'n 38-41.)  Plaintiff Risley's assertion of claims concerning specific tokens and transactions did not provide notice that other users would assert claims relating to other unidentified tokens and transactions.  Moreover, because Risley did not have standing to assert claims related to those other tokens or transactions, the claims of other Plaintiffs "cannot relate back to the date of [Risley's] complaint" and must be "independently timely."  *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 303 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015); *see also In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 334 (S.D.N.Y. 2021) (holding that "plaintiff lacks standing to

7

bring suit regarding tokens that he did not purchase"). As other courts have done in similar circumstances, the Court should evaluate the timeliness of Plaintiffs' claims on a token-by-token basis. *See In re Bibox*, 534 F. Supp. 3d at 337-40 (evaluating statute of limitations on a token-by-token basis); *Anderson*, 2022 WL 976824, at *2-4 (same).

The "discovery rule" does not save Plaintiff Venesky's claims from dismissal (Opp'n 41), as the alleged news events did not reveal any "critical *facts*" concerning the fact of injury or the source of the injury. *In re Bibox*, 534 F. Supp. 3d at 339 (emphasis in original). "Ignorance of legal rights does not delay the accrual of a claim under a discovery rule." *Id.*

## IV.   PLAINTIFFS FAIL TO STATE A FEDERAL SECURITIES CLAIM AGAINST MR. ADAMS.

Plaintiffs' federal securities claims against Mr. Adams fail for the same reasons stated above with respect to Labs. Notably, Plaintiffs do not dispute their failure to allege that Mr. Adams was a liquidity provider for any of the Tokens at issue. (Mem. 14-15.) Plaintiffs' control person claims fare no better, as Plaintiffs fail to identify factual allegations in the Amended Complaint sufficient to plead a primary violation, actual control, and culpable participation in the primary violation. (Opp'n 31-38; Mem. 14-16.)

## V.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER STATE LAW.

### A.   Plaintiffs Fail to State a Claim Under the Idaho or North Carolina State Securities Laws.

Plaintiffs do not dispute that they must plead that Labs or Mr. Adams sold the Tokens to them in order to state a claim under the state securities laws of Idaho or North Carolina. (Opp'n 47; Mem. 16.) As discussed above, Plaintiffs fail to do so.

Plaintiffs also do not dispute that the Idaho and North Carolina statutes require the alleged transactions to have occurred in those states. Plaintiffs do not plausibly allege that any transactions occurred in either state, and they ignore the Second Circuit's holding that the

8

residence of the purchaser "does not affect where a transaction occurs." *Absolute Activist Value*

*Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012).  (Opp'n 47; Mem. 16-17.)

> ### B.   Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud and Negligent Misrepresentation.

Plaintiffs fail to identify particularized factual allegations demonstrating that Labs or

Mr. Adams had "actual knowledge" of the purported fraud or misrepresentation or provided

"substantial assistance to advance the fraud's commission." *Lerner v. Fleet Bank, N.A.*, 459 F.3d

273, 292 (2d Cir. 2006).  (Opp'n 42-47; Mem. 17-18.)

With respect to "actual knowledge," Plaintiffs rely on generalized assertions that

"Uniswap is fully aware of the existence and scope of fraudulent activity on the Protocol" and

are unable to identify any factual allegations showing actual knowledge of any fraud or

misrepresentation with respect to the particular Tokens they purchased.  (Opp'n 43-46.)  That is

a far cry from the "particularity necessary to survive the heightened pleading requirements" of

Rule 9(b).  *Lerner*, 459 F.3d at 292.  Nor can Plaintiffs rely on an alleged failure to investigate

because, under New York law, absent an independent duty to investigate, "allegations that the

defendant ignored obvious warning signs of fraud are not sufficient to allege actual knowledge."

*Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 412 (S.D.N.Y. 2021).[3]  (Mem. 18.)

Likewise, Plaintiffs cannot rely on alleged "inaction" to satisfy the element of

"substantial assistance."  (Opp'n 46-47.)  Under New York law, "inaction constitutes substantial

assistance for purposes of aiding and abetting liability only when the defendant owes a fiduciary

duty directly to the plaintiff."  *Berdeaux*, 561 F. Supp. 3d at 417 (quoting *Lerner*, 459 F.3d at

---

[3]   Plaintiffs cite *Vasquez v. Hong Kong & Shanghai Banking Corp.*, but the court in that case found "actual knowledge" adequately pleaded only because the defendant allegedly *had* conducted its own independent investigation and concluded that the third party at issue was engaged in fraud.  2019 WL 2327810, at \*16 (S.D.N.Y. May 30, 2019); *see also Berdeaux*, 561 F. Supp. 3d at 413-14 (distinguishing *Vasquez*).

295); *see also Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 247 (S.D.N.Y. 1996) (collecting cases).  Plaintiffs allege no such duty.

Plaintiffs offer no response to their failure to plead reliance on the alleged misstatements or, with respect to their negligent misrepresentation claim, a "special relationship" with the issuers of the Tokens.  (Mem. 18-19.)

### C.      Plaintiffs Fail to State a Claim for Unjust Enrichment.

Plaintiffs' unjust enrichment claim fails because Plaintiffs acknowledge that trading fees are paid to "issuers and/or liquidity providers," and Plaintiffs do not allege that Labs or Mr. Adams received any fees or other "specific and direct benefit" from Plaintiffs' trades and at their "expense."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).  (Opp'n 22; Mem. 19.)

## VI.    DISMISSAL SHOULD BE WITH PREJUDICE.

The Amended Complaint should be dismissed with prejudice.  Plaintiffs have already amended the complaint once, and they declined an opportunity to amend a second time after being provided with detailed notice of the deficiencies in their pleading by Defendants' pre-motion letters.  (Dkt. Nos. 52, 54, 56.)  Additionally, the Opposition demonstrates that further amendment would be futile, as the new facts Plaintiffs attempt to introduce do nothing to cure their fundamentally deficient claims.  *See Sussman Sales Co., Inc. v. VWR Int'l, LLC*, 2021 WL 1165077, at *21 (S.D.N.Y. Mar. 26, 2021) (dismissing with prejudice where plaintiff did not seek leave to amend in connection with motion to dismiss and declined to amend after receiving the defendant's pre-motion letter); *Underwood*, 2023 WL 1431965, at *13 (dismissing Section 12(a)(1) and Section 29(b) claims with prejudice because leave to amend would be futile).

### CONCLUSION

For the reasons set forth herein, the Court should dismiss the Amended Complaint with prejudice.

10

Dated:     New York, New York     DEBEVOISE & PLIMPTON LLP
              February 28, 2023

/s/ *Elliot Greenfield*

Maeve L. O'Connor
Elliot Greenfield
Brandon Fetzer
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
*mloconnor@debevoise.com*
*egreenfield@debevoise.com*
*bfetzer@debevoise.com*

*Attorneys for Defendants Universal Navigation
Inc. (d/b/a Uniswap Labs) and Hayden Z. Adams*

11