UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NESSA RISLEY, JAMES FREELAND, ROBERT SCOTT, ANNIE VENESKY, ANDREW CARDIS, and DEAN MEYERS, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>    -v-<br><br>UNIVERSAL NAVIGATION INC. dba UNISWAP LABS, UNISWAP FOUNDATION, HAYDEN Z. ADAMS, PARADIGM OPERATIONS LP, AH CAPITAL MANAGEMENT, L.L.C. dba ANDREESSEN HOROWITZ, and UNION SQUARE VENTURES, LLC,<br><br>      Defendants. | No. 1:22-cv-2780-KPF<br><br>The Honorable Katherine Polk Failla<br><br><u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
VC DEFENDANTS' MOTION TO DISMISS THE
<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 12(a)(1) OF THE
     SECURITIES ACT ........................................................................................................2

     A.   Plaintiffs' Passing Title Theory Is Meritless ............................................................2

     B.   Plaintiffs' Solicitation Argument Is Meritless .........................................................4

II.  PLAINTIFFS' UNREGISTERED BROKER-DEALER AND UNREGISTERED
     EXCHANGE CLAIMS FAIL........................................................................................5

III. PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON
     LIABILITY....................................................................................................................6

     A.   Plaintiffs Do Not Allege Power to Direct Uniswap Labs .......................................6

     B.   Plaintiffs Do Not Allege that the VC Defendants Exercised Actual Control ..........8

     C.   Plaintiffs Fail to Allege Culpable Participation .......................................................9

IV.  PLAINTIFFS' STATE-LAW CLAIMS FAIL ...................................................................10

CONCLUSION................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Agape Litigation*,
   773 F. Supp. 2d 298 (E.D.N.Y. 2011) ...................................................................................10

*In re Alstom SA Securities Litigation*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005) .....................................................................................6

*Anwar v. Fairfield Greenwich Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010) ...................................................................................10

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ......................................................................................................9

*In re Blech Securities Litigation*,
   961 F. Supp. 569 (S.D.N.Y. 1997) ..........................................................................................6

*In re Cannavest Corp. Securities Litigation*,
   307 F. Supp. 3d 222 (S.D.N.Y. 2018) .....................................................................................6

*Capri v. Murphy*,
   856 F.2d 473 (2d Cir. 1988) ...........................................................................................3, 4, 5

*Carpenters Pension Trust Fund of Street Louis v. Barclays PLC*,
   750 F.3d 227 (2d Cir. 2014) ....................................................................................................9

*In re Craftmatic Securities Litigation*,
   890 F.2d 628 (3d Cir. 1989), as amended (Jan. 30, 1990) ......................................................5

*Daniels v. Blount Parrish & Co., Inc.*,
   113 F. App'x 174 (7th Cir. 2004) ............................................................................................5

*Dietrich v. Bauer*,
   126 F. Supp. 2d 759 (S.D.N.Y. 2001) ..................................................................................6, 7

*Holsworth v. BProtocol Foundation*,
   20 Civ. 2810 (AKH), 2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) .........................................5

*Jones v. Cuomo*,
   542 F. Supp. 3d 207,  (S.D.N.Y. 2021) ...................................................................................1

*In re Lehman Bros. Mortgage-Backed Securities Litigation*,
   650 F.3d 167 (2d Cir. 2011) .............................................................................................6, 7, 9

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ..................................................................................................10

*In re Marsh & Mclennan Cos., Inc. Securities Litigation*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006)..................................................................................9

*In re OSG Securities Litigation*,
    971 F. Supp. 2d 387 (S.D.N.Y. 2013)..................................................................................5

*P. Stolz Family Partnership, L.P. v. Daum*,
    166 F. Supp. 2d 871 (S.D.N.Y. 2001), *rev'd in part on other grounds*, 355
    F.3d 92 (2d Cir. 2004).........................................................................................................9

*Pino v. Cardone Capital, LLC*,
    55 F.4th 1253 (9th Cir. 2022) .............................................................................................5

*Pinter v. Dahl*,
    486 U.S. 622 (1988).......................................................................................................3, 4

*Public Employees' Retirement System v. Merrill Lynch & Co.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010)..................................................................................9

*Roberts v. BroadwayHD LLC*,
    518 F. Supp. 3d 719 (S.D.N.Y. 2021)..................................................................................7

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) ..............................................................................................5

*Rosner v. Bank of China*,
    349 F. App'x 637 (2d Cir. 2009) .......................................................................................10

*Shaw v. Digital Equipment Corp.*,
    82 F.3d 1194 (1st Cir. 1996), *superseded on other grounds by* 15 U.S.C.
    § 78u-4(b)(2).......................................................................................................................5

*In re Smith Barney Transfer Agent Litigation*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012)..................................................................................8

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    96 F. Supp. 3d 325 (S.D.N.Y. 2015)....................................................................................9

*Steed Finance LDC v. Nomura Securities International, Inc.*,
    No. 00 CIV. 8058(NRB), 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) ............................5

*In re Tronox, Inc. Securities Litigation*,
    769 F. Supp. 2d 202 (S.D.N.Y. 2011)..................................................................................6

*Underwood v. Coinbase Global, Inc.*,
    21 Civ. 8353 (PAE), 2023 WL 1431965 (S.D.N.Y. 2023)...............................................3, 5

*Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.*,
  18 Civ. 1876 (PAE), 2019 WL 2327810 (S.D.N.Y. May 30, 2019) ........................................10

*In re Veon Ltd. Securities Litigation*,
  2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018) ............................................................................6

*Wildes v. BitConnect International PLC*,
  25 F.4th 1341 (11th Cir. 2022) ...................................................................................................5

*Yi v. GTV Media Group Inc.*,
  21 Civ. 2669 (VM), 2021 WL 2535528 (S.D.N.Y. June 18, 2021)............................................8

**STATUTES**

15 U.S.C. § 78u-4(b)(2) ....................................................................................................................5

**OTHER AUTHORITIES**

Bankless Shows, *120 – Marc Andreessen & Chris Dixon of a16z | Reinventing the
  Internet*, YouTube (May 30, 2022),
    https://www.youtube.com/watch?v=RXHITeaGB8Q&t=3706s.

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition (ECF No. 82, "Opp.")[1] marks a clear-cut retreat from one of the AC's core allegations. Plaintiffs repeatedly alleged that the VC Defendants acted as "significant liquidity provider[s]" for the tokens traded on the Protocol. (AC ¶¶ 22-24, 101, 194.) Plaintiffs then doubled-down on this allegation at the pre-motion conference, arguing that "strong inferences can be drawn that the so-called VC defendants are liquidity providers in pools on Uniswap" (ECF No. 64 ("Tr.") 28:19-22), and contending that "[n]ot only does it mean they're making more money, it gives them more control of the protocol" and the token pools, which is "all [they] need to plead" to establish a securities claim (*id.* at 7:25-8:8, 28:18-29:15, 30:14-20).[2] As the VC Defendants explained, these liquidity provider allegations are not just wrong, but legally insufficient. (VC Br. 8-12; ECF No. 54 at 2 & n.3.) Rather than withdraw or defend their allegations, Plaintiffs act like they never made them, ignoring the issue entirely in their Opposition and pivoting instead to argue that the VC Defendants somehow transacted with Plaintiffs because they allegedly "wrote, control, and maintain" the Protocol's smart contracts. (Opp. 22-23.) Plaintiffs' "silence" on the AC's liquidity provider allegations "concedes" Defendants' argument that they do not support their claims, *Jones v. Cuomo*, 542 F. Supp. 3d 207, 216 n.2 (S.D.N.Y. 2021) (Failla, J.), and their about-face in response to the VC Defendants' Motion underscores the inadequacy of all their allegations.

Plaintiffs' back-up theory falls short of pleading any contractual privity, or that any VC Defendant passed title to any of the Tokens at issue or solicited any Plaintiff's Token purchase.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the VC Defendants' opening memorandum of law (ECF No. 70, "VC Br."). Exhibit page citations refer to the numbers in the ECF headings.

[2] In fact, the AC's allegations apparently led the Court to believe that the VC Defendants "have the ability to and they do provide liquidity and do obtain the fees" on the Protocol. (Tr. at 16:8-17.)

1

(*Infra* §§ I-II.) Further, Plaintiffs' control person allegations fail to plead that any VC Defendant had the power to direct Uniswap Labs, actually exercised any control over the alleged violations at issue, or culpably participated in those alleged violations. (*Infra* § III.) Finally, Plaintiffs' state-law claims impermissibly lump all VC Defendants together without any attempt to differentiate them or plead their knowledge of fraud perpetrated by third-party users of the Protocol. (*Infra* § IV.) Plaintiffs' Opposition highlights the legal deficiencies of the AC and why dismissal with prejudice is warranted.

## ARGUMENT[3]

### I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 12(a)(1) OF THE SECURITIES ACT

#### A. Plaintiffs' Passing Title Theory Is Meritless

Despite repeatedly alleging that the VC Defendants are "significant" liquidity providers on the Protocol, Plaintiffs now jettison this theory. In its place, Plaintiffs' Opposition offers two different "passing title" theories. Plaintiffs first assert that the VC Defendants passed them title to the Tokens because "Uniswap and all Defendants" are "counterparties to [Plaintiffs'] trades on the Interface." (Opp. 22.) But this argument impermissibly conflates the Interface and the Protocol. The AC does not and cannot allege that any VC Defendant operates any interface or has any role in operating Uniswap Labs' Interface (VC Br. 7), and Plaintiffs cannot stretch allegations against "Uniswap" to reach the VC Defendants (Opp. 22 (citing AC ¶ 78)). And even if Plaintiffs did make this allegation as to the VC Defendants (they cannot), the AC does not allege any facts supporting the notion that developing or operating the Interface somehow equates to holding or passing title to the Tokens.

---

[3] To avoid repetition, the VC Defendants incorporate herein by reference the arguments set forth in Uniswap Labs' brief (ECF No. 84) ("Labs Reply Br."), adding context where warranted.

Plaintiffs next argue that ***contributing code*** for any smart contract underlying the Protocol turns an entity into a counterparty in every transaction that occurs using that smart contract. (Opp. 27.) But Plaintiffs' theory runs headlong into binding precedent that mere "involvement in [a] securities transaction and its surrounding circumstances" does not by itself create Section 12 liability, especially not under a theory that the party "passed title . . . to the buyer for value." *Pinter v. Dahl*, 486 U.S. 622, 642, 651 (1988); *Capri v. Murphy*, 856 F.2d 473, 478-79 (2d Cir. 1988) ("play[ing] a major role in setting up the coal-mining venture" did not make defendant "a 'seller'"). According to Plaintiffs, the VC Defendants pass title to tokens because the VC Defendants' smart-contract contributions were "necessary to facilitate trades in connection with the Tokens." (Opp. 23-24.)[4] Tellingly, Plaintiffs cite no authority that equates actions "necessary to facilitate trades" with "passing title." That is because courts routinely reject arguments comparable to Plaintiffs' fictional "necessary to facilitate" test as incompatible with Section 12's text and *Pinter*. *See, e.g.*, *Underwood v. Coinbase Glob., Inc.*, 2023 WL 1431965, at *9 (S.D.N.Y. 2023) (collecting cases rejecting "collateral" participation); (*see also* VC Br. 13 ("engag[ing] in steps necessary to the distribution" of Tokens does not suffice)).

Plaintiffs' theory would extend "passing title" liability to every person able to influence the development of the Protocol's smart contracts for every transaction on the Protocol. That result would radically expand Section 12 liability. Like "accountants and lawyers" who assist with a "sales transaction," a software engineer "whose involvement is only the performance of their

---

[4] Plaintiffs' definitions of "smart contracts," taken from outside of the AC, do not suggest that those who contribute code to a smart contract are ***counterparties*** to any transaction using that smart contract. Rather, they underscore that smart contracts offer a predetermined set of terms—or a template—for as-yet-unknown users. (Opp. 8 (citing "Investopedia Definition"); ECF No. 83-3, at 8 n.18 ("Smart contracts are digital contracts stored on a blockchain that are automatically executed when predetermined terms and conditions are met."); *see also* ECF No. 68-1, at 3 (explaining that v2 allows users "to create pair contracts for any two ERC-20s").)

3

professional services" is not "in any meaningful sense" the person whom Plaintiffs "'purchas[ed] the [Token] from.'" *Pinter*, 486 U.S. at 651.[5]

Plaintiffs argue that rejecting their far-reaching theory would be like allowing creators of faulty self-driving cars to avoid liability "regardless of whether they were responsible for such flaws." (Opp. 28.) This analogy assumes the Protocol is somehow at fault. But the AC's allegations make clear that "scam token" issuers are to blame. That makes Plaintiffs' case more like an effort to hold a developer of self-driving cars (and its investors) liable for a third party's use of the car to commit intentional traffic violations. Plaintiffs' argument that ***someone*** must be liable for wrongdoing related to the Tokens does nothing to advance their unsupported and legally untenable theory that ***the VC Defendants*** passed title to the Tokens.

### B.     Plaintiffs' Solicitation Argument Is Meritless

Plaintiffs' solicitation theory likewise fails to tie their alleged Token purchases to the VC Defendants. Plaintiffs assert that "Defendants induced users to swap Tokens on the Protocol, courting them through social media." (Opp. 28, 30.) But the AC's allegations say no such thing. Most of the cited paragraphs do not even discuss acts by the VC Defendants (AC ¶¶ 9, 52-53, 133), and the remaining paragraphs are conclusory, with no mention of "courting" or "social media" (*id.* ¶¶ 198, 735). These allegations fail to plead any act of solicitation by any VC Defendant, let alone that any VC Defendant "induced" Plaintiffs "to swap [the] Tokens" at issue. (Opp. 28.) That omission sinks any argument that Plaintiffs purchased ***as a result of*** any VC Defendant's solicitation. *Capri*, 856 F.2d at 478-79 (plaintiffs must show that defendant who contacted them

---

[5] Plaintiffs' allegations that "Defendants" drafted smart contracts relate only to certain Paradigm personnel (*see* Opp. 7 (citing AC ¶¶ 107-10); VC Br. 4-5), and even still, fail to show any relationship between any smart contract that Paradigm allegedly helped develop and Plaintiffs' purchases or the Tokens at issue. Plaintiffs' argument that "the Tokens were transmitted to Plaintiffs" using "'router contracts'" cannot advance their theory because Plaintiffs do not allege that any VC Defendant helped draft any "router contracts." (Opp. 27.)

"actually solicited their investment"); *Underwood*, 2023 WL 1431965, at *9.[6]

Plaintiffs point to out-of-Circuit case law that treats mass, rather than direct, communications as solicitation. (Opp. 29-30.) Those cases do not salvage Plaintiffs' claim, as the Second Circuit reads Section 12 to require that the solicitation be directed at the plaintiff. *See Capri*, 856 F.2d at 478-79.[7] Regardless, the AC fails under other circuits' approaches, too. Plaintiffs do not allege that any VC Defendant "'urge[d] or persuade[d]' another to buy a ***particular security***." *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022) (emphasis added); *Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1260 (9th Cir. 2022) (solicitation concerned "the Funds at issue"); *see also In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 403 (S.D.N.Y. 2013) (Defendants actively "market[ed] ***the securities*** to Plaintiffs." (emphasis added)). Nor do Plaintiffs allege that they purchased "as a result of" any VC Defendant's urging or persuading. *Holsworth v. BProtocol Found.*, 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021); *Wildes*, 25 F.4th at 1347 (failure to allege purchase "'as a result of' [defendant's] solicitations" is "an independent ground for dismissing" claim); *Pino*, 55 F.4th at 1260 (acknowledging that "the solicitation must succeed"). The AC's failure to connect any communication by any VC Defendant to any Plaintiff's purchase of any Token is fatal.

## II. PLAINTIFFS' UNREGISTERED BROKER-DEALER AND UNREGISTERED EXCHANGE CLAIMS FAIL

Plaintiffs' failure to allege contractual privity also defeats their Section 29 claims against the VC Defendants. As noted, contributing code for a smart contract does not make one a

---

[6] Plaintiffs cannot lump the VC Defendants together or with Uniswap Labs to excuse their failure to allege acts of solicitation by the VC Defendants that succeeded because "presumably [Plaintiffs] would have known" about and alleged such acts. *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001).

[7] *See also In re Craftmatic Sec. Litig.*, 890 F.2d 628, 636 (3d Cir. 1989), *as amended* (Jan. 30, 1990); *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1215 (1st Cir. 1996), *superseded on other grounds by* 15 U.S.C. § 78u-4(b)(2); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003); *Daniels v. Blount Parrish & Co., Inc.*, 113 F. App'x 174, 176 (7th Cir. 2004).

counterparty to all transactions involving that smart contract, and Plaintiffs do not plead any connection between any allegedly contributed code and any Plaintiff's Token purchase. Plaintiffs' claims also fail for the reasons stated by Uniswap Labs, including that Plaintiffs fail to allege the existence of any contract *requiring* performance of an illegal act. (*See* Labs Reply Br. 2-5.)

### III. <u>PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON LIABILITY</u>

#### A. Plaintiffs Do Not Allege Power to Direct Uniswap Labs

Unable to dispute that the VC Defendants lacked "the practical ability to *direct* the actions of [Uniswap Labs]" (VC Br. 15), Plaintiffs contend that they only need to plead "*some indirect means of discipline or influence short of actual direction*" (Opp. 32). But this ignores Second Circuit authority explaining that mere influence falls "far short of showing a power to *direct* the primary violators' management and policies" and thus "does not suggest control." *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 187-88 (2d Cir. 2011); *In re Alstom SA*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (similar).[8] In fact, Plaintiffs' cases all involve allegations that far exceeded mere influence.[9]

Measured against the correct standard, Plaintiffs' control allegations fall short. Plaintiffs do not allege that *any* VC Defendant had control over Uniswap Labs, let alone that *each* of them did. While they continue to rely on snippets of Adams' tweets regarding the VC Defendants' assistance (Opp. 6-7), such conduct "fail[s] to raise a reasonable inference that [defendants] ha[ve]

---

[8] (*See also* VC Br. 15-18); *In re Blech Sec. Litig.*, 961 F. Supp. 569, 587 (S.D.N.Y. 1997). To the extent Plaintiffs' cases purport to support their proposed standard, they are inconsistent with the Second Circuit's decision in *In re Lehman Brothers*, and, regardless, required more than mere "influence," as discussed herein.

[9] *See, e.g.*, *Dietrich v. Bauer*, 126 F. Supp. 2d 759, 765-66 (S.D.N.Y. 2001) (control person was sole shareholder in, and provided all funding for, a brokerage firm bearing his own name, in which he paid the salary of the firm's only broker); *In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 214 (S.D.N.Y. 2011) (control persons involved in "day-to-day operations" of primary violator, including reviewing and approving fraudulent reporting at issue); *In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *21 (S.D.N.Y. Aug. 30, 2018) (directors and officers of violator signed the SEC filings at issue); *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 253 (S.D.N.Y. 2018) (control person "had direct and supervisory involvement in the day-to-day operations of the Company").

the power to ***direct***, rather than merely inform." *In re Lehman Bros.*, 650 F.3d at 187-88. In fact, the full Twitter thread Plaintiffs selectively quote directly contradicts any suggestion of control:

> First, our investors have been super supportive of my leadership. Our team has consistently set strategy and called the shots from day one. ***I've never felt for a second they want to exert control over the direction of our company***. In fact, when making important decisions, ***I've often felt reluctance from investors on weighing in too strongly***. Even when directly asked, the response is often that I have a better understanding of the project/situation and should trust my instinct. . . . ***So if someone tells you our VCs are purely extractive or that my actions are dictated by them (lol), feel free to link them to this thread. That has not been my experience***.

(ECF No. 71-1, at 2-3 (emphasis added); VC Br. 4, 18.)

Further, Plaintiffs' reliance on the VC Defendants' status as investors of Uniswap Labs (Opp. 6, 10, 33) ignores the case law deeming such allegations insufficient (VC Br. 16). The one case Plaintiffs cite on this point—*Dietrich v. Bauer*—is readily distinguishable, as it emphasized that the alleged control person was not merely an investor, but also an incorporating director and sole shareholder of the primary violator. 126 F. Supp. 2d 759, 765-66 (S.D.N.Y. 2001). Plaintiffs' vague allegations regarding UNI ownership (Opp. 11-13) fare no better, as Plaintiffs plead no facts as to how that allowed the VC Defendants to direct Uniswap Labs (VC Br. 17).

Perhaps recognizing the futility of their allegations, Plaintiffs now offer new facts and documents, including a YouTube video that was never referenced, let alone relied upon, in the AC. (Opp. 12 & n.10.) Even if such facts could be considered on this motion (and they cannot, s*ee, e.g.*, *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 732 (S.D.N.Y. 2021) (Failla, J.)), they fail in their own right. Contrary to Plaintiffs' speculation that the VC Defendants "control as much as 88% of UNI" (Opp. 11), the cited video explains that the "default in Web3 . . . is [that] at least half of the tokens end up being . . . given to the community members." Also in that video, Andreessen partner Chris Dixon praises Web3 for "democratizing ownership" through tokens, compared to Web2 in which "all of the assets, and control and money . . . went to a small set of

7

companies." *See* https://youtu.be/RXHITeaGB8Q?t=3706, at 1:01:36-1:02:35.

Left with nothing else, Plaintiffs argue that "[g]iven the early pleading stage and flexible pleading standards, it is not implausible that [they] could develop a record that could support a finding of control." (Opp. 35.) But the stage of the case does not absolve Plaintiffs of their pleading burden. Nor can Plaintiffs hide behind the general proposition that control person liability is a "fact-intensive inquiry." (Opp. 31-32); *see Yi v. GTV Media Grp. Inc.*, 2021 WL 2535528, at *4 (S.D.N.Y. June 18, 2021); (VC Br. 15-16 & n.8 (collecting cases dismissing control claims)).

### B. Plaintiffs Do Not Allege that the VC Defendants Exercised Actual Control

Plaintiffs also fail to plead that any VC Defendant "exercised actual control" over Uniswap Labs' purported violations. (VC Br. 19-20.) Plaintiffs argue only that the "VC Defendants had control over the Protocol" because they "developed" and "financed it." (Opp. 35.) Even if this were true (and it is not), that does not mean the VC Defendants exercised control over **which tokens** are offered or sold on the Protocol. To the contrary, the Protocol is open source and can be used by anyone in the world to list any digital assets, including those not at issue in this case. (VC Br. 19-20.) As a result, the Protocol can be—and indeed is—used in myriad ways that are not (and could not be) alleged to violate securities laws. (*Id.*) This defeats Plaintiffs' theory that the VC Defendants exercised control over the alleged violations at issue. And while Plaintiffs assert that the VC Defendants should have taken steps to prevent the purported violations (Opp. 35-36), this conclusory assertion does not establish **actual exercise** of control. *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166-67 (S.D.N.Y. 2012) (rejecting allegations that defendants "had the ability to prevent the issuance of the statements or cause the statements to be corrected").

Finally, Plaintiffs' allegations regarding the VC Defendants' ownership of UNI again fall short, as they fail to allege that any VC Defendant actually exercised any UNI voting rights in

connection with any of the violations alleged here. (VC Br. 20.)[10]

### C. Plaintiffs Fail to Allege Culpable Participation

Although the Court need not reach the issue, Plaintiffs also fail to allege culpable participation. (VC Br. 21-23.) Their contention that culpable participation is not an element of Section 20 claims (Opp. 36) conflicts with controlling law. *See, e.g.*, *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). Other courts have reached the same conclusion for Section 15 claims. (VC Br. 21 n.13); *P. Stolz Family P'ship, L.P. v. Daum*, 166 F. Supp. 2d 871, 873 (S.D.N.Y. 2001), *rev'd in part on other grounds*, 355 F.3d 92 (2d Cir. 2004).[11]

Plaintiffs utterly fail to plead culpable participation, which "must be pleaded with the same particularity as scienter." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 96 F. Supp. 3d 325, 345 (S.D.N.Y. 2015); (VC Br. 21-23). They improperly lump all VC Defendants together and merely allege in conclusory fashion the group's purported knowledge of and failure to prevent fraud (Opp. 37-38.) This falls far short of the particularized pleading required. (VC Br. 21-22.) Plaintiffs also do not dispute, and thus concede, that their unsupported theory is less compelling than the competing inference that the VC Defendants were outside investors with no knowledge of unrelated third parties' conduct. (VC Br. 22-23.)

---

[10] Indeed, the DAO Study upon which Plaintiffs' rely suggests that large delegates "do not often use their voting power and mostly decide in the same way as the larger community." (ECF No. 83-4, at 12.) This language was selectively omitted from the same paragraph Plaintiffs quoted in the AC. (*See* AC ¶ 147.)

[11] In particular, courts have required culpable participation under Section 15 when plaintiffs allege claims against purported control persons who are not signatories of the registration statement, *see Pub. Emps' Ret. Sys. v. Merrill Lynch & Co.,* 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010), or claims that sound in fraud, *see In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 493 (S.D.N.Y. 2006). Here, Plaintiffs seek to hold the VC Defendants— outside investors with no role in Uniswap Labs' day-to-day operations—liable for claims arising from purported fraud on the Protocol. (AC ¶¶ 195-707). Under such circumstances, and given the intra-Circuit split, *see In re Lehman Bros.*, 650 F.3d at 186, Plaintiffs should be required to plead the VC Defendants' culpable participation under Section 15.

## IV. PLAINTIFFS' STATE-LAW CLAIMS FAIL

The VC Defendants adopt and incorporate by reference the arguments of Uniswap Labs regarding Plaintiffs' state-law claims (Labs Reply Br. 8-10). In addition, the aiding and abetting claim should be dismissed because Plaintiffs fail to allege any facts establishing that any VC Defendant (much less all of them) had any knowledge of fraud on the Protocol—let alone any alleged fraud with respect to the Tokens at issue. Plaintiffs do not cite to a single statement by any VC Defendant that purports to show their knowledge of fraud; instead, Plaintiffs lump **all** Defendants together to claim that they **all** had knowledge of fraud. (AC ¶¶ 3, 90, 192, 194.) This tactic fails even under a Rule 8 standard. (VC Br. 17.)[12] Plaintiffs' conclusory assertion that the VC Defendants "consciously avoided" investigating the fraud or taking steps to counter it (Opp. 45) is legally insufficient and merely a repackaged version of the same deficient allegations. (Labs Reply Br. 9-10); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006) (affirming dismissal where plaintiffs "failed to allege actual knowledge of fraud with the particularity necessary" to satisfy Rule 9(b)); *see also Rosner v. Bank of China*, 349 F. App'x 637, 638-40 (2d Cir. 2009); *In re Agape Litig.*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011) ("Statements alleging that a defendant 'should have known that something was amiss with [ ] transactions,' . . . [are] insufficient to support an aiding-and-abetting claim under New York law.'").

## CONCLUSION

For the foregoing reasons, the AC should be dismissed with prejudice.

---

[12] Plaintiffs' cases involved specific factual allegations of actual knowledge that are wholly absent here. *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 443 (S.D.N.Y. 2010) (detailed allegations of defendants' long-standing involvement with the funds, grossly deficient due diligence, and knowledge of very specific red flags, such as Madoff's family members' involvement in key positions at his firm and his use of paper trading records); *Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.*, 2019 WL 2327810, at *16-17 (S.D.N.Y. May 30, 2019) (defendant followed up on its fraud suspicion by doing independent research and finding an evaluation concluding the underlying actor was fraudulent, and thereafter assisted in further fraudulent transactions).

Dated:  New York, New York
         February 28, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By:  s/ Susan E. Engel
Susan E. Engel
(susan.engel@lw.com)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (212) 637-2200

Benjamin A. Naftalis
(Benjamin.naftalis@lw.com)
Douglas K. Yatter
(douglas.yatter@lw.com)
Julia R. Miller (admitted *pro hac vice*)
(julia.miller@lw.com)
Peter Trombly (admitted *pro hac vice*)
(peter.trombly@lw.com)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200

*Attorneys for Defendant AH Capital Management, L.L.C.*

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By:  s/ Alexander C. Drylewski
Alexander C. Drylewski
(alexander.drylewski@skadden.com)
Tansy Woan
(tansy.woan@skadden.com)
One Manhattan West
New York, New York 10001-8603
Telephone: (212) 735-2129

*Attorneys for Defendant Paradigm Operations LP*

DEBEVOISE & PLIMPTON LLP

By:  s/ Elliot Greenfield
Elliot Greenfield
(egreenfield@debevoise.com)
Maeve L. O'Connor
(moconnor@debevoise.com)
Brandon Fetzer
(bfetzer@debevoise.com)
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000

*Attorneys for Defendant Union Square Ventures, LLC*

11