UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NESSA RISLEY, JAMES FREELAND, ROBERT SCOTT, ANNIE VENESKY, ANDREW CARDIS, and DEAN MEYERS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        -against-<br><br>UNIVERSAL NAVIGATION INC. dba UNISWAP LABS, UNISWAP FOUNDATION, HAYDEN Z. ADAMS, PARADIGM OPERATIONS LP, AH CAPITAL MANAGEMENT, L.L.C. dba ANDREESSEN HOROWITZ, and UNION SQUARE VENTURES, LLC.,<br><br>        Defendants. | Case No.1:22-cv-2780-KPF |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT UNISWAP FOUNDATION'S
<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

Jason Gottlieb
Michael Mix
Vani Upadhyaya
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
Telephone:  (212) 735-8600
Facsimile:   (212) 735-8708

*Attorneys for Defendant Uniswap Foundation*

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.    PLAINTIFFS DO NOT STATE ANY CLAIM AGAINST ANY DEFENDANT ............ 2

II.   PLAINTIFFS DO NOT SUFFICIENTLY STATE A CLAIM AGAINST THE FOUNDATION UNDER AN "ALTER EGO" THEORY .................................................. 2

    A.    The Opposition Improperly Asserts that the Foundation Is the Alter Ego of All Other Defendants ............................................................................................... 2

    B.    Delaware Law Only Permits the Disregard of the Corporate Form in the "Exceptional Case" ............................................................................................ 3

    C.    Plaintiffs Have Not Sufficiently Alleged a Single Economic Entity ...................... 4

    D.    Plaintiffs Have Not Sufficiently Pleaded an Overall Element of Injustice or Unfairness .......................................................................................................... 9

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Blair v. Infineon Techs. AG*,
    720 F. Supp. 2d 462 (D. Del. 2010) .................................................................................. 5, 10

*In re Buckhead Am. Corp.*,
    178 B.R. 956 (D. Del. 1994) .................................................................................................. 10

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit L.P.*,
    491 B.R. 335 (S.D.N.Y. 2013) ................................................................................................. 6

*Case Fin., Inc. v. Alden*,
    No. 1184-CVP, 2009 Del. Ch. LEXIS 153 (Del. Ch. Aug. 21, 2009) ...................................... 4

*In re China Mobile Games & Ent. Grp., LTD Sec. Litig.*,
    No. 14-CV-4471 (KMW), 2016 U.S. Dist. LEXIS 29258 (S.D.N.Y. Mar. 7,
    2016) ........................................................................................................................................ 3

*Cohen v. Schroeder*,
    724 F. App'x 45 (2d Cir. 2018) .............................................................................................. 3

*In re Digit. Music Antitrust Litig.*,
    812 F.Supp. 2d 390 (S.D.N.Y. 2011) ...................................................................................... 4

*Maloney-Refaie v. Bridge at Sch., Inc.*,
    958 A.2d 871 (Del. Ch. 2008) ................................................................................................. 6

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
    975 F. Supp. 2d 392 (S.D.N.Y. 2013) .................................................................................. 4, 9

*Radiancy, Inc. v. Viatek Consumer Prods. Grp.*,
    No. 13-cv-3767 (NSR), 2014 U.S. Dist. LEXIS 42474 (S.D.N.Y. Mar. 28,
    2014) ........................................................................................................................................ 4

*Shah v. Helen Hayes Hosp.*,
    252 F. App'x 364 (2d Cir. 2007) ............................................................................................ 3

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008) ........................................................................................ 4

*Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*,
    332 F.3d 188 (3d Cir. 2003) .................................................................................................. 10

*VFS Fin., Inc. v. Falcon Fifty, LLC*,
    17 F. Supp. 3d 372 (S.D.N.Y. 2014) ....................................................................................... 6

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998)......................................................................................................3

**Statutes**

8 Del. C. § 102(a)(4).....................................................................................................................5

8 Del. C. § 220 ..............................................................................................................................5

**Other Authorities**

Hayden Adams, *Bringing Web3 to Everyone* (Oct. 13, 2022),
    https://uniswap.org/blog/bringing-web3-to-everyone ............................................................7

Rule 12(b)(6)..................................................................................................................................1

Defendant Uniswap Foundation (the "Foundation") respectfully submits this reply memorandum of law in further support of its Rule 12(b)(6) motion to dismiss the September 27, 2022 First Amended Complaint (ECF No. 46, the "Amended Complaint" or "Am. Compl.").

## PRELIMINARY STATEMENT

Plaintiffs' fifty-two page Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF No. 82, the "Opposition" or the "Opp.") spends only a handful of pages on the Foundation, highlighting the dearth of Plaintiffs' allegations against the Foundation. The Opposition makes clear that the Foundation itself is not alleged to have committed any wrongdoing at all. The only reason that Plaintiffs name the Foundation in this action is their conclusory claim that the Foundation is the "alter ego" of Defendant Universal Navigation Inc. dba Uniswap Labs ("Labs") – or, as newly expanded in the Opposition, an alter ego of all of the other Defendants – and as a consequence, Plaintiffs assert, the actions of the other Defendants should be imputed to the Foundation.

The reply briefs of Labs and the "VC Defendants" (the "Labs Reply" and the "VC Reply," respectively) amply explain why the claims against all Defendants fail to state a claim, and the Foundation adopts and incorporates those arguments by reference. We do not repeat them here.

Instead, we detail how the Opposition does not refute the basic flaw in the Amended Complaint's allegations against the Foundation: it falls woefully short of the high bar under Delaware law to hold one defendant responsible for the acts of another under an "alter ego" theory.

Plaintiffs did not plead any of the traditional factors under Delaware law indicating that multiple entities are acting as a "single economic entity." The Opposition instead cites a mishmash of allegations concerning the Foundation, but none come close to suggesting that the Foundation and any other Defendant constitute a "single economic entity." Merely alleging that one employee at the Foundation used to work for Labs does not come close to hurdling the high bar under

Delaware corporate law to disregard a corporate form. Plaintiffs also have not pleaded any facts that suggest that the Foundation was formed as a sham or shell, or to perpetrate injustice. To the contrary, the documents relied upon by Plaintiffs make abundantly clear that the Foundation was formed for a legitimate purpose, and acts independent of Labs or any other Defendant.

Plaintiffs' Opposition fails to explain how the Amended Complaint states a claim against the Foundation. The Amended Complaint should be dismissed as against the Foundation.

## ARGUMENT

### I. PLAINTIFFS DO NOT STATE ANY CLAIM AGAINST ANY DEFENDANT

The Foundation adopts and incorporates by reference the Labs Reply Brief and the VC Reply Brief, which both explain in detail why none of the Amended Complaint's fourteen causes of action state a claim against any Defendant at all.

### II. PLAINTIFFS DO NOT SUFFICIENTLY STATE A CLAIM AGAINST THE FOUNDATION UNDER AN "ALTER EGO" THEORY

The Amended Complaint contains no allegations that the Foundation ever owned or operated the Uniswap Protocol, sold any UNI tokens to Plaintiffs or anyone else, had any other relationship with Plaintiffs, collected any user fees, or did anything else alleged in the Amended Complaint to be unlawful. The Opposition does not suggest that the Foundation did. Indeed, the Opposition makes clear that Plaintiffs have only named the Foundation here under an "alter ego" theory. But Plaintiffs have failed to rebut the Moving Brief's arguments for why Plaintiffs' "alter ego" argument fails.

#### A. The Opposition Improperly Asserts that the Foundation Is the Alter Ego of All Other Defendants

As an initial matter, although the Amended Complaint only alleged that the Foundation is the alter ego of Labs, Am. Comp. ¶¶ 20, 714, 724, 740, 755, 764, 779, 786, 801, 808, 814, Plaintiffs assert in the Opposition that the Foundation is the alter ego of Labs, Adams, and all of the VC

2

Defendants, Opp. at 49-51. Aside from the inherent implausibility of the Foundation somehow being the alter ego of four different entities and one individual at the same time, Plaintiffs cannot use their Opposition to amend the Amended Complaint to allege that the Foundation is the alter ego of anyone other than Labs. *See Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint") (citation omitted); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("a party is not entitled to amend its complaint through statements made in motion papers") (citations omitted); *In re China Mobile Games & Ent. Grp., LTD Sec. Litig.*, No. 14-CV-4471 (KMW), 2016 U.S. Dist. LEXIS 29258, at *17 n.9 (S.D.N.Y. Mar. 7, 2016) ("Plaintiffs, likely recognizing the weaknesses in the Complaint, attempt to improperly plead new facts in their Opposition to the Motion to Dismiss").

Accordingly, the Court should disregard the Opposition's statements that the Foundation is the alter ego of Adams or the VC Defendants, because those allegations are not even attempted in the Amended Complaint.

### B. Delaware Law Only Permits the Disregard of the Corporate Form in the "Exceptional Case"

Tellingly, the Opposition spends very little time on the legal standards to establish an alter ego claim under Delaware law, which undisputedly applies here. To establish that two entities operated as alter egos, Delaware law requires that a plaintiff "must show *both* that (1) the owner and his corporation operated as a single economic entity and that (2) the owner's actions contained an overall element of injustice or unfairness." *Cohen v. Schroeder*, 724 F. App'x 45, 47 (2d Cir. 2018) (applying Delaware law) (citations and quotation marks omitted, emphasis in original). Plaintiffs do not contest this test. Opp. at 48.

Plaintiffs assert that it is "hyperbole" to refer to this test as an "extremely high bar." Opp. at 48. But courts interpreting Delaware law, both in Delaware and New York, have explained that Delaware law will disregard the corporate form only in the "exceptional case," and the proponent bears a "heavy burden." *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 402 (S.D.N.Y. 2013) ("Delaware courts especially take the corporate form very seriously and will disregard it only in the exceptional case."); *In re Digit. Music Antitrust Litig.*, 812 F.Supp. 2d 390, 418 (S.D.N.Y. 2011) (under Delaware law, "the corporation's separate identity is generally respected and the proponent of disregarding a corporation's separate identity bears a heavy burden"); *Case Fin., Inc. v. Alden*, No. 1184-CVP, 2009 Del. Ch. LEXIS 153, at *13 (Del. Ch. Aug. 21, 2009) ("This Court will disregard the corporate form only in the 'exceptional case'").

The Moving Brief explains in detail how the Amended Complaint fails to sufficiently plead a "single economic entity," and fails to plead that there was an overall element of injustice or unfairness in the formation of the Foundation. Moving Br. at 7-14. Plaintiffs have not rebutted those arguments.

### C. Plaintiffs Have Not Sufficiently Alleged a Single Economic Entity

As explained in the Moving Brief, courts applying Delaware law typically weigh seven factors that might weigh in favor of finding that two companies are acting as a single entity:

> (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) the absence of corporate records; and (7) the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.

*Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528-29 (D. Del. 2008). These factors "apply in Delaware regardless of whether the cause of action is based on federal or state law." *Radiancy,*

4

*Inc. v. Viatek Consumer Prods. Grp.*, No. 13-cv-3767 (NSR), 2014 U.S. Dist. LEXIS 42474, *15 n.4 (S.D.N.Y. Mar. 28, 2014) (citation omitted).  *See also* Moving Br. at 7.

Plaintiffs concede that courts applying Delaware law will analyze these seven factors to determine whether multiple entities are operating as a "single economic entity."  Opp. at 48.  Plaintiffs suggest that there are additional factors that courts can consider, Opp. at 49, but Plaintiffs do not articulate what those other factors are, and the case they cite for that proposition, *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 471 (D. Del. 2010), enumerates those same seven factors.

The Opposition makes five arguments for why the Foundation is supposedly operating as a "single economic entity" with every other Defendant.  Opp. at 49-51.  But Plaintiffs' arguments are conclusory and wildly implausible, and in any event do not meet any of the above factors for determining that two companies are acting as a "single economic entity."

<u>First</u>, Plaintiffs argue that it should "no[t] be held against Plaintiffs" that they have not pleaded certain of the factors.  Opp. at 49.  Plaintiffs contend that because the Foundation is a nonstock corporation, "some of the typical alter ego factors would not even be applicable, such as non-payment of dividends, lack of shareholders and absence of certain corporate records."  *Id.*  As an initial matter, Delaware nonstock corporations still have members[1] and still would maintain certain corporate records,[2] and "lack of shareholders" is not even a factor considered in an alter ego analysis.  Regardless, as explained in the Moving Brief, the fact that the Foundation is a nonstock corporation that is not alleged to be a subsidiary, parent, or an affiliate of Labs or any other Defendant, undermines the notion that the Foundation is another party's alter ego.  Moving Br. at 8-9.

---

[1]   *See* 8 Del. C. § 102(a)(4) (Delaware nonstock corporations have members rather than shareholders).

[2]   *See* 8 Del. C. § 220 (members of Delaware nonstock corporations can demand corporate records).

5

Indeed, Plaintiffs have not cited any cases where a court found that two (or more) unaffiliated entities acted as a single economic entity. To the contrary, in *Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 881 (Del. Ch. 2008), the Delaware Chancery court found that the fact that a non-profit foundation did not have common ownership with another defendant was a reason why the plaintiff had not established an alter ego claim. *See* Moving Br. at 8-9.

Plaintiffs' citation to two decades-old law review articles standing for the anodyne proposition that courts should be "flexible" in applying the equitable remedy of disregarding corporate form, Opp. at 49, does not supersede the more recent case law cited above and in the Moving Brief, and does not alter the fact that Plaintiffs make no factual allegations supporting the proposition that the Foundation is acting as a single economic entity with multiple unrelated and unaffiliated entities.

Second, Plaintiffs assert that the Foundation's "'directors,' which are also its sole owners (on paper), are Uniswap insiders under the control of some or all of Defendants." Opp. at 49. But the Moving Brief explains – citing the allegations of the Amended Complaint, and documents upon which it relies – how one of the two directors in question did not continue working at Labs after beginning work at the Foundation, and the other is not alleged to have worked at Labs at any point. Moving Br. at 10. Likewise, there are no facts in the Amended Complaint illustrating that the two directors were ever under the "control" of Labs or any other Defendant, including in the paragraphs cited in the Opposition. Opp. at 49. Conclusory allegations that one person "controls" another are insufficient. *See VFS Fin., Inc. v. Falcon Fifty, LLC*, 17 F. Supp. 3d 372, 383 (S.D.N.Y. 2014) ("[Counterclaim] Defendants have not sufficiently pled an alter ego theory. The counterclaims and third-party complaint contain, at best, conclusory statements that GE Capital 'controls' VFS and GEECAT…"); *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit L.P.*, 491

B.R. 335, 347 (S.D.N.Y. 2013) ("The unadorned invocation of dominion and control is simply not enough to state a claim premised on veil piercing") (citation and quotation marks omitted).

Moreover, the Moving Brief cited cases rejecting alter ego claims even despite allegations of overlapping management, which again is not even pleaded here. Moving Br. at 10-11. Plaintiffs do not even attempt to distinguish those cases (because they cannot).

<u>Third</u>, Plaintiffs argue that the "Foundation does not have a purpose independent from [Labs] or even one that appears to be a non-profit." Opp. at 49. Plaintiffs claim that the Foundation's "purpose is not to fill in a gap in society resulting from market or governmental failure but to duplicate the functions and operations of the for-profit companies that created it." Opp. at 50. There is no requirement under Delaware law that to avoid an alter ego claim, a company "fill in a gap in society from market or governmental failures," nor do Plaintiffs cite any such requirement. Nevertheless, as explained in the Moving Brief, the Amended Complaint itself explains the Foundation's purpose: to "provide grants to builders, researchers, organizers, academics, analysts, and more to grow the Protocol and plan its future." Am. Compl. ¶ 162. Indeed, the blog post from Defendant Hayden Adams cited in the Opposition actually undermines Plaintiffs' claims; the <u>full</u> quote (unlike the selective quotation in the Opposition) is as follows:

> As Uniswap Labs focuses on products, a much broader ecosystem continues to grow and thrive beyond what any one company can do on their own. As an example, the governance community recently voted to create the Uniswap Foundation, which will contribute to the Protocol's decentralized development and give at least $60 million in grants to community projects over the next few years.

Hayden Adams, *Bringing Web3 to Everyone*, Uniswap.org (Oct. 13, 2022), https://uniswap.org/blog/bringing-web3-to-everyone. The blog post that Plaintiffs cite thus makes clear that Labs has its own independent purposes.

Fourth, Plaintiffs allege that "the other Defendants transferred $74 million of UNI from the Uniswap Treasury to Uniswap Foundation so that they could further their own interest as stated above." Opp. at 50. Plaintiffs have misread their own Amended Complaint and the documents cited therein. The Moving Brief explains in detail, again based on documents cited in the Amended Complaint, how $20 million in UNI tokens were transferred from the "Uniswap" Treasury, with the rest to be granted later. Moving Br. at 9. And those tokens did not come from Labs, or any other Defendant, but rather from a treasury controlled by a dispersed collection of UNI tokenholders. *Id.*

Plaintiffs next point to a grab-bag of other factual allegations that supposedly buttress their claim. Opp. at 50-51. But none of those allegations support an inference that the Defendants collectively created the Foundation for some nefarious purpose. Plaintiffs assert that Foundation was created through a governance proposal (the "Proposal") passed by a concentration of votes from the ten largest wallets holding UNI, Opp. at 50, but the Amended Complaint does not specify the owners of such wallets, whether those wallets were owned Defendants, or were related to Defendants. *See* Moving Br. at 11. Plaintiffs contend that the Foundation was formed with "suspicious timing" because the Foundation's "formation documents" pre-dated the submission of the Proposal – but the Moving Brief explains how creating the Foundation prior to voting on the Proposal made logical sense and was disclosed in the Proposal itself. Moving Br. at 11. Plaintiffs assert that "the … Proposal sought 2.5 million UNI to 'participate in governance,' which is 'revocable by the DAO at any time.'" Opp. at 51. Again, Plaintiffs do not connect this statement – which concerns the DAO (or "decentralized autonomous organization") or a disparate group of UNI tokenholders – with the other Defendants, or any of the above factors showing a "single economic entity."

8

Moreover, crucially, all of the allegations about the Proposal and the UNI tokens transferred to the Foundation are ultimately irrelevant, because there are no allegations that such transfer left Labs (or any other Defendant) undercapitalized or insolvent, which is a key relevant consideration under the Delaware test. Nor could such transfer affect the finances of any Defendant, as those funds did not belong to Labs or any other Defendant in the first place. *See* Moving Br. at 9.

Fifth, Plaintiffs point to the basic aphorism that "equitable remedies look to substance rather than form." Opp. at 51. But the "substance" cited by Plaintiffs consists of mere conclusory statements that cannot overcome the Delaware legal test. *Id.*

### D. Plaintiffs Have Not Sufficiently Pleaded an Overall Element of Injustice or Unfairness

Plaintiffs have failed to meet the second prong of the Delaware alter ego test – they have not sufficiently alleged that Labs (or any other Defendant) used the Foundation to propagate an "injustice or unfairness that is a result of an abuse of the corporate form." *Nat'l Gear & Piston, Inc.*, 975 F. Supp. 2d at 406. Although Plaintiffs cite cases standing for the proposition that when the underlying claim is under federal law, no actual fraud is required to establish an alter ego claim, Opp. at 48, cases applying federal law involving Delaware companies nevertheless require the plaintiff to establish that the "corporation effectively must exist as a sham or shell through which the parent company perpetrates injustice." *Nat'l Gear & Piston, Inc.*, 975 F. Supp. 2d at 406. The Moving Brief cites a litany of cases dismissing alter ego claims at the pleading stage where the plaintiff pleaded that the corporation was formed for a legitimate purpose, or where there were not sufficient facts showing that the corporation was formed as a sham. Moving Br. at 12-13. Plaintiffs simply ignore those cases.

The Amended Complaint, as well as the blog referenced in the Opposition and above, makes clear that the Foundation was formed for a legitimate purpose: to provide grants to community members in order to grow the Uniswap Protocol and plan its future. Moving Br. at 12-13. Accordingly, by Plaintiffs' own allegations, the Foundation was not formed as a sham to perpetrate injustice.

Other cases cited by Plaintiffs are also inapposite, because, unlike here, plaintiffs in those cases sufficiently alleged facts that met the Delaware test. In *Blair*, the plaintiff alleged "gross undercapitalization; failure to observe corporate formalities; insolvency; and siphoning," in addition to "crippling control." 720 F. Supp. 2d at 472-73. In *Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 195 (3d Cir. 2003), in affirming the piercing of the corporate veil, the court pointed to insolvency of the debtor corporation, under capitalization, siphoning of funds, and dearth of corporate formalities and corporate records. And in *In re Buckhead Am. Corp.*, 178 B.R. 956, 975 (D. Del. 1994), the plaintiff sufficiently pleaded facts showing "that domination and control is used to cause the subsidiary to make transfers for the benefit of the controlling parties (to the detriment of the subsidiary)." Here, Plaintiffs have not sufficiently pleaded any actual facts supporting either prong of the alter ego test.

## CONCLUSION

The Foundation respectfully requests that the Court dismiss the Complaint in its entirety as against the Foundation, and grant such other and further relief as is just and proper.

Dated: New York, New York
       February 28, 2023                      MORRISON COHEN LLP

                                              By: */s/ Jason Gottlieb*
                                                    Jason Gottlieb
                                                    Michael Mix
                                                    Vani Upadhyaya
                                                    909 Third Avenue
                                                    New York, New York 10022
                                                    (212) 735-8600

                                      *Attorneys for Defendant Uniswap Foundation*