23-1340-cv
*Nessa Risley v. Universal Navigation Inc.*

1:22-cv-02780-KPF

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Feb 26, 2025

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of February, two thousand twenty-five.

PRESENT:    REENA RAGGI,
            RICHARD C. WESLEY,
            MARIA ARAÚJO KAHN,
                *Circuit Judges*.

_____

NESSA RISLEY, JAMES FREELAND, ROBERT SCOTT, ANNIE VENESKY, ANDREW CARDIS, DEAN MEYERS, individually and on behalf of all others similarly situated,

*Lead-Plaintiffs-Appellants*,

v.                                                                          23-1340-cv

UNIVERSAL NAVIGATION INC., DBA UNISWAP LABS, HAYDEN Z. ADAMS, PARADIGM OPERATIONS LP, AH CAPITAL MANAGEMENT, L.L.C., DBA ANDREESSEN HOROWITZ, UNION SQUARE VENTURES, LLC, UNISWAP FOUNDATION,

CERTIFIED COPY ISSUED ON 02/26/2025

*Defendants-Appellees*.[*]

| | |
|---|---|
| FOR LEAD-PLAINTIFFS-APPELLANTS: | JAMES R. SERRITELLA, Kim & Serritella, LLP, New York, NY. |
| FOR DEFENDANTS-APPELLEES: | ELLIOT GREENFIELD (Maeve L. O'Connor & Brandon Fetzer, *on the brief*), Debevoise & Plimpton LLP, New York, NY, *for Defendants-Appellees Universal Navigation Inc., DBA Uniswap Labs, Hayden Z. Adams, and Union Square Ventures, LLC.* |
| | ALEXANDER C. DRYLEWSKI (Tansy Woan, *on the brief*), Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, *for Defendant-Appellee Paradigm Operations LP.* |
| | SAMIR DEGER-SEN, Latham & Watkins LLP, New York, NY (Benjamin Naftalis, Douglas K. Yatter & Peter Trombly, Latham & Watkins LLP, New York, NY; Susan E. Engel, Latham & Watkins LLP, Washington, D.C., *on the brief*), *for Defendant-Appellee AH Capital Management, L.L.C., DBA Andreessen Horowitz.* |
| | JASON P. GOTTLIEB (Michael Mix & Vani Upadhyaya, *on the brief*), Morrison Cohen LLP, New York, NY, *for Defendant-Appellee Uniswap Foundation.* |

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

2

Appeal from the August 30, 2023, judgment of the United States District Court for the Southern District of New York (Katherine Polk Failla, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment dated August 30, 2023, is **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

The threshold issue in this case is whether the developers of automated computer codes that facilitate the transfer of cryptocurrency on a decentralized exchange may be held liable under federal securities laws for the alleged fraudulent conduct of third parties on that exchange. Lead-Plaintiffs-Appellants Nessa Risley, James Freeland, Robert Scott, Annie Venesky, Andrew Cardis, and Dean Meyers (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, appeal from an opinion and order dismissing their amended complaint against Defendants-Appellees Universal Navigation Inc., doing business as Uniswap Labs ("Labs"), and its CEO Hayden Z. Adams ("Adams"); the Uniswap Foundation (the "Foundation," and together with Labs, the "Uniswap Defendants"); venture capital firms Paradigm Operations LP ("Paradigm"), AH Capital Management, L.L.C., doing business as Andreessen Horowitz ("Andreessen Horowitz"), and Union Square Ventures, LLC ("USV," together with Paradigm and Andreessen Horowitz, the "VC Defendants," and together with the Uniswap Defendants, "Defendants").

In their amended complaint, Plaintiffs assert federal claims under Sections 5, 12(a)(1), and 15 of the Securities Act of 1933 ("Securities Act"), and Section 29(b) of the Securities Exchange Act of 1934 ("Exchange Act"), on behalf of a nationwide class consisting of all persons or entities who bought tokens on a cryptocurrency trading platform called the Uniswap Protocol ("Protocol"). *See* 15 U.S.C. §§ 77e, 77l(a)(1), 78cc(b). The amended complaint also asserts control person liability claims against Adams and the VC Defendants under Section 15 of the Securities Act and Section 20 of the Exchange Act, averring that, as CEO and venture capital investors of the Protocol, they exert operational control over the Protocol. *See* 15 U.S.C. §§ 77o, 78t. In addition to the federal claims, Plaintiffs assert state law claims under the securities and fraud laws of Idaho, North Carolina, and New York, with certification for subclasses for citizens of Idaho and North Carolina.

Labs operates the Protocol through a system of "smart contracts," which Plaintiffs allege are self-executing and self-enforcing computer programs that autonomously write the terms of an agreement between the traders of a certain cryptocurrency token into the program's code, obviating the otherwise traditional, centralized role that exchanges, broker dealers, and their banks, lawyers, or accountants would play in facilitating trades.[1]

---

[1] As the district court noted, the question of whether cryptocurrency tokens are securities is a "hotly contested" issue. *Risley v. Univ. Navigation Inc.*, 690 F. Supp. 3d 195, 212 (S.D.N.Y. 2023). Like the district court, we assume *arguendo* that tokens are *bona fide* securities.

4

The smart contracts allow the Protocol to operate as a decentralized exchange.[2] Specifically, users on the Protocol trade tokens through token swaps. The smart contracts perform token swaps through "liquidity pools," where users are matched in a peer-to-peer system. When one token is traded for another in a liquidity pool, the smart contract automatically determines the relative prices of the tokens, sets the rate for the exchange, and facilitates the trade if approved by the user. A trader of tokens on the Protocol has no direct interaction with the original token issuer, the liquidity provider, or with Labs.

Plaintiffs' alleged injuries stem from the trading of certain fraudulent tokens, referred to as "scam tokens," on the Protocol. Two common scams on the Protocol are "rug pulls" and "pump and dumps." In the former, an issuer deposits tokens into a liquidity pool but prematurely "burns" those pool tokens, leaving the purchasers with worthless tokens. In the latter, issuers artificially drive up the demand for their tokens and when the demand peaks, the issuers then "dump" their new tokens, again leaving investors with worthless tokens. Plaintiffs allege that Defendants are aware of and do nothing to stop these fraudulent activities pertaining to scam tokens because Labs and their investors stand to profit from the fees garnered from each trade.

---

[2] In a decentralized exchange, unlike the traditional centralized exchange, buyers and sellers are not matched on a one-to-one basis before a trade occurs between those two parties.

We assume the parties' familiarity with the remaining underlying facts and the procedural history of the case, which we reference only as necessary to explain our decision.

## DISCUSSION

We review *de novo* the district court's dismissal of Plaintiffs' amended complaint. *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011). A complaint is properly dismissed where it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "accept[s] all factual allegations as true, but giv[es] no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (internal quotation marks and citation omitted).

### I. The Securities Act Claims

Plaintiffs allege that Defendants illegally offered and sold securities in violation of Sections 5(a) and (c) of the Securities Act, which generally prohibit the selling of unregistered securities, *see* 15 U.S.C. § 77e(a), (c), and seek to recover damages pursuant to the purchasers' right to bring a private action under Section 12(a)(1). To prove a violation of Section 5, Plaintiffs must establish that Defendants sold or offered to sell the unregistered securities at issue. Section 12(a)(1) of the Securities Act imposes liability on statutory sellers, which the Supreme Court in *Pinter v. Dahl* defined as either (1) the

6

"owner who passed title, or other interest in the security, to the buyer," or (2) the one who "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities owner." 486 U.S. 622, 642, 647 (1988); see 15 U.S.C. § 77l(a)(1). To recover under this claim, premised on Defendants' violations of Section 5, Plaintiffs must prove that Defendants either were the sellers of the tokens in question or that, for their own financial gain, actively solicited the sale of the tokens to Plaintiffs. For the reasons set forth below, Plaintiffs have failed to adequately allege either.[3]

In a decentralized cryptocurrency exchange such as this one, the hosts of the Protocol do not hold title to the tokens placed in the liquidity pool by third party users of the platform. Rather, the token issuers and liquidity providers make each particular token available for purchase. As the amended complaint acknowledges, it is the token issuers and liquidity providers who retain title of their tokens through pool tokens that may be turned in at any time of their choosing to recover the value of their originally-deposited tokens that created the trading pool.

The Supreme Court in *Pinter* refused to extend Section 12(a)(1) liability to "participants[] collateral to the offer or sale" of securities. 486 U.S. at 650. The role of the smart contracts in the Protocol accords with that of base-level agreements for traders who

---

[3] We therefore need not address whether Plaintiffs sufficiently alleged a violation of Section 5.

7

access the stock market, whose "[function] is solely to execute the trades," and is collateral to the actual token sale. *Risley v. Univ. Navigation Inc.*, 690 F. Supp. 3d 195, 219 (S.D.N.Y. 2023). As the district court noted, extending such liability to that role would be akin to holding the NASDAQ or the New York Stock Exchange liable as facilitators of any fraudulent stock purchase on their exchanges. *See id.* at 219–20.

Even assuming, *arguendo*, that title to the tokens temporarily passed from the issuer to the Protocol and then to Plaintiffs in those split-second autonomous functions, it does not render Defendants sellers of the tokens because they would be "participants only remotely related to the relevant aspects of the sales transaction[s]," such as those whose "involvement is only the performance of their professional services." *Pinter*, 486 U.S. at 651; *see also In re Longfin Corp. Sec. Class Action Litig.*, No. 18 Civ. 2933 (DLC), 2019 WL 1569792, at *6 (S.D.N.Y. Apr. 11, 2019). Plaintiffs have thus failed to adequately allege that Defendants were statutory sellers of the tokens at issue.

Plaintiffs' solicitation theory of liability is equally flawed. Other than conclusory allegations, Plaintiffs' Section 12(a) claim rests on social media posts from Adams touting the safety of the Protocol. Defendants' promotion of their platform on social media or use of the platform to sell their own issued token, UNI, does not render them statutory sellers of securities to warrant liability under the Securities Act. We agree with the district court that such conduct is too attenuated from Plaintiffs' purchase of scam tokens to show that Defendants "successfully solicit[ed] the purchase [of a security], motivated at least

8

in part by a desire to serve [their] own financial interests or those of the securities owner." *Pinter*, 486 U.S. at 647. The district court therefore correctly dismissed Plaintiffs' claims under the Securities Act.

## II. The Exchange Act Claim

Section 29(b) provides a cause of action for the recission of contracts that were "made in violation" of the Exchange Act or "the performance of which involve[d]" a violation of the Exchange Act. 15 U.S.C. § 78cc(b). However, "'only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts.'" *NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*, 80 F.4th 413, 421 (2d Cir. 2023) (quoting *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981), *aff'd*, 672 F.2d 901 (2d Cir. 1981)). For the reasons set forth below, Plaintiffs have failed to adequately allege the existence of an unlawful contract between Defendants and Plaintiffs capable of recission under Section 29(b). [4]

The smart contracts are simply standardized computer codes that allow the Protocol to fill in the terms for individual trades between and controlled by its users. As explained in context of Plaintiffs' Section 12(a)(1) claims, the purportedly unlawful

---

[4] Because Plaintiffs failed to state a primary violation under the Securities and Exchange Acts, we need not address the merits of Plaintiffs' control liability and alter ego claims. *See Wilson* v. *Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011).

9

contract is between the token issuer or liquidity provider and the purchaser—not between the purchaser and Defendants.

Even if we agreed with Plaintiffs' contention that the smart contracts are unique to each transaction on the Protocol, we nevertheless agree with the district court that those contracts are not subject to recission because they are more analogous to overarching user agreements than to securities transactions conducted by traditional broker dealers. *Cf. Williams v. Binance*, 96 F.4th 129, 145 (2d Cir. 2024) (explaining that the "Terms of Use did not commit Plaintiffs to making a violative transaction" under Section 29(b) because "the Terms simply outlined the governing rules if Plaintiffs did choose to trade"). The Protocol's transaction approval process underscores this point. Like any typical user agreement requiring users to consent before engaging in conduct covered by those agreements, only a first-time user seeking to swap a token on the Protocol must provide approval before engaging in their first transaction. However, as with other user agreements, Protocol users are not required to continuously approve token-specific "contracts" after their initial use approval. Therefore, the transaction-specific terms of a token swap are not determined as a result of the conduct of Defendants.

In sum, we agree with the district court that it "defies logic" that a drafter of a smart contract, a computer code, could be held liable under the Exchange Act for a third-party user's misuse of the platform. *Risley*, 690 F. Supp. 3d at 215. Accepting Plaintiffs' allegations as true, the district court appropriately determined that Defendants' smart

10

contracts were, at best, collateral to the third parties' scam token activities and the type of tangential activity that falls outside of Section 29(b). Accordingly, we affirm the district court's dismissal of the Exchange Act claim.

### III. State Law Claims

Finally, Plaintiffs claim that the district court erred in dismissing the state law claims because it declined to exercise supplemental jurisdiction, even though Plaintiffs properly pled original diversity jurisdiction over those claims under the Class Action Fairness Act of 2005 ("CAFA"). Under CAFA, federal district courts are authorized to exercise original jurisdiction over putative class actions alleging damages above $5 million and a class of more than 100 persons where any member of the alleged plaintiff class is a citizen of a State different from any defendant. *See* 28 U.S.C. § 1332(d)(2).

We agree with Plaintiffs and hold that the district court improperly dismissed the state law claims under the doctrine of supplemental jurisdiction. *See L.S. v. Webloyalty.com, Inc.*, 954 F.3d 110, 117 (2d Cir. 2020) (vacating judgment dismissing state law claims where complaint adequately and alternatively pled original jurisdiction under CAFA). We respectfully vacate and remand for the district court to consider the state law claims in the first instance.[5]

\*   \*   \*

---

[5] Indeed, Labs and Adams concede that vacatur and remand are appropriate here.

11

We have considered Plaintiffs' remaining arguments and conclude that they are without merit. For the reasons set forth above, the judgment of the district court is **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

12