```
                 UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
----------------------------:
NESSA RISLEY, individually
and on behalf of all others
similarly situated, et al., : Docket No.: 22-cv-02780

               Plaintiffs,  :

        v.                   :

UNIVERSAL NAVIGATION
INC., et al.,                : New York, New York

                             : April 10, 2025

               Defendants.  :

----------------------------:
```

                      PROCEEDINGS BEFORE
          BEFORE THE HONORABLE KATHERINE POLK FAILLA
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff:     KIM & SERRITELLA, LLP
                   BY:  JAMES R. SERRITELLA, ESQ.
                        MARK A. KEURIAN, ESQ.
                   110 West 40th Street,
                   10th Floor, Suite 1000
                   New York, New York 10018

For Defendant:     DEBEVOISE & PLIMPTON, LLP
                   BY:  ELLIOT GREENFIELD, ESQ.
                        BRANDON R. FETZER, ESQ.
                   66 Hudson Boulevard
                   New York, New York 10001

Transcription Service: Marissa Lewandowski
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

THE DEPUTY CLERK:  Your Honor, this is in the matter of Risley v. Universal Navigation Inc., et al.

Counsel, please state your name for the record, beginning with plaintiff.

MR. SERRITELLA:  Good afternoon, Your Honor.  It's James Serritella from Kim & Serritella LLP on behalf of plaintiffs.  And I have with me, Mark Keurian.

THE COURT:  Good afternoon to each of you.  Thank you very much for participating.

Representing defendants this afternoon?

MR. GREENFIELD:  Good afternoon, Your Honor.  It's Elliot Greenfield, Debevoise & Plimpton, representing Universal Navigation, Inc. and Hayden Adams.  I'm joined by my colleague at Debevoise, Brandon Fetzer, and Patrick Wilson from Universal Navigation Inc. is on as well.

THE COURT:  Okay, thank you very much.  Let me make that note.  I appreciate having all of you on the call.

So we're back together.  My own Kappa mistake brings us here again.  So I've learned from that and won't do it again.  But where we are right now is that there's been an application from

plaintiff to amend the operative pleading in this case, and so I did want to hear from both sides. And let me just sort of situate you as to the issues that I've been thinking about so that you just know what you're arguing for and against.

I don't think that -- with respect to the issue of amendment, I don't think that this is a situation of bad faith or undue delay or dilatory motive. And taking to heart defendants thoughts about the pre-motion conference and how there were opportunities for plaintiff to seek to plead then rather than now, I might agree with you, you know, viscerally. But I've been burned before by the 2nd Circuit's decision in *Loreley Financial v. Wells Fargo*, 797 F.3rd 160 from 2015, where Judge Calabresi, who, and I'll say this because he said it right in my presence, prided himself in never having been a district judge, noted that sometimes it's not until the decision that a plaintiff understands the need for amendment.

In particular, what he said, and it's the one quote I have from the decision, without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing

specific deficiencies.  And that passage, that idea, has always stuck with me.  I'm fully aware that the 2nd Circuit has been less than consistent in this regard and that a lot of times that -- that sentence from Loreley very rarely gets cited back to me.  But it's something that's in my mind.

I think the fact that there was a pre-motion conference, the fact that there was a prior opportunity to amend shouldn't -- doesn't necessarily become dispositive in this setting.  On the other hand, what I'm really interested in is the question of futility because I'm trying to figure out, and I say this with all sincerity, how the remaining claims in the case and how the contemplated new claims in the case could be pleaded in a viable manner.

For instance, I believe I've made some findings about the degree to which the defendants really had control of these smart contracts.  And I looked at the operative Complaint right before this call to get a sense of what evidence there was of awareness of fraud.  And I have to say, I mean, I was repeatedly told that the defendants here were aware of the fraud, but I have no idea why.  I have no idea why they should have been.  So the knowledge

or the conscious avoidance or the should-have-known is just not obvious to me. And I'd like to understand why and what plaintiffs propose to do to -- to remediate these issues.

I also -- I looked at the Donovan case that, I believe, plaintiffs cited to me, and I found that not useful to me at all, actually. Yes, it allows GBL349 and 350 claims in a context of digital assets, but it was against the -- the creator, the issuer of the digital assets, and not the platform on which they were traded. So I want to be fair, always, want to understand what's going on.

So I guess what I'm asking the plaintiffs first is tell me precisely what you intend to do with your amendments, and what claims you think will be in an amended Complaint and why you think they can be pleaded in a manner that's viable, given the skepticism or the concerns I've just raised.

And then I'll hear from my friends on the defense side, and you can tell me why I shouldn't allow it. I just might ask you not to focus so much on the pre-motion conference.

So with all of that, and again, my thanks for the indulgence, Mr. Serritella, tell me, what are you thinking?

MR. SERRITELLA:  Well, thank -- thank you, Your Honor, for giving us an opportunity to be heard here.

Well, first of all, I think it is a fair question, but one thing we have to really focus on now in the case going forward is the interface.  And this is something that really wasn't the focal point of the appeal.  And even in the original motion in Your Honor's decision, the protocol really took the dominance.  And you know, we -- we took your decision to heart in terms of accepting it, obviously in the 2nd Circuit, but --

THE COURT:  I was going to say you took it -- you took it to heart, but you appealed it.  I mean, that's hardly taking it to heart, but go ahead.

MR. SERRITELLA:  We did.  We did.  We did.

THE COURT:  You took it to heart after it was affirmed by the 2nd Circuit.  That's hardly -- but I -- and that's -- that's -- you -- it was your right to do that.

MR. SERRITELLA:  Of course, and I'm not -- not to get all Al Gore, all of 2000 --

THE COURT:  Keep going, sir.

MR. SERRITELLA:   -- while I strongly

disagree, I stand by the Court's decision.  But in all fairness here, there -- there is this issue of Uniswap and Hayden Adams, and they're un -- it's not disputed that Uniswap controlled the interface.  And our allegations in the Complaint is that all the tokens that were at issue in the Complaint or are at issue in the Complaint were purchased by plaintiffs by using the interface.  The vast majority of users that get access to the protocol do it through the interface, which is an app that's hosted on -- again, Uniswap controls it.  It's an app hosted on their servers.  That's the gateway into the protocol.

And so dealing with that issue is a separate -- it's separate and apart from the protocol itself.  And if we look at -- if we look at the claim that was pleaded, that still hasn't been addressed on a motion to dismiss, at least on the merits, which is aiding and abetting fraud.  And here, I don't think there's any question that there are detailed allegations on the issuer's fraud.  But one of the other components of aiding and abetting is substantial assistance.  And that substantial assistance here is pled through the interface.

And then when it comes to knowledge,

there's plenty of cases out there that talk about, in the aiding and abetting fraud context, a strong inference that can be drawn from the allegations of knowledge. In fact, in the -- in the Fraternity Fund case, Judge Kaplan talks about conscience avoidance.

And here, we have -- even information that came to light after the original Complaint was -- or the second or the first amended Complaint was filed, there were reports that were coming out that 98, 99% of the tokens on Uniswap's exchange, again, that Uniswap allowed access through to the interface, were fraudulent. And there are allegations even that Hayden Adams knew that the interface was going to be used for Ponzi schemes and fraudulent activity.

And in addition, we have allegations that Uniswap --

THE COURT: Please pause. Sir, please pause. Thank you.

You say there's allegations that Hayden Adams knew. Allegations in your Complaint or allegations in materials that you've seen subsequent to the filing of your amended Complaint?

MR. SERRITELLA: So allegations --

allegations in our Complaint.  I don't have the exact cite in front of me, but there are allegations.

THE COURT:  Yeah, but --

MR. SERRITELLA:  I'm sorry, Your Honor.

THE COURT:  No, keep -- keep going.  I just -- I -- I found the allegations of awareness to be extremely conclusory.  And I -- I just -- I don't know, candidly, that they suffice, particularly in -- in the context of aiding and abetting fraud.  So -- so I'm -- I hear you, but I mean, I'm -- I -- I'm remaining -- well, I'm remaining a bit skeptical.

Keep going.

MR. SERRITELLA:  Okay, so the -- so there's statements from Hayden Adams about how he was aware when he was creating this platform that it was going to be used for fraudulent activity.  There are studies that were out there that Uniswap was aware of that we pleaded in the Complaint about knowledge of fraud.

And in addition, if you look at the cases on this, at the pleading stage, you're looking at a strong inference of fraud or conscious turning away.  And so here, this -- this -- oh, and another thing I

forgot to mention, Your Honor, is that Uniswap was delisting tokens. They were aware there were problems with tokens. They were delisting them on the interface. Now, we're not talking about the protocol. We're talking about the interface.

So at what point does -- you know, you could say that there is rampant fraud on this platform that they knew of. And if 99% of the tokens on the platform are fraudulent, and they're aware of that, well, at that point, that gift has passed the pleading stage.

THE COURT: Sure, but once again, I guess -- I mean, I thought I had looked with care at your Complaint, but apparently I have not, because I would have thought that the idea of delisting tokens would have been indicative of an attempt to prevent fraud. And unless they were delisting -- it's very strange to have it turned around. And therefore, aha, you delisted a few tokens. You must have known that there was fraud. But you'll try and explain to me your argument.

MR. SERRITELLA: So I can't get into the reasons why. I don't know why they would, you know, choose one -- some tokens over others. I believe some of the tokens they delisted there, there was a

concern that they might have been considered securities or whatever the case may be.  But if we look at the way that this whole structure was set up in the concept of decentralization, I think defendants have got a real problem because once they start delisting tokens, then there's, essentially, acknowledgment of problems with those tokens.  And so I think that they were selective in how they did that.

And here --

THE COURT:  Imagine 1,000 tokens on the Uniswap system, and Uniswap delists five for any reason, perhaps because they were somehow improper, perhaps because they just didn't like them, perhaps because they were low sellers, you're suggesting that the delisting of a tiny percentage of tokens available on their system amounts to knowledge or conscious avoidance for -- for purposes of either fraud or aiding and abetting?

MR. SERRITELLA:  Well -- well, Judge, that -- frankly, the delisting point goes more to substantial assistance.  It shows that they -- they could easily, by pushing a couple of buttons, remove tokens from the interface.

THE COURT:  I see.

MR. SERRITELLA:  And it really goes to that allegation more than I -- so I don't want to mince my words here, and if I wasn't clear, I apologize, but if you -- if you look at what we pleaded in the Complaint regarding these pump-and-dump schemes and a random snapshot of any of the activity on the Uniswap protocol through the interface -- again, through the interface -- it is clear that the vast majority of them are fraudulent.

And these are not -- these are sophisticated guys.  Hayden Adams, he created this thing.  He knows how it works.  He's well aware that the vast majority of these tokens are fraudulent. Anyone that looks at any of these blockchain explorers can see that, can see the activity, see the pump-and-dump scheme, in and out, gone.  They know it.  They know what's going on.  That's not to say there aren't some tokens or some of these pairs that aren't fraudulent.  We know that, right?  We know that there was the Ethereum to Wrapped Bitcoin and USDC and some of these pairs that were purportedly legitimate.  We're not talking about those, but those are a handful, the sea of thousands of tokens that were launched on a whim, and then the issuers disappeared.  They knew this was going on.

THE COURT:  All right, I guess I understand the argument.  And you've decided that the interfaces go because the protocols were smart contracts that I didn't find to be implicating the securities laws.

Okay, what else do you want me to know, sir, before I turn to Mr. Greenfield?

MR. SERRITELLA:  So, just to be clear, Judge, it's not just that it's the way to go.  I mean, we did argue this and pleaded this in the original go-around, the interface, again, was -- we've always maintained this -- was controlled by -- by Uniswap.

I do want to just touch on the 349 --

THE COURT:  Sir, let me then stop you for a moment.  I'm just going to ask you to stop for a moment.

You began our discussions by saying that you needed to focus more on the interface, and that the protocols took center stage.  That's -- that is -- that is, in fact, the case, so it may be in there.  But I am saying I do think this is a pivot from your original theory.

Please continue.

MR. SERRITELLA:  Thanks, Judge.  So I just

want to touch on the 349 and consumer protection claims for a moment.

The Donovan case, just to be clear, one of the reasons why we cited it -- and again, we're doing a short pre-motion letter, so we're limited in what we can say -- is those claims -- there is a whole body of law that -- it's been out there for a long time that those types of claims, you cannot plead in securities cases. There's tons of New York law on that. And there's been a recent movement in the last few years, either while this motion was pending or after it was fully briefed, where courts are now allowing -- I even believe there's a recent Court of Appeals decision that are broadening the scope of 349.

And so that's one basis in terms of allowing us, we would argue, to amend where leave should be freely given. We're not trying to -- I think, as the defendants said in their response that, you know, the law was always the same. That's just not the case. And given -- I think Your Honor mentioned it correctly or would agree with it, in light of the 2nd Circuit precedent, given that we have a decision now where Your Honor decided, and the 2nd Circuit decided that the securities laws

don't stretch to cover the activity in this case, well, then that alone opens up the door to claims under 349 and other consumer protection laws.

THE COURT:  Okay, Mr. Greenfield, do you want to be heard?

MR. GREENFIELD:  Yes, thank you.  I do have a lot to say about the pre-motion letters and the pre-motion conference, but I'm going to hold back. I would just like to respond quickly to the last thing.

THE COURT:  In all seriousness, sir, don't hold back.  I'd rather -- because I'm not going to guarantee the parties that I'd give you oral argument in the future, so I don't want you -- I clerked for a judge who used to joke about attorneys suffering from undelivered argument.  Tell me everything that you came to this conversation to tell me, and that's fine.  I'm giving both of you the floor.

Go ahead.

MR. GREENFIELD:  All right, thank you, Your Honor.

I think, fundamentally, we just dispute the idea that the 2nd Circuit's decision somehow gives plaintiffs an opportunity for a do-over here.  You

know, the federal security claims were dismissed. It seems like plaintiffs see the writing on the wall for their existing state claims, and they want to try something different.  And this is just the type of kind of iterative approach to pleading that, you know, the 2nd Circuit and Your Honor has rejected in the past, particularly where plaintiffs have had opportunities to amend in the past and have made a deliberate strategic decision not to do so, right?

They -- they amended back in September of 2022 to add -- specifically to add state law claims. They chose not to add consumer protection claims at that point.  They had a chance to amend again after seeing defendant's pre-motion letters and the pre-motion conference.  In those pre-motion letters, by the way, defendants expressly disputed that the tokens at issue were securities.  And you know, so -- so they'd known that that was an issue.  They acknowledged that the -- at the pre-motion conference that -- you know, they said they read our letters and didn't see anything they didn't already anticipate, and they want to stand by their pleadings.  So they know that's an issue.  They could have pleaded in the alternative.  You know, if the extent the tokens are not considered securities,

you know, we're asserting consumer protection claims.

There hasn't been any change in federal law. There's not been any change in state law that they identify, neither this Court nor the 2nd Circuit even addressed, because it didn't need to, whether the tokens were securities. So that hasn't changed at all. And the -- I think, as we pointed out in our letter, the Donovan case that they -- that they cite is a great example of plaintiffs believing in the alternative securities claims and consumer protection claims. So they could have done that. I think it is undue delay. I think we are prejudiced by, you know -- or would be prejudiced by having to, you know, have another amendment here, having all the, you know, costs and burdens of doing another round of motion to dismiss briefing and the delay that goes along with that.

On the futility point, I think it's pretty clear if you look back at their amended Complaint that all of the alleged deceptive conduct is by these third-party issuers and not by labs. They have something like, If I recall, 500 paragraphs in a row of allegations of wrongdoing by these third parties. That's not enough to state a claim, as we

already have briefed in our motion to dismiss, for aiding and abetting.

There's no allegations of specific knowledge of any of the specific frauds that plaintiffs say they were victims of.  The only thing that they allege is kind of -- kind of these vague, conclusory, generalized allegations that defendants knew or must have known or should have known that there were -- you know, that there was some, you know, fraud by issuers using the protocol.

I'm glad to hear Mr. Serritella is finally -- finally distinguishing between the interface and the protocol.  The protocol is not something that is under lab's control at all.  It's just software that is out operating on the blockchain.  It has no control over who uses it or what tokens they issue or trade there.  The interface is, you know, just one way that folks can access the protocol.  A lot of people access it not through the interface.  My understanding is that the interface only handles about 10% of traffic anyway. But there's no allegations of specific knowledge of the fraud that's alleged here.  There's no allegation of substantial assistance with that fraud.

They point in their Complaint only to inaction, that, you know, we should have done more to prevent it, but inaction is -- is clearly not sufficient under New York law.  And, you know, I think that -- I think there's -- there's no real distinction here between the claims that they would be adding on these points because they still would have to plead deceptive conduct by the defendants, and that it was defendant's own deceptive conduct that, you know, proximately caused their injury.

That's clearly not the case, and I think, you know, what the Court has already found in connection with the federal securities claims would apply equally to these proposed new claims that -- you know, specifically that, you know, a developer, software developer, cannot be held liable for misuse of software by -- by third parties.  So, you know, I -- I think -- I think there was undue delay.  I think there's prejudice, and I think these -- these new -- these new claims would be futile for the same reasons that their existing claims can't survive.

I think our bottom line is, you know, the 2nd Circuit has remanded the case in order for the Court to address the state law claims.  And that's, you know, respectfully, what we're asking the Court

to do.  We've already fully briefed those, our motion to dismiss those claims.

THE COURT:  Just on the last point that you've made, Mr. Greenfield, are you suggesting that somehow the mandate rule forecloses me from permitting amendment?  Are you suggesting that I must read the mandate only to resolve the state law claims and not to consider amendment pre or post resolution of those claims?  Or are you suggesting that I should consider Rule 15 and the applicable 2nd Circuit case law to -- and exercise the discretion that I do have not to permit further amendment.  I just want to make sure I understand, sir.

MR. GREENFIELD:  Yeah, yeah, apologize about that.

THE COURT:  No, no, no.  No apologies at all, sir.  I just -- you know, I -- when things come back -- let me just say this:  I -- I don't enjoy getting reversed by the 2nd Circuit.  I don't want to get reversed a second time by the 2nd Circuit on this case.  So I -- I appreciate that.

And, sir, not to cut you off, I want to make sure I -- you began that paragraph by saying that was your -- that was the bottom line, but I

want to -- I don't want to derail you if you had other arguments to make.

MR. GREENFIELD:  No, no, I think that -- that -- that's everything.  Maybe I'll -- I'll just -- since you gave me the opportunity, I'll add one thing, which is, you know, on the jurisdiction over the state law claims, I think that their Complaint was a little confusing because they cited this CAFA statute, but also cited the supplemental jurisdiction statute.

And I think the proper thing to have done at the time, after the Court came down with its decision, would have been to, you know, raise it with Your Honor in the first instance, rather than going up on appeal at that point and kind of, you know, engaging in, I think, you know, piecemeal litigation or piecemeal appeal.  Had they come to Your Honor and -- and kind of raised this issue at the point -- at that point, I -- presumably, the Court would have addressed the state law claims at that point as they existed.  And it seems a little bit unfair and -- and upside down to allow an amendment now because they've chosen to kind of remain silent at that point, strategically, and take their appeal and then come back down with that

ruling and try to, you know, switch gears at this point, so...

THE COURT:  Well, I appreciate that a lot.

MR. GREENFIELD:  With that, I'll --

THE COURT:  You'll cede the floor.  Thank you.  And I'll underscore that point.  In my lifetime as a judge, I have granted reconsideration motions.  I'm not one of those judges who's reflexively against them.  So I agree with you.  A whole lot of drama could have been spared if only plaintiffs had cared enough or trusted me enough to come to me with a reconsideration motion.  But, Mr. Greenfield, you and I are where we are as a result of the conduct that they've engaged in.

So, Mr. Serritella, why don't you tell me, please, in reply, why Mr. Greenfield is all wrong.

MR. SERRITELLA:  So I do want to touch on something, Judge, regarding the consumer protection claims.

And so part of pleading, let's say, 349 -- GBL349, you have to show that there were deceptive acts or at least allege that there were deceptive acts.  And deceptive acts can also be pled or shown by omission.  And there's case law on that which we could cite.  And I think that comes into play here

because Uniswap was, from the very beginning, promoting this platform and their interface as something that users could use, and it was consumer oriented, that was safe and better than centralized exchanges.  But they never disclosed what goes on, on the platform.

And I was just looking at our Complaint again, Your Honor, because you were asking for some of the allegations.  If you look at Page 47, as an example, of the Complaint -- or the amended Complaint, there are some detailed allegations about scam tokens and Uniswap's knowledge of them.  And this is what I was referring to earlier.  If you look at Paragraph 193 on Page 49 of our Complaint, there's an allegation of a 24-hour snapshot of over 450 new tokens launched in just that period of time.  And if you look at those tokens, and you look at some of these websites that are out there that look at the tokens, like the Honeypot website, they're all fraudulent.

So Uniswap is aware that this is going on, on their -- their platform, or at least through their interface, every day.  And so if you just keep a long focus on deceptive acts in connection with consumer protection law claims, that is

quintessential deceptive acts by omission.  And if you look at some of the -- the law that's out there on pleading knowledge when it comes to aiding and abetting fraud, I don't think there's any issue here there was substantial assistance through the interface.  But if you look at -- if you look at --

THE COURT:  Mr. Serritella, you're cutting out.  I'm going to ask you to repeat the last sentence.  I'm not hearing you at all.  Thank you.

MR. SERRITELLA:  I'm sorry, I don't think there's any -- I don't think there could be any debate here that there was substantial assistance, because if we look at the use of the interface, that's clearly substantial assistance.  So the -- the only issue, the only question becomes, did -- did Uniswap and Adams have knowledge of the fraud?  And on a motion to dismiss, if you look at some of the case law that's out there, which we're happy and will brief, and we already have briefed some of this, I believe, in our prior motion practice, it is clear that you can plead a strong inference of fraud by conscious avoidance.  And you can also plead it by facts like here, where there's awareness that there's fraudulent activity going on.

We're not talking about cases -- and I

believe they cite some of these in their papers. We're not talking about aware awareness of red flags that might give rise to fraudulent behavior. We're talking about awareness of actual fraud. That is a whole different ballgame. That's what's going on here. And we do plead that.

THE COURT: Show me where.

MR. SERRITELLA: So, Your Honor, this is what I was referring to. If you look at Page 47 of our Complaint as an example in Subsection B where it says Uniswap acknowledges but continues to allow scams, there's a whole slew of allegations regarding scam tokens that are being sold and traded on the platform. Again, that are being accessed to the interface. And Uniswap is even acknowledging some of this. And also, as I mentioned in 193, a snapshot of just a 24-hour window of their platform shows that these tokens are all fraudulent. Of course they're aware of it.

THE COURT: All right, what else would you like me to know, sir?

MR. SERRITELLA: Well, the only other thing I would say, Judge, is I think if we make a motion to amend the Complaint, in doing that, obviously we would attach the proposed amendment claim, I think

that would take care of everything in one motion because, obviously, we're going to have to address futility, and it would be efficient.  And I would think that whatever ruling Your Honor issues, because I presume you'll address futility, it would address all the issues that would come -- come into play on a 12(b)(6) motion.

And I'm not going to say much more --

THE COURT:  Sir, please pause.  Thank you.

That's where I'll disagree with you.  If I amend it, it's as a result of this conversation. I've had motions to amend that include the proposed pleading.  It is no different than a motion to dismiss.  It is no more inefficient -- no more efficient or inefficient than the motion to dismiss. So I appreciate that.

I'll make the decision.  And -- and if I decide in your -- I decide in your favor, then I'm confident Mr. Greenfield will want an opportunity to move to dismiss.  And if I decide against you, then I, of course, have to take the -- I have to resolve the remaining claims.  But -- but I -- my own experience teaches me that the motion to amend path is in no way more efficient than just a straight motion to dismiss.  So I -- this is your opportunity

to tell me why you -- why you need to amend.

Go ahead, sir.

MR. SERRITELLA:  Understood, Your Honor, and I -- and to put it more succinctly, I do think that an amended Complaint would just be more efficient, as we put in our -- stated in our pre-motion letter.  It would -- we could strip out allegations that just don't matter anymore and focus on the allegations that do.  I think that would be beneficial to the parties and the defendants to have a more streamlined Complaint.

And the main set of claims that we would be adding are the Sector Practices Act claims, which, again, there's been a change in the law on this, and the decision that was affirmed sort of changes the circumstances as well.  We're not doing this -- we're obviously doing this in good faith.  We're not trying to delay or anything like that.  We're just -- these are complicated issues.  This is a complicated space, and we're just trying to address some of that complication in the best manner we can.

THE COURT:  All right, Mr. Greenfield, I don't normally allow sur-reply, but there are a few things in the reply that went a little beyond what you were saying.  Any -- any last words from your

perspective, sir?

MR. GREENFIELD:  Yeah, just very quickly.

I think that the assertion that the interface somehow constitutes substantial assistance with the fraud makes no sense to me.  The interface just allowed.  There's just one way that users could access the protocol.  It's got nothing to do with assisting these third parties in whatever fraudulent schemes they allegedly were involved in.

In terms of knowledge of fraud, as I said before, it's just kind of these very broad allegations that, you know, defendants were, you know, aware of fraud, but it says nothing about the specific fraudulent schemes that are at issue in the Complaint.

THE COURT:  Do you want to -- actually, do you want to engage on, I guess, Page 49 or thereabouts, the -- these 24-hour snapshots that are being discussed by your adversary?  Do you think they're indicative of anything?

MR. GREENFIELD:  No, I think none of that has anything to do with the specific frauds that they allege they were victims of, right?  They go through, in the next section, kind of on a token-by-token basis, starting on Page 50, here's

the specific tokens that plaintiffs purchased that they allege were scams.

MR. SERRITELLA:  Yep.

MR. GREENFIELD:  And this kind of introductory material just -- I think it's just suggesting, if anything, that, you know, they're aware of complaints about scam coins on the protocol, which, you know, again, is beyond their control.

One other point that, you know, I -- I hesitate to raise something new.

THE COURT:  Oh, no.  Yes, go ahead.

MR. GREENFIELD:  But I -- I think -- you know, I think -- also relating to futility, I think the statute of limitations is going to be an issue. There -- there's not a lot of information in their letter about this, but we -- we don't agree that the proposed consumer protection claims would relate back to their aiding and abetting claims, largely for the reasons that I've discussed already, that the aiding and abetting claims are about -- are expressly about fraud by third parties, and their consumer protection claims would be about -- I'm not sure exactly what, but some kind of omissions relating to use of the interface, it sounds like.

So I don't think they relate back.

The GBL Section 349 has a three-year statute of limitations. I think the other two statutes from North Carolina and Idaho have similar statute of limitations, and I don't think it would reach back to the claims at issue here. So I just want to note that for the record, if Your Honor is going to decide, you know, based on the letters in this call.

THE COURT: Okay, thank you. I understand that.

All right, let me do this: I actually thought I had a decision, but now I don't think I have a decision, and I want to take time and think about what you've said. So you will probably hear from me, not today, I can tell you that, but in the next couple of days, and I will -- Mr. Greenfield, let me imagine, and don't read too much into this, but if I'm allowing amendment, you want to move to dismiss, I assume, right? There's no -- there's no answer you're going to suddenly file, correct?

MR. GREENFIELD: Yeah, there would be a motion to dismiss for sure.

THE COURT: Yeah, okay. All right. That won't -- the fact of that will not impact my

decision.  It's just -- I just had to confirm what I already knew.

All right, thank you both.  This was really -- maybe not for you, but for me, this was really interesting and thoughtful, and I do want to take a little time to think about it, and I will. And I'll get back to you as soon as I can.  Thanks to you.  Thanks to your colleagues who are also on the line.  We are adjourned.  Take care, everyone.

MR. GREENFIELD:  Thank you, Your Honor.

MR. SERRITELLA:  Thank you, Judge.

                        C E R T I F I C A T E


     I, Marissa Lewandowski, certify that the

foregoing transcript of proceedings in the case of

Risley v. Universal Navigation Inc. et al, Docket

#1:22-cv-02780-KPF, was

prepared using digital transcription software and is

a true and accurate record of the proceedings.




Signature   *Marissa Lewandowski*___

                  Marissa Lewandowski


Date:        April 14, 2025