UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NESSA RISLEY, JAMES FREELAND, ROBERT SCOTT, ANDREW CARDIS, and DEAN MEYERS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>UNIVERSAL NAVIGATION INC. dba UNISWAP LABS and HAYDEN Z. ADAMS,<br><br>                    Defendants. | No. 1:22-cv-2780-KPF<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 3

   I.   Uniswap Hosts the Interface on its Webservers, the Main Gateway to the Protocol .......... 3

   II.  Issuers Have Launched Tens of Thousands of Uniswap Pools and Provided Liquidity
       Through the Interface ......................................................................................................... 5

   III.  Rampant Fraud on the Protocol, Conducted Through the Interface ....................................... 6

   IV.  Defendants Are Aware of the Fraud Perpetrated Through the Interface and Do Not
       Prevent It or Even Warn Users ......................................................................................... 8

ARGUMENT ........................................................................................................................ 9

   I.   Plaintiffs State a Claim for Aiding and Abetting Fraud ......................................................... 9

       A.   For an Aiding and Abetting Fraud Claim, Plaintiffs Need Only Allege
            Knowledge of the "Primary Violation" ..................................................................... 9

       B.   Plaintiffs Sufficiently Plead that Defendants Had Knowledge of the Fraud .............. 12

       C.   Plaintiffs Adequately Plead Substantial Assistance ...................................................... 14

       D.   Plaintiffs Plead Proximate Cause ............................................................................... 17

   II.   Plaintiffs Sufficiently Plead Aiding and Abetting Negligent Misrepresentation ................ 17

   III.  Plaintiffs Sufficiently Allege that Defendants Violated State Unfair and Deceptive
       Practices Acts ................................................................................................................... 19

       A.   Plaintiffs Have Sufficiently Alleged Claims Under GBL § 349 .................................. 19

       B.   Plaintiffs Sufficiently Allege Claims Under the NCUDTPA and ICPA .................... 22

   IV.  Plaintiffs Sufficiently Allege Unjust Enrichment .................................................................. 24

   V.   Section 230 of the Communications Decency Act Does Not Bar Plaintiffs' Claims ........ 24

   VI.  Plaintiffs State Claims Against Hayden Adams, the Mastermind Behind Uniswap,
       and Delaware Law Cannot Save Him Even If It Applies ....................................................... 27

CONCLUSION ................................................................................................................... 29

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*601 E. 226 St. LLC v. United States Liab. Ins. Grp.*,
    2025 U.S. Dist. LEXIS 57848 (S.D.N.Y. Mar. 27, 2025) ......................................................20

*A.B. v. Salesforce, Inc.*,
    123 F.4th 788 (5th Cir. 2024) ......................................................................................25, 26

*ABF Capital Mgmt. v. Asking Capital Mgmt., L.P.*,
    957 F.Supp. 1308 (S.D.N.Y. 1997)...............................................................................15, 17

*Accent Delight Int'l Ltd. v. Sotheby's*,
    2023 U.S. Dist. LEXIS 34394 (S.D.N.Y. Mar. 1, 2023) ............................................12, 14, 16

*Advanced Knowledge Tech., LLC v. Fleitas*,
    2021 U.S. Dist. LEXIS 247723 (S.D.N.Y. 2021) ...................................................................19

*AIG Fin. Prods. Corp. v. ICP Asset Mgmt., LLC*,
    108 A.D.3d 444 (1st Dep't 2013) ........................................................................................12

*Anwar v. Fairfield Greenwich, Ltd.*,
    728 F.Supp.2d 372 (S.D.N.Y. 2010).........................................................................10, 12, 14

*Azima v. Del Rosso*,
    2021 U.S. Dist. LEXIS 237463 (M.D. N.C. Aug. 9, 2021).....................................................22

*Berdeaux v. OneCoin Ltd.*,
    561 F.Supp.3d 379 (S.D.N.Y. 2021).............................................................................15, 17

*Broad-Bussel Family LP v. Bayou Grp. LLC*
    *(In re Bayou Hedge Funds Inv. Litig.)*,
    472 F. Supp. 2d 528 (S.D.N.Y. 2007)...................................................................................18

*California v. Meta Platforms, Inc.*
    *(In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.)*,
    753 F.Supp.3d 849 (N.D. Cal. 2024) ....................................................................................26

*Colvin v. Roblox Corp.*,
    725 F.Supp.3d 1018 (N.D. Cal. 2024) ..................................................................................26

*Decoursey v. Murad, LLC*,
    673 F. Supp. 3d 194 (N.D.N.Y. 2023)...................................................................................21

*Diep v. Apple, Inc.*,
    2022 U.S. Dist. LEXIS 159138 (N.D. Cal. Sep. 2, 2022) .......................................................27

*Doe v. Internet Brands, Inc.*,
    824 F.3d 846 (9th Cir. 2015) ...........................................................26

*Duspiva v. Fillmore*,
    154 Idaho 27 (2013).........................................................................24

*Edmar Fin. Co., LLC v. Currenex, Inc.*,
    2023 U.S. Dist. LEXIS 87620 (S.D.N.Y. May 18, 2023) ....................16

*In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs., & Prods. Liab.*
    *Litig.*,
    2022 U.S. Dist. LEXIS 255815 (W.D.N.Y. Aug. 16, 2022) ................20

*Foley v. IRBsearch, LLC*,
    2025 U.S. Dist. LEXIS 59138 (S.D.N.Y. Mar. 28, 2025) ...................27

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)................................................................27

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
    479 F.Supp.2d 349 (S.D.N.Y. 2007)........................................10, 12, 14

*FTC v. LeadClick Media, LLC*,
    838 F.3d 158 (2d Cir. 2016)..............................................................25

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    94 N.Y.2d 330 (1999) ......................................................................22

*Goodman v. Sharp*,
    2022 U.S. Dist. LEXIS 123138 (S.D.N.Y. July 12, 2022) ..................24

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender*
    *& Co.*,
    37 N.Y.3d 169 (2021) ......................................................................22

*Hughes v. BCI Int'l Holdings, Inc.*,
    452 F.Supp.2d 290 (S.D.N.Y. 2006)..................................................18

*Jacobs v. Barclays Bank PLC*,
    2025 U.S. Dist. LEXIS 3256 (S.D.N.Y. Jan. 7, 2025) .......................12

*JP Morgan Chase Bank v. Winnick*,
    06 F.Supp.2d 247, 256 (S.D.N.Y. 2005).............................................14

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)..............................................................24

*King County v. IKB Deutsche Industriebank AG*,
  863 F.Supp.2d 288 (S.D.N.Y. 2012)...................................................................18

*Krys v. Pigott*,
  749 F.3d 117 (2d Cir. 2014).................................................................10, 12

*Krys v. Sugrue (In re Refco Inc.)*,
  No. 07-md-1902, 2012 U.S. Dist. LEXIS 41298 (S.D.N.Y. Jan. 17, 2012)...........................17

*Kyszenia v. Ricoh USA, Inc.*,
  583 F.Supp.3d 350 (E.D.N.Y. 2022) ...............................................................19, 20

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
  10 F.Supp.3d 504 (S.D.N.Y. 2014).................................................................19

*Lerner v. Fleet Bank, N.A.*,
  No. 98-CV-7778, 2005 U.S. Dist. LEXIS 18209 (E.D.N.Y. Aug. 26, 2005)...........................17

*In re Lindt Sprüngli (USA), Inc.*,
  2024 U.S. Dist. LEXIS 160836 (E.D.N.Y. Sept. 6, 2024)...............................19, 20

*Lira v. Felton*,
  2023 N.C. App. LEXIS 46 (N.C. Ct. App. Feb. 7, 2023).......................................22

*Litster Frost Injury Laws., PLLC v. Idaho Injury Law Grp., PLLC*,
  171 Idaho 1 (2022).................................................................................23

*Maldonado v. Town of Greenburgh*,
  460 F. Supp. 3d 382 (S.D.N.Y. 2020)..............................................................19

*Martin Hilti Family Tr. v. Knoedler Gallery, LLC*,
  137 F.Supp.3d 430 (S.D.N.Y. 2015)..................................................14, 16, 17

*Nabatkhorian v. Nabatkhorian*,
  127 A.D.3d 1043 (2nd Dep't 2015)...............................................................11

*Nilroy, Inc. v. Lowe's Cos.*,
  2017 U.S. Dist. LEXIS 314 (W.D.N.C. Jan. 3, 2017).........................................22

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015)....................................................................19

*Peguero v. 601 Realty Corp.*,
  58 A.D.3d 556 (1st Dept. 2009)................................................................27

*Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  652 F.Supp.2d 495 (S.D.N.Y. 2009)............................................................14

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.*,
   2023 U.S. Dist. LEXIS 217574 (C.D. Cal. Dec. 5, 2023) .......................................27

*Primavera Familienstiftung v. Askin*,
   130 F.Supp.2d 450 (S.D.N.Y. 2001)..................................................................16

*Pryor v. Jaffe & Asher, LLP*,
   992 F.Supp.2d 252 (S.D.N.Y. 2014)..................................................................14

*Ratermann v. Pierre Fabre USA, Inc.*,
   651 F. Supp. 3d 657 (S.D.N.Y. 2023)................................................................27

*RD&J Props. v. Lauralea-Dilton Enters., LLC*,
   165 N.C. App. 737 (N.C. Ct. App. 2004) ...........................................................22

*Ricci v. Teamsters Union Local 456*,
   781 F.3d 25 (2d Cir. 2015)........................................................................26, 27

*Risley v. Universal Navigation Inc.*,
   690 F.Supp.3d 195 (S.D.N.Y. 2023)..............................................................3, 21

*Rothschild v. GM LLC*,
   2020 U.S. Dist. LEXIS 187300 (E.D.N.Y. Sept. 30, 2020).....................................20

*Saveene Corp. v. Remo*,
   2021 U.S. Dist. LEXIS 198342 (S.D.N.Y. Oct. 14, 2021) ......................................27

*Shiamili v. Real Estate Group of N.Y., Inc.*,
   17 N.Y.3d 281 (2011) ...................................................................................25

*Silvercreek Management v. Citigroup, Inc.*,
   248 F.Supp.3d 428 (S.D.N.Y. 2017)......................................................17, 18, 19

*Silverman v. Citibank, N.A.*,
   2023 U.S. Dist. LEXIS 198786 (S.D.N.Y. Nov. 6, 2023).........................10, 11, 14

*Tristan v. Bank of America*,
   2023 U.S. Dist. LEXIS 111961 (C.D. Cal. June 28, 2023) ......................................17

*United States v. EZ Lynk SEZC*,
   2024 U.S. Dist. LEXIS 57283 (S.D.N.Y. Mar. 28, 2024) .......................................26

*Water Damage Mitigation, Inc. v. Jordan*,
   2024 N.C. App. LEXIS 918 (N.C. Ct. App. Dec. 3, 2024) ......................................22

*Yuille v. Uphold HQ Inc.*,
   686 F.Supp.3d 323 (S.D.N.Y. 2023).................................................................22

**Statutes**

47 U.S.C. § 230.................................................................................................3, 24, 25, 26

Idaho Consumer Protection Act § 48-603 ..........................................................2, 22, 23

New York General Business Law § 349..............................................................2, 19, 20

North Carolina Unfair and Deceptive Trade Practices Act ...............................2, 22, 23

Plaintiffs Nessa Risley, James Freeland, Robert Scott, Andrew Cardis, and Dean Meyers (collectively, the "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), submit this memorandum of law in opposition to the motion to dismiss of Defendants Universal Navigation Inc. dba Uniswap Labs ("Uniswap") and Hayden Z. Adams ("Adams").

## PRELIMINARY STATEMENT

This Second Amended Complaint ("SAC") arises out of Defendants' aiding and abetting the sale of thousands of scam tokens on the Uniswap Protocol (the "Protocol") through an interface (the "Interface") that Defendants indisputably created, own and control. Anonymous scammers launch hundreds of new digital tokens on the Protocol every day *by using the Interface* to pair them with Ether (ETH) in liquidity pools. Defendants encourage these scammers to use the Interface to provide liquidity for their tokens through instructions on the Uniswap website and promotion of the liquidity fee the issuers will receive. Plaintiffs and the Class, like thousands of other consumers, used the Interface to purchase these scam tokens. Plaintiffs invested in 38 fraudulent tokens (the "Tokens") through the Interface and lost a substantial portion or all their initial investment. Faced with the daunting task of addressing Plaintiffs' well-pleaded allegations of Defendants' complicity in this fraudulent activity, Defendants resort to misstating the law, ignoring key allegations, mischaracterizing straightforward allegations and peddling new, yet flawed, *legal* arguments that they raise for the first time in three years, despite having the opportunity to raise them in their first motion to dismiss, various pre-motion letters and conferences.

First, Plaintiffs sufficiently plead that Defendants aided and abetted fraud. Defendants do not dispute that Plaintiffs plead fraud against the issuers of the Tokens (the "Issuers") as Plaintiffs set forth in nearly 500 paragraphs in the SAC. Defendants do not even dispute that Plaintiffs sufficiently allege Defendants knew the Tokens were fraudulent, including through Defendants'

1

own statements, user complaints directly to Defendants, and data (showing fraud by the minute) and information available to Defendants. Instead, Defendants assert a new legal theory that the "relevant fraud" is not the primary violation (i.e., the Issuers defrauding of investors through the sale of fraudulent tokens) but the misrepresentations and omissions of Issuers. However, Defendants ignore caselaw holding that knowledge of the primary violation is what matters for aiding and abetting fraud. Defendants conflate the knowledge element of aiding and abetting with one of the elements or components of the underlying fraud of the Issuers (misrepresentations/omissions), which Plaintiffs must and do plead.

Plaintiffs' allegations of substantial assistance are more than sufficient. Defendants created a platform that is littered with fraudulent tokens (98% of the entire Protocol according to one study) and encourage and provide instructions to issuers on how to use the Interface to provide liquidity to these fraudulent tokens. Defendants attempt to liken the transactions conducted through the Interface to that of "routine" and legitimate banking transactions is not just outlandish and factually flawed, but a misapplication of law. For substantial assistance, what matters is whether the aider and abettor substantially contributed to the fraud (not whether the transactions were routine) and Plaintiffs undoubtedly allege Defendants did so.

Second, Plaintintiffs sufficiently plead statutory consumer protection violations under New York, North Carolina and Idaho laws. As to New York General Business Law § 349 ("GBL § 349"), Plaintiffs certainly plead that Defendants had unique information concerning the Tokens that Plaintiffs could not reasonably have obtained, including Token specific user complaints of fraud and information and data concerning Defendants' awareness of fraud on the Protocol, including in connection with the Tokens. As to the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") and Idaho Consumer Protection Act ("ICPA"), Defendants' hosting

a platform (the Interface) that is a direct gateway to activity it knew was fraudulent and encouraging others to commit fraudulent acts against consumers through this platform are by their very nature immoral, unethical, unscrupulous, and substantially injurious types of practices consumer protection laws are designed to protect against.

Third, sticking with their theme of making new legal arguments they never raised previously, Defendants now argue Uniswap is immune from liability under Section 230 of the Communications Decency Act and Adams under Delaware law, even though Defendants have always assumed New York law applies.  Section 230 does not apply here because Plaintiffs allege they swapped the actual Tokens through the Interface and not *information* about the Tokens as Defendants wrongly contend.  In addition, Plaintiffs do not allege Defendants published anything.  Plaintiffs allege Defendants aided and abetted the trading of digital assets, which hardly constitutes publication.  As to Adams' supposed newfound immunity, Plaintiffs allege he committed torts in his individual capacity and not merely because he is an officer of Uniswap.  Indeed, Adams created Uniswap, the Interface and the Protocol on his own and the SAC contains detailed allegations concerning Adams' knowledge of the underlying fraud, as well as his direct involvement in Uniswap's substantial contributions to it.  Adams even admitted that he and his team "consistently called the shots from day one."

For these reasons and reasons discussed herein, Defendants' motion should be denied.

## FACTUAL BACKGROUND

I.    **Uniswap Hosts the Interface on its Webservers, the Main Gateway to the Protocol**

Hayden Adams, the founder of Uniswap, created the Protocol, one of the largest crypto-asset exchanges in the world.  The Court is familiar with the Protocol and how it works.  *See* SAC ¶¶61-76; *Risley v. Universal Navigation Inc.*, 690 F.Supp.3d 195 (S.D.N.Y. 2023).  The vast majority of users of the Protocol access it through the Interface to conduct trades of crypto tokens.

SAC ¶47.  According to Uniswap, the Interface is "[a] web interface that allows for easy interaction with the Uniswap protocol."  SAC ¶44.  The Interface is immediately accessible to anyone by going to the following web address uniswap.org or app.uniswap.org:



SAC ¶44.  Defendants created the Interface, the main gateway to access the Protocol, and they exclusively own, control and operate the Interface, which they host on Uniswap's servers.  SAC ¶¶45, 47, 78.

Any person can access and use the Interface by connecting their crypto wallet to it without any barriers or restrictions.  SAC ¶46.  Plaintiffs purchased all the Tokens through the Interface. SAC ¶47.  Uniswap's own data confirms that trading on the Protocol is conducted almost entirely through the Interface.  SAC ¶¶47-50.  Defendants ignore this and cite a random tweet from an unknown third party named @mud2monarch, stating that 22.53% of trades on the Protocol

originate through the Interface, which, even if true, would still amount to millions of trades. In any event, the Class is limited to users of the Interface. SAC ¶3.

During the Class Period, most users, including Plaintiffs Risley, Freeland and Meyers, accessed the Interface exclusively through the "Wallet Method" on their smartphone. SAC ¶ 52. Other users accessed the Interface to conduct traders through the "Browser Method" on their personal computer. SAC ¶51.

## II.    Issuers Have Launched Tens of Thousands of Uniswap Pools and Provided Liquidity Through the Interface

Anonymous issuers use the Interface to launch hundreds of new tokens or token pairs every day. SAC ¶117. As of this filing, Uniswap boasts that the total trading volume on the "Uniswap Protocol" has surpassed $2.9 trillion, with 119.0 million "all time swappers" and $4.9 billion in "all time LP fees," without specifying what percentage of these trades were through the Interface. SAC ¶40; https://uniswap.org/. The total amount of trades is nearly 500 million with well over 50,000 token pairs, most of which are traded through the Interface. SAC ¶¶40, 47.

Part of what has made the Protocol one of the most frequented crypto exchanges, and one of the ones most ripe with fraud, is that it has no barriers or restrictions to anyone issuing a new token and the fact that Defendants incentivized liquidity providers to launch new tokens to reap massive profits through fees without ever needing to disclose their identity. SAC ¶¶72-75, 89. In fact, token issuers almost exclusively provide liquidity through the Interface, which is by far the easiest manner to provide liquidity to a pool on the Protocol. SAC ¶90. Uniswap provides detailed information on its website about liquidity provider fees and instructions on how to provide liquidity by using the Interface, which the Issuers relied on to launch the Tokens through the Interface. SAC ¶¶90-91; *see* https://support.uniswap.org/hc/en-us/sections/35918325712525-

Adding-Liquidity;    https://support.uniswap.org/hc/en-us/articles/20915582427917-How-to-add-liquidity-to-Uniswap-v2.

In October 2023, Uniswap implemented an "Interface Fee" on trades executed through the Interface.  SAC ¶81.  Currently, Uniswap charges a 0.25% Interface Fee on nearly all trades conducted via the Interface.  To date, users of the Interface have paid over $4 billion in fees to issuers of tokens and over $100 million in fees to Uniswap.  SAC ¶¶2, 81.

### III.    Rampant Fraud on the Protocol, Conducted Through the Interface

The vast majority of tokens traded through the Interface are fraudulent.  SAC ¶¶41, 117.  These fraudulent schemes include rug pulls and pump and dumps to name a few.  SAC ¶¶92-96.  According to a report from March 2022 (the "March 2022 Report"), which looked at a dataset of tokens launched on the Protocol from April 2020 through March 9, 2021, 97.7% were rug pulls/scams (26,957 tokens as scams/rug pulls and 631 tokens as non-malicious). SAC ¶97; *See* https://eprint.iacr.org/2022/350.pdf;    https://x.com/alex_valaitis/status/1587136114061557761.  Unsurprisingly, in the 24-hour period leading up to the filing of this SAC (as with the 24-hour period leading up to the first amended complaint), anonymous users launched approximately 450 new tokens or trading pairs (or, 1-5 per minute) on the Protocol and through the Interface.  SAC ¶¶117-19.  Many of these trading pairs had no liquidity left in them one day later, suggesting they were the subject of rug pulls.  *Id.*  Of the trading pairs that did still contain liquidity just one day later, many of them contained deficient metrics suggesting malicious code designed to scam consumers, while many others are likely honeypots (tokens that cannot be resold after being purchased by investors).  *Id.*

Plaintiffs plead in detail how the Issuers defrauded Plaintiffs and the Class (all persons who purchased Tokens through the Interface during the Class Period and were harmed thereby).  SAC ¶¶3, 124-582, 594-602.

The information concerning rampant fraud on the Interface was at all times readily accessible to Defendants. In response to reports that Uniswap was a haven for scam tokens and fraud, Uniswap acknowledged that the Protocol, via the almost nonexistent barriers to entry of the Interface, was creating a problem: "As the rate of token issuance accelerates, it has become increasingly difficult for users to filter out high quality, legitimate tokens from scams, fakes, and duplicates." SAC ¶101. Uniswap conceded that the trend was something "we expect will only accelerate in the future." *Id.* Since prior to inception of the Protocol and the Interface and thereafter, Hayden Adams made various statements demonstrating that Defendants were well aware of the fraudulent activity that would permeate the Protocol. SAC ¶102. For example, Adams appeared on a webcast and described "how easy it was to create liquidity," where the host even joked that he minted his own token "for funsies" and thought it was "absolutely crazy" that he could list any token "without permission." SAC ¶103. According to the v1 Whitepaper Adams drafted, "[c]ustom exchanges can have different curves, managers, private liquidity pools, ***FOMO [fear of missing out]-based ponzi schemes, or anything else you can think of***." SAC ¶104 (emphasis added); Exhibit 1 at 13.[1]

In addition, countless users of the Interface, including Plaintiffs and others, contacted Uniswap both directly and through social media asking Uniswap to take action to prevent or curb fraudulent activity. SAC ¶105. For example, Plaintiff Dean Myers informed Uniswap about the fraudulent activity in connection with the SAM token. Uniswap ignored his pleas for help and never removed the Token from the Interface, which would have prevented further harm. SAC ¶¶107-09. Plaintiff Nessa Risley emailed Uniswap on the day the Matrix Samurai scam occurred and asked for help. Uniswap ignored Risley's email, did not remove the scam token from the

---

[1] Unless otherwise noted, all exhibits referenced herein are attached to the accompanying Declaration of James R. Serritella.

Interface and even allowed the issuers to relaunch their token.  SAC ¶¶110-11.  Other users of the Interface, including those who purchased Tokens at issue here, complained to Uniswap about fraudulent activity in connection with the Tokens.  SAC ¶112.  Uniswap ignored these pleas for help and never took any steps to prevent the purchase of fraudulent tokens on the Interface and instead, on Discord, informed users that Uniswap could not help them.  SAC ¶¶113-14.

## IV.    Defendants Are Aware of the Fraud Perpetrated Through the Interface and Do Not Prevent It or Even Warn Users

Given Uniswap's control of the Interface, it can restrict the trading of tokens, which Uniswap has done on multiple occasions.  SAC ¶83.  For example, on July 23, 2021 and on August 21, 2022, Uniswap removed over 140 and 253 tokens, respectively, from the Interface.  SAC ¶¶83-86, 115-16.  During the Class Period, Defendants never presented users who accessed the Interface through the Wallet Method with any terms of service, disclaimers, disclosures, or information whatsoever about the Interface or the Protocol.  SAC ¶58.  At some point after April 23, 2021, Uniswap began prompting users accessing the Interface through the Browser Method with a prompt about the Uniswap Terms of Service, but never required users to actually review the Terms of Service to use the Interface.  SAC ¶59.  During the Class Period, Uniswap never provided any prompts or warnings to users of the Interface that tokens were fraudulent. SAC ¶121.

Today, the Interface provides warnings to those who may unknowingly try to purchase specific tokens which have been flagged before the user can purchase the token.  SAC ¶121.  Below is an example of the warning that appears on the Interface today (but not during the Class Period) when a user attempts to trade for a token not "traded on leading U.S. centralized exchanges" or is a honeypot (a scheme where a user can buy but not sell her token):



*Id.*; Samsung snapshot taken on July 10, 2025.

Additional new warning labels on the Interface, described on Uniswap's website, include tokens flagged as malicious, 100% sell fee detected (when selling, token creator receives all the value, not the seller), impersonator tokens, honeypots, spam, high fees, tokens not traded on leading U.S. centralized exchanges, and those tokens not supported on the Interface. Uniswap now has a webpage titled "What are token warnings?", which can also be accessed through the "Learn more" link in the warning pop up. SAC ¶122; https://support.uniswap.org/hc/en-us/articles/8723118437133-What-are-token-warnings. None of these warnings were present during the Class Period (i.e., April 5, 2021 to April 4, 2022). SAC ¶¶3, 121-22.

## ARGUMENT

### I.    Plaintiffs State a Claim for Aiding and Abetting Fraud

#### A.    For an Aiding and Abetting Fraud Claim, Plaintiffs Need Only Allege Knowledge of the "Primary Violation"

"To establish liability for aiding and abetting fraud under New York law, 'the plaintiffs must show: (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that

the defendant provided substantial assistance to advance the fraud's commission.'" *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (*quoting Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006)). "The defendant's actual knowledge must be of the **'*primary violation'—that is, the fraud that harmed the plaintiff***[.]" *Silverman v. Citibank, N.A.*, 2023 U.S. Dist. LEXIS 198786, at *27 (S.D.N.Y. Nov. 6, 2023) (emphasis added). *See also Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F.Supp.2d 349, 360 (S.D.N.Y. 2007) ("In order to recover on a claim for aiding and abetting fraud, plaintiffs [are] obliged to establish that [] Defendants committed *a primary wrong -- that is, that they defrauded plaintiffs*, that the moving defendants **knew of the primary violation**") (emphasis added); *Anwar v. Fairfield Greenwich, Ltd.*, 728 F.Supp.2d 372, 443 (S.D.N.Y. 2010).

As to the first element, Plaintiffs sufficiently plead the existence of a fraud, and Defendants do not argue otherwise. Moreover, there is no question that the primary violation was the Issuers' defrauding of investors, which they consummated by selling scam Tokens through the Interface. SAC ¶¶88-97, 124-582, 594-602. Without any authority, Defendants argue that the knowledge required in the second prong is not of the primary violation but of what they refer to as the "relevant fraud," which they claim is knowledge of the Issuer's specific misstatements and omissions. MTD at 11-13. Defendants also mischaracterize the SAC; Plaintiffs indeed allege that Defendants aided and abetted the *primary violations*. *See, e.g.*, SAC ¶606 ("Defendants substantially assisted the fraudulent actions of the Issuers by allowing them to sell the Tokens to Plaintiffs and the Class through the Interface."); ¶¶605-10. Further, **the court in *Silverman* rejected the same exact argument Defendants make here**:

> Defendant claims that to adequately plead actual knowledge of fraud, Plaintiff must allege "knowledge of the specific statements or inducements made to Debtors' lenders and investors or the terms of [their] agreements." Reply at 4. But this is incorrect. Plaintiff need only plead that Citibank had actual knowledge of the

"primary violation"—here, Nissen's defrauding of the Investors. *Lerner*, 459 F.3d
at 294.

2023 U.S. Dist. LEXIS 198786, at *34-35 (alterations in original).

Defendants are attempting to conflate Plaintiffs' pleading the elements of an underlying
fraud claim against the Issuers with the primary violation necessary for pleading aiding and
abetting fraud against Defendants. Courts in New York have held that in order to plead an aiding
and abetting claim, a plaintiff must plead the elements of fraud against the party committing the
fraud, which includes "a material misrepresentation or a material omission of fact." *Nabatkhorian
v. Nabatkhorian*, 127 A.D.3d 1043, 1044 (2nd Dep't 2015). In short, Defendants are asking the
Court to penalize Plaintiffs for adhering to their pleading obligations.

It should not be lost on the Court that Defendants never made this new *legal* argument in
the first motion to dismiss briefing. Dkt. No. 67, 17-19; Dkt. No. 84, 9-10. In opposing Plaintiffs'
motion for leave to amend, Defendants were prepared to rely on their prior papers without this
new argument: "Defendants' motions to dismiss the state law claims ***are fully briefed and ready
to be decided by the Court***." Dkt. No. 97 at 1 (emphasis added). Conversely, Plaintiffs have
consistently maintained the fraud is the Issuers' act of selling the scam Tokens (and not any
inducements or representations). Dkt. No. 82 at 42-46; Dkt. No. 99 at 3. Moreover, at the recent
pre-motion conference, counsel for Defendants appeared to concede this in arguing "it's just kind
of these very broad allegations that, you know, defendants were, you know, aware of fraud, ***but it
says nothing about the specific fraudulent schemes that are at issue in the Complaint***…."
Exhibit 2, 28:10-15 (emphasis added) *see also id.*, 28:16–29:25. Defendants have now abandoned
those arguments entirely and instead argue that a different (and wrong) legal standard applies. This
Court should not countenance such gamesmanship.

11

### B.    Plaintiffs Sufficiently Plead that Defendants Had Knowledge of the Fraud

The knowledge prong is "not identical to the scienter required for the underlying fraud." *Anwar*, 728 F.Supp.2d at 442 (internal quotations omitted).  Defendants ignore the fact that "it is unclear whether a claim of aiding and abetting under New York law is sustainable on a basis not of actual knowledge but of conscious avoidance of knowledge."  *Krys*, 749 F.3d at 131; *see also Accent Delight Int'l Ltd. v. Sotheby's*, 2023 U.S. Dist. LEXIS 34394, at \*64 (S.D.N.Y. Mar. 1, 2023) ("It is unsettled whether conscious avoidance — which occurs when it can almost be said that the defendant actually knew because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be abl[e] to deny knowledge… can satisfy the knowledge requirement."); *Anwar*, 728 F Supp 2d at 443 (to plead this knowledge requirement, plaintiffs "must allege a strong inference of actual knowledge or conscious avoidance."); *Fraternity Fund Ltd.,* 479 F.Supp.2d at 368 (S.D.N.Y. 2007).

A plaintiff may allege knowledge by "general averment at the motion to dismiss stage" by alleging "specific facts that give rise to a strong inference of actual knowledge of the underlying fraud." *Jacobs v. Barclays Bank PLC*, 2025 U.S. Dist. LEXIS 3256, at \*5 (S.D.N.Y. Jan. 7, 2025); *see also AIG Fin. Prods. Corp. v. ICP Asset Mgmt., LLC*, 108 A.D.3d 444, 446 (1st Dep't 2013) ("actual knowledge need only be pleaded generally, cognizant, particularly at the prediscovery stage, that a plaintiff lacks access to the very discovery materials which would illuminate a defendant's state of mind...an intent to commit fraud is to be divined from surrounding circumstances").

There is no question that Plaintiffs allege specific facts giving rise to a strong inference of Defendants' knowledge of the fraud under either an "actual knowledge" or "conscious avoidance" standard.  Indeed, Plaintiffs' well-pleaded allegations of knowledge, which Defendants completely ignore, include the following:

- The March 2022 Report concluded that 97.7% of the Tokens sold through the Interface are fraudulent.  SAC ¶97.

- Defendants acknowledged fraud would increase as volume grew.  SAC ¶101

- Hayden Adams' various statements demonstrating that Defendants were well aware of the fraudulent activity conducted through the Interface. SAC ¶¶102-04.  As recently as this year, Adams acknowledged "yes, there are a lot of scams in crypto, its a big problem, and something we should work hard to combat."[2]

- Defendants' acknowledgement in the v1 Whitepaper (drafted by Adams) that the Protocol and Interface could be used as a haven for fraud.  SAC ¶104.

- Plaintiff Meyers emailed Uniswap about fraud in connection with the SAM Token.  SAC ¶¶107-09.

- Plaintiff Risley emailed Uniswap about fraud in connection with MXS Token.  SAC ¶¶110-11.

- Countless users of the Interface contacted Uniswap directly informing it of fraud, including in connection with the very Tokens at issue here and Uniswap did nothing. SAC ¶¶112-13. The following are examples of which Plaintiffs are aware and likely only the tip of the iceberg (SAC ¶112):

  o "eMAX TOKEN: this token is a scam! I lost 1000usd!"

  o "Can't Swap Saitama… Scam?;" "Sold saitsma [sic] many times in the past. Now it's not working."

  o "When will people stop buying shit coins on UniSwap?! So many UniSwap posts show up on my feed, almost nothing except people being scammed. So sad."

  o "Founder of Kishu inu create a scam token named 'KishuSwap'… I have concluded that: The same people who created Kishu inu (https://www.reddit.com/r/KishuInu/) is creating a scam token named 'KishuSwap' on UniSwap."

  o "failed dogelon swap…I tried to swap £1000 of etherium this morning for dogelon on uniswap. Think I have bean scamed."

- Hundreds of new tokens are launched on the Protocol every day (through the Interface) and most of them are fraudulent, which is demonstrated by the March 2022 Report and an analysis of any 24-hour snapshot.  SAC ¶¶117-19.

---

[2] https://x.com/haydenzadams/status/1899956011915485387.

Defendants do not bother addressing any of these allegations. Instead, Defendants throw up a Hail Mary and make the specious argument that the "relevant fraud" was not the Issuers' selling of scam Tokens to Plaintiffs (of course it was) but instead the specific statements or inducements the Issuers made to get investors to purchase their Tokens. As discussed above, this is not the law. *See Silverman*, 2023 U.S. Dist. LEXIS 198786 at *27; *Fraternity Fund Ltd.*, 479 F.Supp.2d at 360; *Anwar*, 728 F.Supp.2d at 443. Of course, any attempt by Defendants to Monday morning quarterback their decision to ignore key allegations in their opening papers and attempt to address them on reply must be rejected. *See Pryor v. Jaffe & Asher, LLP*, 992 F.Supp.2d 252, 260 (S.D.N.Y. 2014) (Failla, J.) ("[I]t is well established ... that a court should not consider arguments that are raised for the first time in a reply brief.") (internal quotations omitted).

### C.    Plaintiffs Adequately Plead Substantial Assistance

The "substantial assistance" prong is satisfied when a defendant "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables [the fraud] to proceed." *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F.Supp.3d 430, 486 (S.D.N.Y. 2015) (quoting *JP Morgan Chase Bank v. Winnick*, 406 F.Supp.2d 247, 256 (S.D.N.Y. 2005)). "In establishing substantial assistance, the critical test is not whether the alleged aiding and abetting conduct was routine, but whether it made a substantial contribution to the perpetration of the fraud." *Accent Delight Int'l Ltd.*, 2023 U.S. Dist. LEXIS 34394, at * 81-82 (quoting *Winnick*, 406 F.Supp.2d at 257)(cleaned up). *See also Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 652 F.Supp.2d 495, 511 (S.D.N.Y. 2009) (clerical and ministerial acts may substantially contribute to the perpetration of fraud).

*First*, once again, Defendants make a new argument mischaracterizing the fraud, and for the reasons stated above, that argument is incorrect as a matter of law and must be rejected.

*Second*, Plaintiffs allege in detail how Defendants substantially contributed to the perpetration of the Issuers' fraud. Plaintiffs allege Defendants launched the Interface (which Plaintiffs used to purchase their Tokens, SAC ¶¶3, 5-9, 47), made it available to the public (when nothing like it existed before), took affirmative steps to incentivize the Issuers to sell scam Tokens, and even showed them how to do it. SAC ¶¶72-75, 77-78, 89-91; *see* https://support.uniswap.org/hc/en-us/sections/35918325712525-Adding-Liquidity; https://support.uniswap.org/hc/en-us/articles/20915582427917-How-to-add-liquidity-to-Uniswap-v2. Further, Defendants created an atmosphere where fraud was rampant, failed to de-list more than just some tokens, legitimized the scam Tokens, and failed to warn users that the Tokens were fraudulent when they easily could have. SAC ¶¶83-86, 101, 115-16, 120-22, 605-06, 610-12.

The substantial contribution that Plaintiffs allege here is nothing like the cases Defendants cite where a bank did very little to assist in the wrongful conduct. *See, e.g., Berdeaux v. OneCoin Ltd.*, 561 F.Supp.3d 379, 416 (S.D.N.Y. 2021) ("The only service that Plaintiffs allege BNYM provided to further the fraud was the transfer of funds involving OneCoin proceeds through its correspondent bank accounts."). Defendants are not banks and the transactions conducted through their Interface are 98% fraudulent, as opposed to routine banking services, the vast majority of which are legitimate. *See ABF Capital Mgmt. v. Asking Capital Mgmt., L.P.*, 957 F.Supp. 1308, 1330 (S.D.N.Y. 1997) ("Given the esoteric nature of [the financial product] and the fact that the Brokers created and maintained a market for such instruments, the assistance they provided in directing millions of dollars worth of exotic securities to ACM can be regarded as unusual, rather than routine, in character and degree."). If anything, Defendants' actions are more akin to art galleries selling scam goods. In those situations, courts have found sufficient allegations of

substantial assistance where the art gallery provided scam goods an aura of authenticity by allowing scam sellers to use their galleries. *See, e.g., Accent Delight Int'l Ltd.*, 2023 U.S. Dist. LEXIS 34394, at *83-85; *Martin Hilti Family Tr.*, 137 F.Supp.3d at 486-87.

In any event, "[s]ubstantial assistance can take many forms." *Primavera Familienstiftung v. Askin*, 130 F.Supp.2d 450, 511 (S.D.N.Y. 2001). For example, "[e]xecuting transactions, even ordinary course transactions, can constitute substantial assistance under some circumstances, such as where there is an extraordinary economic motivation to aid in the fraud." *Id.* Defendants had "extraordinary economic motivation to aid in the fraud." *Edmar Fin. Co., LLC v. Currenex, Inc.*, 2023 U.S. Dist. LEXIS 87620, at *28 (S.D.N.Y. May 18, 2023). Defendants profited and benefited handsomely on the backs of users of the Interface, including victims like Plaintiffs. To date, Uniswap has made over $100 million in Interface Fees. SAC ¶¶2, 81. Although these fees postdate the Class Period, Uniswap (and Adams, its primary owner) would not have been able to generate as many fees as they did had Uniswap not built up a massive following and encouraged liquidity providers to flock to the Interface to gain fees for themselves (mostly though scam tokens) during the early days of the platform, including during the Class Period. Indeed, Defendants now claim Uniswap is the leading decentralized exchange with a 70% market share, a feat accomplished by knowingly allowing scam tokens to be traded through the Interface, including the Tokens. SAC ¶40. Further, Uniswap likely profits from the Interface in a manner yet unknown to Plaintiffs. *See* SAC ¶82; Dkt. 64 at 13:22-14:18 (Defendants counsel: "I don't want to say that there's no revenue from any source, period, because I don't want to overstate things.").

*Third*, taken as a whole, Plaintiffs' allegations constitute affirmative acts and are hardly just mere inaction as Defendants contend. Nonetheless, "inaction on the alleged aider and abettor's part can provide a basis for liability where the action was 'designed intentionally to aid the primary

fraud.'"  *See ABF Capital Mgmt.*, 957 F.Supp. at 1328.  Assuming *arguendo* that Defendants only engaged in inaction (which is not the case), Plaintiffs' allegations fall squarely into this "exception" as Defendants intentionally designed and launched the Interface to provide easy access to a marketplace where they knew the vast majority of tokens traded are fraudulent.  SAC ¶¶ 92-96, 605-06, 610-12

> ### D.    Plaintiffs Plead Proximate Cause

Proximate cause requires an injury that "was a direct or reasonably foreseeable result" of the aider and abettor's conduct.  *Martin Hilti Family Tr.*, 137 F.Supp.3d at 486 ("internal quotations omitted).  That said, "the issue of proximate cause is fact-laden and inappropriate for a motion to dismiss."  *Krys v. Sugrue (In re Refco Inc.)*, No. 07-md-1902, 2012 U.S. Dist. LEXIS 41298, at *61 (S.D.N.Y. Jan. 17, 2012).  The question of proximate cause should only be resolved on a motion to dismiss if "only one conclusion may be drawn from the established facts."  *Lerner v. Fleet Bank, N.A.*, No. 98-CV-7778, 2005 U.S. Dist. LEXIS 18209, at *16 (E.D.N.Y. Aug. 26, 2005).  Plaintiffs sufficiently plead foreseeability; Defendants' assistance directly led to the Issuers launching the Tokens and Plaintiffs purchased them, both of which occurred through the Interface.

The cases Defendants rely upon are inapposite.  In *Tristan v. Bank of America*, 2023 U.S. Dist. LEXIS 111961, at *17 (C.D. Cal. June 28, 2023), the court noted that "Plaintiffs were aware of Defendants' marketing statements touting Zelle as a safe and secure way of sending money, much less that Defendants' representations caused them to sign up for the Zelle service" and allowed for Plaintiffs to amend.  In *Berdeaux*, 561 F.Supp.3d 379 at 408, the plaintiffs "seemingly acknowledge[d] that [Defendants'] conduct was not the proximate cause of Plaintiffs' injury."

## II.    Plaintiffs Sufficiently Plead Aiding and Abetting Negligent Misrepresentation

As an initial matter, based on New York Court of Appeals precedent and sound reasoning, *Silvercreek Management v. Citigroup, Inc.*, 248 F.Supp.3d 428, 454-55 (S.D.N.Y. 2017) held that

aiding and abetting negligent misrepresentation is a claim under New York law. *Silvercreek* roundly rejected *Broad-Bussel Family LP v. Bayou Grp. LLC (In re Bayou Hedge Funds Inv. Litig.),* 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007) and the very quoted language from *In re Bayou* upon which Defendants rely to argue the claim does not exist; *Silvercreek* rightly pointed out that *In re Bayou* "simply stated" it and "without supporting citation of any sort…." 248 F.Supp.3d at 454. Further, *King County v. IKB Deutsche Industriebank AG*, 863 F.Supp.2d 288, 315 (S.D.N.Y. 2012) predates *Silvercreek*, and cites solely to *In re Bayou* for the same assertion.

The elements for aiding and abetting negligent misrepresentation are similar to aiding and abetting fraud, but with the underlying violation being breach of a duty to disclose certain information. *Silvercreek*, 248 F.Supp.3d at 454-55. In turn, "[t]o state a claim for negligent misrepresentation under New York law, a plaintiff must allege that (1) the parties stood in some special relationship imposing a duty of care on the defendant to render accurate information, (2) the defendant negligently provided incorrect information, and (3) the plaintiff reasonably relied upon the information given." *Id.* at 452 (internal quotations omitted).

For the reasons discussed above and given Plaintiffs plead the Issuers concealed material information concerning the Tokens, i.e., that the Tokens were fraudulent and Defendants were aware of this, Plaintiffs sufficiently plead aiding and abetting negligent misrepresentation. *See Hughes v. BCI Int'l Holdings, Inc.*, 452 F.Supp.2d 290, 314 (S.D.N.Y. 2006) (denying motion to dismiss negligent misrepresentation claim against defendants based on material omissions); *see also* SAC ¶¶616-29. Defendants argue, without citing any authority, that pleading "intentional" misrepresentations and omissions are insufficient here, presumably because a negligent statement is a lower culpability. This argument is absurd and nonsensical on its face. Indeed, a plaintiff is permitted to plead claims in the alternative, including claims based on intentional and negligent

actions. *See Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 402 (S.D.N.Y. 2020), citing Fed. R. Civ. P. 8d(2). Moreover, courts routinely allow plaintiffs to proceed with both fraud and negligent misrepresentation claims in the same case. *See, e.g., Advanced Knowledge Tech., LLC v. Fleitas*, 2021 U.S. Dist. LEXIS 247723, at *11 (S.D.N.Y. 2021); *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F.Supp.3d 504, 528 (S.D.N.Y. 2014). In fact, in *Silvercreek*, the court allowed both aiding and abetting claims to proceed. 248 F. Supp. 3d at 455 ("[F]or the reasons discussed above in the context of the aiding and abetting fraud claim, Silvercreek has adequately stated a claim for aiding and abetting negligent misrepresentation.").

## III.    Plaintiffs Sufficiently Allege that Defendants Violated State Unfair and Deceptive Practices Acts

### A.    Plaintiffs Have Sufficiently Alleged Claims Under GBL § 349

To state a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted). Deceptive or misleading conduct can take the form of either affirmative acts or omissions. *See In re Lindt Sprüngli (USA), Inc.*, 2024 U.S. Dist. LEXIS 160836, at *17 (E.D.N.Y. Sept. 6, 2024). "To establish that conduct was deceptive or misleading under the statute, a plaintiff must plausibly allege that the defendant's conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Kyszenia v. Ricoh USA, Inc.*, 583 F.Supp.3d 350, 359 (E.D.N.Y. 2022) (quoting *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018)).

First as to affirmative misstatements, Defendants falsely told users they could not do anything to protect them from fraud and conflated the Interface with the Protocol. *See, e.g.*, SAC ¶¶114-16.

Second, contrary to Defendants' assertions, an omission-based GBL § 349 claim exists where either "the business alone possesses material information that is relevant to the consumer and failed to provide this information" *or* where a plaintiff could not reasonably have obtained that relevant information even if that information was known outside of the business. *See In re Lindt Sprüngli (USA), Inc.*, 2024 U.S. Dist. LEXIS 160836, at *17 (E.D.N.Y. Sept. 6, 2024); *Kyszenia*, 583 F.Supp.3d at 360. Plaintiffs sufficiently allege that Defendants alone possessed material information concerning the scam Tokens unavailable to consumers. *See, e.g.*, SAC ¶¶98-104, 117, 601-02, 630, 632. Defendants received user complaints of fraud in connection with the Tokens and not just from Plaintiffs. *See, e.g.*, SAC ¶¶107-16. *See Rothschild v. GM LLC*, 2020 U.S. Dist. LEXIS 187300, at *34-39 (E.D.N.Y. Sept. 30, 2020) (defendant had knowledge due to customer complaints for omissions-based claim). Defendants had the underlying data, and the ability to analyze the data, to quantify the rampant scam Tokens sold on the Interface. *See, e.g.*, SAC ¶¶45-50, 87, 97, 117-19, 632. Adams himself knew the Protocol and Interface better than anyone else and had unique knowledge and information about how it could be exploited, some of which he discussed with others. *See, e.g.*, SAC ¶¶102-04. In fact, Adams knew of the prevalence of scams, stating they are often easier for him to spot than scams in the "world beyond crypto." *See supra* n.2. Defendants also failed to include any warnings about fraudulent or problematic Tokens, which they could have done, evidenced by the fact that they are doing so now. *See* SAC ¶¶120-22, 632-34.

Defendants ignore allegations concerning Defendants' unique knowledge of fraudulent activity, the full extent of which cannot be uncovered without discovery, including user emails and information that is not public. *See 601 E. 226 St. LLC v. United States Liab. Ins. Grp.*, 2025 U.S. Dist. LEXIS 57848, at *18 (S.D.N.Y. Mar. 27, 2025); *In re Fisher-Price Rock 'N Play Sleeper*

*Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2022 U.S. Dist. LEXIS 255815, at *17 (W.D.N.Y. Aug. 16, 2022). Instead, Defendants point to the March 2022 Report concluding 98% of the tokens traded on the Protocol are fraudulent, which, as Defendants concede analyzed "public data," using mathematical theory and computations and did not examine additional information uniquely in Defendants' possession. Defendants do not deny Plaintiffs plead this "information [was] known to Defendants," and instead speculate that because the March 2022 Report was public, Plaintiffs or the Class were aware of it and understood it, but Defendants cite nothing to support this bald statement and at best this is an issue of fact. *Decoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 217-219 (N.D.N.Y. 2023) (holding that "whether a reasonable consumer would be able to determine, based on publicly available data, that" cosmetics were unsafe for eyes is a question of fact).

Defendants' reliance on the Terms of Service must be rejected. Defendants never presented the Terms of Service to Wallet Method users, and it is not clear when, if at all, Uniswap presented a link to the Terms of Services to Browser Method users. SAC ¶¶58-60; *Risley*, 690 F.Supp.3d at 207-08. Nonetheless, the prompt only included a link to the Terms of Service, and there is no indication Browser Method users ever read them. Defendants ignore these allegations and instead simply state a Terms of Service existed. At oral argument before the Second Circuit, when asked if there is a user agreement (i.e. Terms of Service), counsel for Defendants stated "there's no user agreement at issue. There's no user agreement that's been alleged." *See* Audio Transcript of Oral Argument dated 9-26-24, at 15:20-16:10, available at https://ww3.ca2.uscourts.gov/decisions/isysquery/c1cce54d-9aad-4e59-b8fb-b5d861ac3a0f/231-240/list/. Apparently, Defendants shifted their position on this issue.

In any event, regardless of whether users even read the Terms of Service, Defendants reliance on a purported disclaimer for the proposition that markets are "highly volatile," is a far

21

cry from warnings about fraud and fails to absolve them of liability as a matter of law.  Dkt. 119-1 at ¶11; Dkt. 119-2 at ¶12.  The New York Court of Appeals has made clear that "[t]he defendant must do more than disclaim liability generally; instead, a disclaimer must address the alleged deceptive conduct precisely, so as to eliminate any possibility that a reasonable consumer would be misled."  *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 180 (2021); *see also Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 344 (1999).  The disclaimer in the Terms of Service does not concern fraud at all and is nothing like the website article in *Yuille v. Uphold HQ Inc.*, 686 F.Supp.3d 323, 348 n.13 (S.D.N.Y. 2023), which discussed activity by "scammers and bad actors" in the context of whether the defendant's security measures were adequate.

### B.    Plaintiffs Sufficiently Allege Claims Under the NCUDTPA and ICPA

The elements of a claim for unfair or deceptive trade practices in violation of the NCUDTPA are "(1) an unfair or deceptive act or practice. . . (2) in or affecting commerce; (3) that proximately causes actual injury to the plaintiff or to his business." *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 748 (N.C. Ct. App. 2004).  The statute affords broad relief to consumers to sue others for violations of this law.  *See Azima v. Del Rosso*, 2021 U.S. Dist. LEXIS 237463, at *38 (M.D. N.C. Aug. 9, 2021).  "A practice is unfair when it offends established policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," specifically when a practice is "not scrupulous; not restrained by ideas of right and wrong; unprincipled." *Nilroy, Inc. v. Lowe's Cos.*, 2017 U.S. Dist. LEXIS 314, at *27 (W.D.N.C. Jan. 3, 2017) (citations omitted).  "Proof of fraud inherently constitutes a violation of the prohibition against unfair and deceptive acts." *Water Damage Mitigation, Inc. v. Jordan*, 2024 N.C. App. LEXIS 918, at *14 (N.C. Ct. App. Dec. 3, 2024) (internal quotations omitted).  *See Lira v. Felton*, 2023 N.C. App. LEXIS 46, at *12 n. 3 (N.C. Ct.

App. Feb. 7, 2023) (stating that while a simple breach of contract would not qualify for a NCUDTPA claim, breach of contract accompanied by fraud or deception may constitute an unfair or deceptive trade practice).

Similarly, to establish an ICPA claim, a consumer must show three elements: "(1) the consumer purchased goods or services from a seller; (2) the seller engaged in unfair or deceptive act(s) or practice(s) that are declared unlawful under the ICPA; and (3) the unfair act(s) or practice(s) caused the consumer to suffer 'ascertainable loss of money or property' (real or personal)." *Litster Frost Injury Laws., PLLC v. Idaho Injury Law Grp., PLLC*, 171 Idaho 1, 11 (2022).

Plaintiffs' allegations, discussed above, concerning aiding and abetting fraud and deceptive behavior, are more than sufficient to plead the elements of both statutes, including proximate cause. Defendants baldly characterize as censorship their obligation to be truthful and not engage in unfair or deceptive actions, which is exactly what Plaintiffs allege Defendants did here by offering a platform that is a haven for fraud and encouraging others to commit fraudulent acts against consumers. *See supra* page 7. These are by their very nature immoral, unethical, unscrupulous, and substantially injurious types of practices. Defendants also baldly state that these consumer protection laws do not apply to them because Plaintiffs made their own decision. This argument is nonsensical because the very purpose of consumer protection laws is to afford redress to consumers who freely engage in harmful transactions, but are unaware that they were deceived.

Lastly, contrary to Defendants' assertion, ICPA § 48-603 provides examples of various unfair or deceptive acts or practices (not just unconscionable acts) that are unlawful, including "engaging in any act or practice that is otherwise misleading, false, or deceptive to the consumer" and "engaging in any unconscionable method, act or practice." (48-603(17), (18)) (*See* SAC ¶653).

*See Duspiva v. Fillmore*, 154 Idaho 27, 33 (2013) (finding violation of subsection 17 where party misled and deceived another by failing to communicate information, which is distinct from subsection (18) (unconscionable act)). *See also id*. at 33 n.6.

## IV.    Plaintiffs Sufficiently Allege Unjust Enrichment

The essence of an unjust enrichment claim is that one party has received money or benefit at the expense of another. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). As discussed in more detail *supra* at 16, Defendants made over $100 million in Interface Fees (SAC ¶2, 81) and grew Uniswap to where it is the leading decentralized exchange (SAC ¶40). Defendants ignore these allegations as they are fatal to Defendants' motion.

## V.    Section 230 of the Communications Decency Act Does Not Bar Plaintiffs' Claims

As an initial matter, Defendants never made this argument in their first motion to dismiss and certainly did not raise it in their pre-motion letter dated March 24, 2025 (Dkt. 101) arguing that Plaintiffs should not be afforded an amendment based on futility. In short, Defendants could have raised this argument over three years ago but chose not to. For this reason, the argument must be rejected. In any event, the argument fails on the merits.

Section 230(c), titled "Protection for 'Good Samaritan' blocking and screening of offensive material", states "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). A defendant can only invoke Section 230 as an affirmative defense. *Goodman v. Sharp*, 2022 U.S. Dist. LEXIS 123138, at *8-9 (S.D.N.Y. July 12, 2022). Thus, in order for a court to grant a motion to dismiss based on this affirmative defense, the complaint must establish the elements of the defense on its face, i.e., that (1) the defendant is a provider or user of an interactive computer service, (2) the claim is based on information provided by another

24

information content provider *and* (3) the claim would treat the defendant as the publisher or speaker of that information.  *See FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016).

Adams does not argue Section 230 applies to him.  Indeed, he is a natural person and not a provider of an interactive computer service.  MTD at 23-24.  In addition, Uniswap cannot establish the second element of Section 230 because Plaintiffs' claims against Defendants concern fraudulent transactions on the Interface and not any *information* provided by another party, let alone "information content providers."  Here, Plaintiffs allege they swapped digital assets (the Tokens) through use of the Interface and did not swap "information about the tokens" as Defendants wrongly contend without citation to any allegations in the SAC (because there are none).

Uniswap also cannot meet the third element requiring publication.  Courts read Section 230 to bar "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content" as "publication involves reviewing, editing and deciding whether to publish or to withdraw from publication third-party content."  *Shiamili v. Real Estate Group of N.Y., Inc.*, 17 N.Y.3d 281, 289 (2011) (citations omitted); *see also A.B. v. Salesforce, Inc.*, 123 F.4th 788, 797 (5th Cir. 2024) ("[I]f the plaintiff's theories would not require the defendant to exercise some kind of publication or editorial function, then section 230 does not preclude liability.").  Here, Plaintiffs' theory of liability, that Defendants aided and abetted fraudulent transactions on the Interface, has nothing to do with publication or speech at all.  Further, according to Defendants themselves, Uniswap is not a publisher given their emphatic assertions that "decentralized exchanges are peer-to-peer" (MTD at 3) and Uniswap never possessed any tokens or information, let alone published them (to the

extent that is even possible). *See* Dkt. No. 67 at 1 ("At no point does Labs have any interest in the tokens traded on the Protocol – no title, ownership, custody, possession or control.").

Moreover, claims based on activity in connection with transactions (like the activity here) do not constitute publication of information. *See Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2015) (holding that Section 230 cannot be used by defendants to shield themselves from liability relating to their alleged knowledge of an underlying tort or crime); *Salesforce, Inc.*, 123 F.4th at 797 (Section 230 does not apply to a company providing cloud-based services to another company engaging in sex trafficking through fraudulent advertisements); *Colvin v. Roblox Corp.*, 725 F.Supp.3d 1018, 1027 (N.D. Cal. 2024) ("Roblox is not facing liability for the content posted on its platform. It is facing liability for allegedly facilitating transactions between minors and online casinos that enable illegal gambling, and for allegedly failing to take sufficient steps to warn minors and their parents about those casinos."). It should also be noted that Plaintiffs' claims based on Defendants' failure to warn are completely outside of the statute. *Internet Brands, Inc.*, 824 F.3d at 852-53; *California v. Meta Platforms, Inc. (In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.)*, 753 F.Supp.3d 849, 887-89 (N.D. Cal. 2024).

Finally, the cases Defendants cite are not on point and all concern publications on websites or platforms hosted by others. In *United States v. EZ Lynk SEZC*, 2024 U.S. Dist. LEXIS 57283, at *5 (S.D.N.Y. Mar. 28, 2024), the government alleged that the defendants offered and sold a system (EZ Lynk Cloud) used by car owners or technicians to reprogram car computer systems and install third-party software capable of defeating emissions controls in violation of the Clean Air Act. The court determined "the EZ Lynk Defendants' publication and transmission of that software to drivers via the EZ Lynk Cloud" gave rise to the government's claim. *Id.* at 27-28. In *Ricci*, the plaintiffs sued GoDaddy, for refusal to remove a defamatory newsletter published on a

website hosted on GoDaddy's web servers.  *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 27

(2d Cir. 2015).  Similarly, *Saveene Corp. v. Remo*, 2021 U.S. Dist. LEXIS 198342 at *7 (S.D.N.Y.

Oct. 14, 2021) focuses on the defendant's publication of quarterly reports authored by others.  *See*

*also Force v. Facebook, Inc.*, 934 F.3d 53, 59 (2d Cir. 2019) (publication of third-party speech on

Facebook.com); *Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657 (S.D.N.Y. 2023)

(unauthorized publication of model's likeness on third-party merchant websites); *Diep v. Apple,*

*Inc.*, 2022 U.S. Dist. LEXIS 159138 (N.D. Cal. Sep. 2, 2022) (hosting of third-party application

on Apple's app store); *Foley v. IRBsearch, LLC*, 2025 U.S. Dist. LEXIS 59138, at *1 (S.D.N.Y.

Mar. 28, 2025) (publication of inaccurate third-party consumer credit information on a neutral

website); *Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2023 U.S. Dist. LEXIS 217574 (C.D.

Cal. Dec. 5, 2023) (third-party false advertisement on Amazon.com).

## VI.    Plaintiffs State Claims Against Hayden Adams, the Mastermind Behind Uniswap, and Delaware Law Cannot Save Him Even If It Applies

As an initial matter, this argument is also new and Defendants never made it previously

and for this reason, the argument must be rejected.  In any event, the argument fails on the merits.

Defendants fail to explain how Delaware law could possibly apply solely to the issue of

Adams' liability and thus the Court must apply the law of the forum.  Under New York law, the

"commission of a tort doctrine permits personal liability to be imposed on a corporate officer for

misfeasance or malfeasance, i.e., an affirmative tortious act."  *Peguero v. 601 Realty Corp.*, 58

A.D.3d 556, 559 (1st Dept. 2009).  As such, "a corporate officer who participates in the

commission of a tort may be held individually liable, *regardless of whether the officer acted on*

*behalf of the corporation in the course of official duties* and regardless of whether the corporate

veil is pierced."  *Id.* at 558 (emphasis in original).  Nonetheless, the Delaware law Defendants cite

appears to be similar.

Here, Plaintiffs allege that Adams committed torts both in his individual capacity and on behalf of Uniswap.  To start, Adams is the mastermind behind Uniswap, the Interface and the Protocol.  SAC ¶11.  The Uniswap website has an entire blog devoted to how Adams, on his own, spent over a year creating the company and the software it deployed. https://blog.uniswap.org/uniswap-history ("History of Uniswap").  Adams launched the Interface and the Protocol in November 2018.  SAC ¶¶31, 77.  During those early days, Adams was the sole owner of Uniswap and its principal place of business was at an address in Monsey, New York, which appears to be where Adams' parents (and Adams) lived.  *See* Exhibit 3 (Uniswap's first offering of securities).[3]  Adams worked on v1 on his own and drafted its whitepaper.  *See, e.g.*, History of Uniswap ("Summer 2018 kicked off with me obsessively refactoring Uniswap's smart contracts, working on the whitepaper, and attending crypto events in my spare time."); Exhibit 1. Even after Adams brought in other venture capitalist investors beginning in 2019, Adams worked on and co-drafted all the subsequent whitepapers.[4]  Throughout the Class Period and beyond, Adams has called the shots for Uniswap.  *See* Dkt. 71-1 ("First, our investors have been super supportive of my leadership.  Our team has consistently called the shots from day one.").[5]

Further, Adams knew the Interface and the Protocol would be used for fraud and encouraged it.  SAC ¶103-04.  Adams made various statements, including on social media regarding the risks of the Interface and the Protocol.  SAC ¶102.  Examples include a tweet in July 2020 where he admits that Uniswap could have stronger warnings, which are a "good thing", and in August 2020 where he mentions ways Uniswap is trying to control token lists.[6]  *See also, supra*

---

[3] Also located on EDGAR: https://www.sec.gov/edgar/browse/?CIK=1775180.
[4] https://app.uniswap.org/whitepaper.pdf; https://app.uniswap.org/whitepaper-v3.pdf; https://app.uniswap.org/whitepaper-v4.pdf.
[5] https://x.com/haydenzadams/status/1360031080867373059.
[6] *See* https://x.com/haydenzadams/status/1279833083575967744 (July 2020 tweet); https://x.com/haydenzadams/status/1294646230740500487 (August 2020 tweet).

at 13.  Accordingly, Defendants' argument that Plaintiffs seek to hold Adams liable merely by virtue of his corporate position is erroneous and must be rejected.

## CONCLUSION

For the above reasons, Defendants' motions to dismiss should be denied.

Dated: July 11, 2025
New York, New York

KIM & SERRITELLA LLP

By:   /s/ James R. Serritella
      James R. Serritella
      Mario J. Cacciola
      Mark Keurian
      110 W. 40th Street, 10th Floor
      New York, NY 10018
      212-960-8345
      jserritella@kandslaw.com
      mcacciola@kandslaw.com
      mkeurian@kandslaw.com

*Attorneys for Plaintiffs*

29

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1</u>

I, James R. Serritella, hereby certify that this Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint complies with the formatting requirements imposed by Local Rule 7.1(b) and the length limitation imposed by Local Rule 7.1 (c) as follows:

This Memorandum was prepared by in Times New Roman font, size 12, using Microsoft Word.  The Memorandum contains 8,690 total words, including headings, footnotes, and quotations, but exempting the caption, table of contents, table of authorities, and signature block. The undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Date: July 11, 2025                         /s/ James R. Serritella
                                            James R. Serritella